JEFFREY F. BARR, ESQ.
Nevada Bar No. 7269
ASHCRAFT & BARR | LLP
9205 West Russell Road, Suite 240 Las
Vegas, Nevada 89148
(702) 631-4755

JOHN A. STEN, ESQ. Massachusetts Bar No. 629577
(Pro Hac Vice forthcoming)
ANN MAKKIYA, ESQ.
Massachusetts Bar No. 640143
(Pro Hac Vice forthcoming)
BYRD CAMPBELL, P.A.
100 State St 3rd floor, Boston, MA 02109 Telephone:
(407) 392-2285
*Attorneys for Defendants and Nominal Defendant*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| ADRIAN DOMINICAN SISTERS, et al, | **No.: 2:25-cv-00236-GWN-MDC** |
| Plaintiffs | |
| v. | |
| MARK P. SMITH, et al., Defendants | |
| And | |
| SMITH & WESSON BRANDS, INC., a Nevada corporation, Nominal Defendant. | |

### DEFENDANTS' MOTION TO DISMISS
### PLAINTIFFS' VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Defendants[1] respectfully file this Motion to Dismiss Plaintiffs' Verified Stockholder

Derivative Complaint for Breach of Fiduciary Duty and Violations of Section 14(a) of the

Securities Exchange Act of 1934 (the "Complaint") under Federal Rules of Civil Procedure

12(b)(6) and 23.1 for failure to state a claim upon which relief can be granted or, in the

alternative, the imposition of security pursuant to NRS 41.520. This Motion is made and based

---

[1] "Director Defendants" or the "Board" collectively refers to Mark P. Smith, Anita D. Britt, Fred M. Diaz, Michelle J. Lohmeier, Barry M. Monheit, Robert Scott, and Denis G. Suggs as referred to in the Complaint. "Management" or the "Officer Defendants" collectively refers to Mark P. Smith, Kevin A. Maxwell, and Susan J. Cupero as referred to in the Complaint. The Director Defendants and Individual Defendants are referred to collectively as "Defendants."

1  upon the attached Memorandum, the papers and pleadings on file, and any argument of counsel

2  at any hearing.

3  ///

4  ///

5  ///

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**................................................................................ii

**INTRODUCTION**..........................................................................................1

**FACTUAL AND PROCEDURAL HISTORY** ...............................................3

I.      THE PARTIES............................................................................................3

II.     ALLEGATIONS OF THE COMPLAINT..................................................3

    A.  Breach of Fiduciary Duty Claims.......................................................3

    B.  Violations of Section 14(a) of the Securities Exchange Act of 1934 .................3

    C.  Plaintiffs' Claimed Demand Futility..................................................4

    D.  The Nevada District Court's Imposition of Security ..........................4

**ARGUMENT**

I.      DEFENDANTS HAVE NO LIKELIHOOD OF LIABILITY .......................5

    A.  Plaintiffs Cannot Rebut the Presumption of Nevada's Heightened Business
Judgment Rule .......................................................................................6

        1.  Nevada's heightened business judgment rule .........................6

        2.  Plaintiffs' allegations of harm are speculative..........................6

        3.  Plaintiffs fail to allege that the Board was not diligent in its oversight...7

    B.  Plaintiffs Fail to Allege Intentional Misconduct, Fraud, or a Knowing Violation of
Law ...................................................................................................8

    C.  Plaintiffs Fail to Plead Fraud with Particularity ..............................10

II.     PLAINTIFFS LACK STANDING FOR FAILING TO COMPLY WITH RULE 23.1 .11

    A.  Plaintiffs do not Adequately Represent the Interests of S&W Stockholders.......12

    B.  Plaintiffs' Failure to Issue a Demand on the Board is Unexcused .....................14

        1.  Plaintiffs fail to plead sufficient facts to show a demand would have been
futile ............................................................................................15

        2.  Plaintiffs plead insufficient facts for lack of independence....................15

III.    PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS
THAT DEFENDANTS MADE FALSE OR MISLEADING STATEMENTS OR
CAUSED INJURY IN VIOLATION OF SECTION 14(a) AND SEC RULE 14a-9 .....18

    A.  Plaintiffs Fail to Plead Sufficient Facts Showing That the Board Made Any False
or Misleading Statements Regarding Plaintiffs or Their 2024 Stockholder
Proposal..................................................................................................19

    B.  Plaintiffs Fail to Plead Sufficient Facts of Materially Misleading Disclosures
Regarding Board-Level Oversight of Risk ...........................................24

    C.  Plaintiffs Fail to Plead Facts Showing Injury Causation ...................25

IV.    IF THE COURT DOES NOT DISMISS PLAINTIFFS' COMPLAINT, IT SHOULD
REQUIRE THAT SECURITY BE POSTED PURSUANT TO THE SECURITY ORDER
OR NRS 41.520 .........................................................................................26

**CONCLUSION** ............................................................................................28

## **TABLE OF AUTHORITIES**

**PAGES**

**Cases**

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009).......................................................................... 5

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1990) ........................................................ 5

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007).......................................................................... 5

*Brody v. Transitional Hosps. Corp.*
    280 F.3d 997 (9th Cir. 2002) ......................................................20

*Beck v. Dobrowski*
    559 F.3d 680 (7th Cir. 2009) ......................................................18

*Cohen v. Beneficial Indus. Loan Corp.*
    337 U.S. 541 (1949).........................................................................27

*Coto Settlement v. Eisenberg*
    593 F.3d 1031 (9th Cir. 2010) ..................................................... 8

*Cotter v. Kane*
    136 Nev. 559, 473 P.3d 451 (2020) ......................................... 7

*Dura Pharma., Inc. v. Broudo*
    544 U.S. 336, 341–42 (2005)......................................................25

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*
    633 F. Supp. 3d 425 (2022), rev'd 91 F.4th 511 (1st Cir. 2024), cert. granted,
    145 S. Ct. 116 (2024) ............................................................... 9, 10

*Ebeid ex rel. U.S. v. Lungwitz*
    616 F.3d 993 (9th Cir. 2010) .....................................................10

*Fosbre v. Matthews*
    3:09–CV– 0467–ECR–RAM; 2010 WL 2696615 (D. Nev. July 2, 2010)............16

*Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*
    63 F.4th 747 (9th Cir. 2023) ......................................................18

*Grace v. Rosenstock*
    228 F.3d 40 (2d Cir. 2000)..................................................18, 22

*Green v. Monheit*
    2010 WL 11579099 (D. Nev. Mar. 3, 2010) ........................................................ 14

*Guzman v. Johnson*
    137 Nev. 126, 482 P.3d 531 (2021) ............................................................ 6, 11

*Holt v. Golden*
    880 F. Supp. 2d 199 (D. Mass. 2012) .............................................................. 15

*Hurtado v. Gramercy Property Trust*
    425 F. Supp. 3d 496 (D. Md. 2019) ................................................................ 22

*In re Amerco Derivative Litig.*
    127 Nev. 196, 252 P.3d 688 (2011) ............................................................... 11

*In re Cook*
    Bankruptcy No. 7–04–17704 SA, Adversary No. 08–1074 S, 2009 WL 2913241
    (Bankr. D.N.M. April 15, 2009).................................................................. 26

*Kamen v. Kemper Fin. Servs., Inc.*
    500 U.S. 90 (1991) ............................................................................... 11

*Klein v. Freedom Strategic Partners, LLC*
    595 F. Supp. 2d 1152 (D. Nev. 2009) ............................................................... 5

*Kuebler v. Vectren Corp.*
    13 F.4th 631 (7th Cir. 2021); 412 F. Supp. 3d 1000 (S.D. Ind. 2019).............. 18, 23

*Larson v. Dumke*
    900 F.2d 1363 (9th Cir. 1990) .................................................................... 12

*Law v. Medco Research, Inc.*
    113 F.3d 781 (7th Cir. 1997)...................................................................... 26

*Lewis v. Chiles*
    719 F.2d 1044 (9th Cir. 1983) .................................................................... 12

*Mills v. Electric Auto-Lite Co.*
    396 U.S. 375 (1970) .............................................................................. 18

*Moss v. U.S. Secret Serv.*
    572 F.3d 962 (9th Cir. 2009) .................................................................. 5, 24

*National Center for Public Policy Research v. Schultz (Starbucks case)*
    No. 2:22-CV-00267-SAB, 2023 WL 5945958 (E.D. Wash. Sept. 11, 2023)......... 13

*New York City Employees' Retirement Sys. v. Jobs*
    593 F.3d 1018 (2010) ............................................................................. 18

*Omnicare, Inc. v. Laborers Dist. Council Constr. Inds. Pension Fund*
    575 U.S. 175 (2015) ........................................................................... 23

*Oswald on Behalf of Identiv Inc. v. Humphreys*
    806 F. App'x 577 (9th Cir. 2020) ...................................................... 6

*Potter v. Hughes*
    546 F.3d 1051 (9th Cir. 2008) ......................................................... 11

*Quinn v. Anvil Corp.*
    620 F.3d 1005 (9th Cir. 2010) ......................................................... 12

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*
    845 F.3d 1268 (9th Cir. 2017) ......................................................... 19

*Ridler v. Hutchinson Tech., Inc.*
    216 F. Supp. 3d 982 (D. Minn. 2016) .............................................. 22

*Shoen v. SAC Holding Corp.*
    122 Nev. 621, 137 P.3d 1171 (2006) ...................................... 7, 14, 17

*Sierra Pacific Power Co. v. Craigie*
    738 F. Supp. 1325 (D.N.V. 1990) .................................................... 27

*TSC Industries v. Northway, Inc.*
    426 U.S. 438 (1976) ......................................................................... 18

*Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*
    119 A.3d 44 (Del. 2015) .................................................................. 16

*Vardakas v. Am. DG Energy Inc.*
    2018 WL 1141360 (D. Mass. Mar. 2, 2018) .................................... 23

*Vess v. Ciba–Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ......................................................... 10

*Virginia Bankshares, Inc. v. Sandberg*
    501 U.S. 1083 (1991) ....................................................................... 26

*Wilson v. Great Am. Indus.*
    979 F.2d 924 (2d Cir. 1992) ...................................................... 18, 22

/ / /

/ / /

/ / /

1

**Statutes and Rules**

2    Fed. R. Civ. P. 12(b)(6).................................................................................5

3    Fed. R. Civ. P. 9(b) ...................................................................................10

     Fed. R. Civ. P. 23.1..............................................................................2, 12
4
     NRS 41.520...........................................................................................1, 5
5
     NRS 78.138........................................................................................1, 5, 6
6    NRS 78.138(3)....................................................................................1, 5, 6

7    NRS 78.138(7)....................................................................................1, 5, 9

8    15 U.S.C. § 78n(a)(1) Section 14(a) of Securities Exchange Act......................18

     17 C.F.R. § 240.14a-9(a) SEC Rule 14a-9 .................................................18
9
     15 U.S.C. §§ 7901-7903 ............................................................................9
10
     Protection of Lawful Commerce in Arms Act (PLCAA) ..................................9
11   15 U.S.C. § 7901(A)(iii)(I) -(II)..................................................................10

12   Private Securities Litigation Reform Act (PSLRA)........................................18

13   Black's Law Dictionary Sixth Edition (1990).................................................20

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Defendants' Motion to Dismiss

# **INTRODUCTION**

The Complaint represents Plaintiffs' latest attempt to misuse the judicial system to pursue their activist agenda to effect societal change. Prior to filing this lawsuit, Plaintiffs commenced a substantially similar action in Nevada District Court on December 5, 2023 (the "State Court Action").[2] *See* Complaint at ¶36. But when the Nevada District Court imposed a $500,000 bond pursuant to NRS 41.520, concluding that there was "no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party [would] benefit the corporation or its security holders," Plaintiffs voluntarily dismissed their complaint and refiled here.

This lawsuit and the State Court Action are meant to burden the Company and harass the Board and Management into abandoning a lawful product line. Plaintiffs understand that these lawsuits impose significant costs in the form of legal fees, time, and operational distractions even though they are ultimately without merit. As Plaintiffs are also fully aware, the Board's and Management's actions are protected by Nevada's heightened business judgement rule, which entitles a company's board of directors and officers to the presumption that their actions are honest, in good faith, and in the best interests of the stockholders. NRS 78.138(3). This lawsuit also does not allege any intentional misconduct, fraud, or a knowing violation of law by Defendants—a prerequisite when alleging a breach of fiduciary duty under Nevada law. NRS 78.138(7).

Plaintiffs are undeterred by the significant legal burden they face in rebutting Nevada's heightened business judgment rule or the lack of any cognizable breach of fiduciary duty by

---

[2] Although Plaintiffs cite to the State Court Action in their Complaint, they did not attach a copy. For the Court's ease of reference, copy of the State Court Action is attached hereto as Exhibit 1. The State Court Action sounded in breach of fiduciary duties claims against Defendants for knowingly allowing the Company to become exposed to significant liability for intentionally violating federal, state, and local laws through its manufacturing, marketing, and sales of modern sporting rifles and similar semiautomatic firearms, and their unwillingness to exercise oversight in connection with the Company's illicit manufacturing, marketing, and sales of modern sporting rifles to prevent it from being afforded protection under the Protection of Lawful Commerce in Arms Act ("PLCAA"), exposing the Company to substantial liability when their rifles are used in mass shootings.

Defendants because their lawsuits are nothing more than a novel form of social activism. Their state and federal complaints were not brought to improve the financial operations of the Company or improve the Board's corporate governance; instead, they were brought to pressure the Company to enact changes long sought by Plaintiffs' allies in the gun control movement. This unique non-economic motivation makes Plaintiffs different from the Company's other stockholders, who invest in the Company's securities for financial, not social activist, reasons. Accordingly, Plaintiffs do not meet Fed. R. Civ. P. Rule 23.1's requirement of adequately representing the interests of the majority of the Company's stockholders. Plaintiffs have also failed to plead adequate grounds for excusal of Rule 23.1's mandate that pre-suit demand be made on the Board. Plaintiffs claim that a demand would be futile. But, the Complaint does not adequately allege futility, i.e., that a majority of the Board faces a substantial likelihood of liability or could not independently assess the merits of any demand made upon them by Plaintiffs.

This lawsuit is exactly what Nevada's bond requirement is intended to address. The Nevada legislature enacted NRS 41.520 to protect Nevada businesses from the significant legal costs that occur when they are sued by plaintiffs who have little chance of prevailing and whose lawsuits otherwise have little chance of benefitting a company's stockholders. It is telling that when Plaintiffs were called to account for their activist litigation tactics in connection with the State Court Action, they chose to flee their initial chosen forum, rather than defend the merits of those claims. Defendants respectfully ask this Court to see Plaintiffs' lawsuit for what it is, meritless and vexatious litigation, and dismiss the Complaint with prejudice. In the alternative, Defendants respectfully request that this Court enforce the Nevada District Court's Security Order (which remains a valid judicial order against Plaintiffs) and require Plaintiffs to post a $500,000 bond as security to cover Defendants' potential legal fees and costs when Plaintiffs do not prevail.

**FACTUAL AND PROCEDURAL HISTORY**

**I.      THE PARTIES**

Nominal Defendant Smith &Wesson ("S&W" or the "Company"), a Nevada corporation headquartered in Tennessee, manufactures firearms, including pistols, revolvers, and rifles. *See* Complaint at ¶14. Plaintiffs are purported stockholders of S&W, who have brought this derivative action on behalf of the Company against the Board and certain of its corporate officers (collectively, "Management"). *See* Complaint at ¶¶14-26.

Plaintiffs are a consortium of social activists who acquired a small number of shares in the Company for the sole purpose of stopping the manufacture, marketing, and sale of modern sporting rifles, which they refer to as "AR-15 style rifles and similar semiautomatic firearms." *See* Complaint at ¶¶1, 9-13. They hold approximately 1,000 shares in the Company, out of approximately 44 million shares outstanding—or just 0.002% of shares outstanding. Despite their insignificant stock holdings, Plaintiffs purport to bring their claim derivatively on behalf of all stockholders of the Company.

**II.     ALLEGATIONS OF THE COMPLAINT**

**A.   Breach of Fiduciary Duty Claims**

Plaintiffs' breach of fiduciary duty claims[3] arise from their speculation that Defendants are subjecting S&W to a "substantial likelihood of liability" through their "decision to allow the Company to manufacture, market, and sell AR-15 Rifles." Complaint at ¶137. Plaintiffs cite to civil lawsuits and alleged investigations against S&W that they claim should have put Defendants on notice of the potential liability for their actions. *See* Complaint at ¶¶97-106.

**B.   Violations of Section 14(a) of the Securities Exchange Act of 1934**

Plaintiffs allege that the Board made or caused false statements to be made in S&W's definitive proxy statement filed with the Securities and Exchange Commission on August 6,

---

[3] Plaintiff pleads Director Defendants' Breach of Fiduciary Duty (Count I), Officer Defendants' Breach of Fiduciary Duty of Loyalty (Count II), and Officer Defendants' Breach of Fiduciary Duty of Care (Count III). *See* Complaint at ¶¶192-201, 202-209, 210-217.

2024 (the "2024 Proxy"). *See* Complaint at ¶¶138-162. Plaintiffs' allegations are a mix of old claims from the State Court Action and new claims. From Plaintiffs' previously filed Nevada District Court complaint, Plaintiffs plead that the Board and its Sustainability Committee (formerly known as the Environmental, Social, and Governance Committee ("ESG Committee")) failed to adequately oversee, consider, and disclose the emerging risks (e.g., litigation, regulatory, investors) to S&W that resulted in disclosures that materially misled stockholders. *See* Complaint at ¶¶152-162. As to new allegations, Plaintiffs claim that the Board made six false or misleading statements in the 2024 Proxy concerning the State Court Action and Plaintiffs' failed 2024 Stockholder Proposal.[4] *See* Complaint at ¶¶139-151.

**C.  Plaintiffs' Claimed Demand Futility**

The Complaint's allegations as to the futility of a demand are taken nearly verbatim from their State Court Complaint. *See* Complaint at ¶¶163-191; *see also* Exhibit 1 ¶¶145-172. As such, their Complaint suffers from the same fatal deficiencies as the allegations of the State Court Action—namely, the Complaint's failure to allege particularized facts showing that a majority of the Board was somehow incapable of considering a demand.

**D.  The Nevada District Court's Imposition of Security**

After briefing and oral argument, on March 19, 2024, the Nevada District Court granted Defendants' Motion to Require Security Pursuant to NRS 41.520, mandating that Plaintiffs post a $500,000 bond to potentially cover Defendants' fees and costs (the "Security Order"). If Plaintiffs failed to post that bond, then the State Court Action would be dismissed without prejudice. *See* Complaint at ¶37. When ordering the bond, the Nevada District Court concluded that there was "no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party [would] benefit the corporation or its security holders." *See* Complaint at ¶38. The State Court Action was dismissed without prejudice on June 11, 2024,

---

[4] A plaintiff in this lawsuit (Adrian Dominican Sisters) was a co-filer on a stockholder proposal submitted to the Company in 2024. Mercy Investment Services, Inc. was the lead proponent and the other co-filers included Bon Secours Mercy Health, Inc.; CommonSpirit Health; the Domestic and Foreign Missionary Society of the Protestant Episcopal Church of the United States of America; and Providence St. Joseph Health.

after Plaintiffs failed to post the required bond. *See* Complaint at ¶41. On July 10, 2024, Plaintiffs filed a notice of appeal of the dismissal of the State Court Action, but later voluntarily dismissed their appeal, on November 19, 2024. *See* Complaint at ¶¶43, 46.

<u>**ARGUMENT**</u>

**I.  DEFENDANTS HAVE NO LIKELIHOOD OF LIABILITY**

Defendants request that the Court dismiss Plaintiffs' breach of fiduciary duty claim for failing to plead sufficient facts. Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To prevail on a breach of fiduciary duty claim under that statute, the plaintiff must plead facts showing: "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) the breach proximately caused the damages." *See Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009). It is insufficient to merely assert "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" as Plaintiffs have done here. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Ninth Circuit, in elaborating on the pleading standard described in *Twombly* and *Iqbal*, held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

NRS 78.138(7) also requires a two-step analysis to impose individual liability on a director or officer. First, the presumptions of the heightened business judgment rule, codified in NRS 78.138, must be rebutted. "[D]irectors and officers, in deciding upon matters of business, are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation." NRS 78.138(3). Second, the "director's or officer's act or failure to act" must constitute "a breach of his or her fiduciary duties," and that breach must further involve "intentional misconduct, fraud or a knowing violation of law." NRS 78.138(7)(b)(1)-(2).

**A.     Plantiffs Cannot Rebut the Presumption**
**of Nevada's Heightened Business Judgment Rule**

**1.  Nevada's heightened business judgment rule.**

Nevada's heightened business judgment rule safeguards Nevada boards of directors and officers from "judicial interference with corporate decisions when those decisions are made in good faith." *See Guzman v. Johnson*, 137 Nev. 126, 131, 482 P.3d 531, 536 (2021). First, it entitles a company's board of directors and officers to the presumption that their acts are honest, in good faith, and in the best interests of the company. *See* NRS 78.138(3); *see also Guzman*, 137 Nev. at 130-31, 482 P.3d at 536. The burden is on a plaintiff to rebut that strong presumption. *See Guzman*, 137 Nev. at 132, 482 P.3d at 536. Second, a plaintiff must prove that any purported breach of fiduciary duty "involved intentional misconduct, fraud or a knowing violation of law." NRS 78.138(7). To rebut the presumption that the heightened business judgment rule affords, a plaintiff must allege conduct where the fiduciary intentionally acts: (i) with a purpose other than that of advancing the best interests of the corporation; (ii) to violate applicable positive law; or (iii) fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *See Oswald on Behalf of Identiv Inc. v. Humphreys*, 806 F. App'x 577, 580 (9th Cir. 2020).

**2.  Plaintiffs' allegations of harm are speculative.**

In the Complaint, Plaintiffs engage in mere speculation to suggest that S&W's stockholders could be harmed because the Company continues to manufacture, market, and sell a lawful product—modern sporting rifles. *See* Complaint at ¶¶3-7. The Complaint, however, contains nothing more than a difference of opinion regarding the Company's business decisions that, in Plaintiffs' speculations, could lead someday, somehow, to "long-term liabilities." *See* Complaint at ¶1. For example, Plaintiffs state that S&W "saw the risk of liability that it would face by manufacturing, marketing, and selling" modern sporting rifles, and only began to sell them to the public after a federal law was passed shielding it from liability when its firearms "were used to kill or injure." *See* Complaint at ¶¶52-55. Not only does that allegation contradict Plaintiffs' claim that Defendants are ignoring potential risk to the Company; it is speculative and fails to

Defendants' Motion to Dismiss

show actual harm to the Company's stockholders. *See Shoen v. SAC Holding Corp.,* 122 Nev. 621, 633, 137 P.3d 1171, 1179 (2006) (finding that alleging potential risks of harm insufficient to rebut Nevada's heightened business judgment rule: actual harm to a company's stockholders must be shown.).

### 3.  Plaintiffs fail to allege that the Board was not diligent in its oversight.

Plaintiffs do not allege facts showing that the Board or Management were not diligent in their oversight of any potential liabilities that the Company may face—instead Plaintiffs ask this Court to infer that might be the case. *See, e.g.,* Complaint at ¶¶ 119, 159 (inferring lack of oversight because Plaintiffs were not given all of their demanded documents, among other reasons). That is simply not a permissible inference under Nevada's heightened business judgment rule. Further, contradicting themselves yet again, Plaintiffs acknowledge that the Board (and its committees) and Management exercised oversight of legal and business risks, but criticize their judgment in exercising that oversight. *See, e.g.,* Complaint at ¶¶123-126, 130, 153, 155, 157-162 (noting Board and Board committee oversight but taking issue with the reasonableness of their assessments). Nevada's heightened business judgement rule is designed to protect the boards of directors and managers of Nevada corporations from precisely this type of second guessing— i.e., one in which activist stockholders seek to supplant the informed judgment of a board of directors and management team with their own viewpoint reflecting their narrow self-interests. *See Cotter v. Kane,* 136 Nev. 559, 457, 473 P.3d 451, 456-457 565-566 (2020) (finding that plaintiff "does not adequately represent the shareholders because his personal interests far outweigh the shareholders' interests").

In a further confusion of "disagreement" with "duty" (or a breach thereof), the Complaint criticizes the Board's 2019 Shareholder Requested Report on Product Safety Measures and Monitoring of Industry Trends (the "Monitoring Report"), which was issued by the Board in response to a 2018 stockholder proposal submitted by one of the Plaintiffs and supported by the

Defendants' Motion to Dismiss

majority of voting Company stockholders.[5] *See* Complaint at ¶¶ 124-125 (Exhibit 2, Monitoring Report at 3). The Monitoring Report conclusively demonstrates that the Board is responsive to the will of its stockholders overall. In response to that 2018 voting result, the Board went beyond producing the called-for Monitoring Report and even engaged a third-party monitoring firm to assist in fulfilling its risk monitoring responsibilities. *See* Exhibit 2.   In contrast, Plaintiffs' derivative action seeks to impose their unsuccessful (and unpopular) stockholder proposals through judicial intervention against the will of the majority of Company stockholders. Plaintiffs make plain their disagreement with the conclusions of the Monitoring Report and the rejection of their stockholder proposals in their Complaint. *See* Complaint at ¶¶123-126 (criticizing the Board for taking "customer interests" into account in its assessment of financial risk). But their disagreement with the Board's and Management's business judgment falls squarely within the scope of Nevada's heightened business judgment rule and fails as a matter of law. *See* NRS 78.138(3) (noting that in exercising their business judgement, directors may consider, among other things, one or more of the following: (1) the interests of the corporation's "employees, suppliers, creditors or customers"; (2) the "long-term or short-term interests of the corporation"; or (3) the "long-term or short-term interests of the corporation's stockholders"). Indeed, it would be reckless for any board of directors or management team to ignore the interests of a company's customers, as Plaintiffs suggest the Board should.

Rather than supporting Plaintiffs' breach of fiduciary duty claims, the Monitoring Report demonstrates the Board's and Management's commitment to monitoring and assessing risk to the Company, including financial, legal, and reputational risk. *See* Exhibit 2. The Monitoring

---

[5] Plaintiffs refer extensively to the Monitoring Report in the Complaint, but do not attach it as an exhibit. For ease of reference, a copy of the Monitoring Report is attached hereto as Exhibit 2. Further, in considering motions to dismiss, the Ninth Circuit recognizes the Doctrine of Incorporation in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Thus, Plaintiffs' reliance on the pleadings, motions, orders, and transcripts from the Nevada District Court case make them available to Defendants in their motion to dismiss.

Report articulates, among other things, the Company's continuing efforts to "research and produce safer firearms and firearm products." *See id.* In further direct contradiction to the unsupported allegations of the Complaint, the Monitoring Report devotes a whole section to the "Assessment of the Corporate Reputational and Financial Risks Related to Gun Violence in the U.S." *See id.* This section specifically examines the very issues Plaintiffs contend the Board has ignored, including its efforts to manage those risks through internal controls. *See id.* As detailed in the Monitoring Report, S&W went above and beyond the requirements of the stockholder proposal by proactively engaging an independent media monitoring firm to provide a factual basis on which to evaluate and address the concerns raised by the stockholder proponent. To this day, the Company continues to work with this firm. If anything, the Monitoring Report demonstrates and represents the *sine qua non* of "business judgment"—heightened or otherwise.

### A. Plaintiffs Fail to Allege Intentional Misconduct, Fraud, or a Knowing Violation of Law

The Complaint is bereft of any factual allegations demonstrating that the Board's or Management's oversight of corporate affairs "involved intentional misconduct, fraud, or a knowing violation of law." NRS 78.138(7). First, Plaintiffs falsely imply that the Company violates state and local law that "generally ban the sale, manufacture, and transfer of AR-15 Rifles." Complaint at ¶93. But the complaint is devoid of any facts to support that conclusory assertion. Complaint at ¶¶94-96. It is equally specious that Plaintiffs renewed the allegations of the State Court Action regarding an investigation by the U.S. House of Representatives Committee on Oversight and Reform (the "ORC"). *See* Complaint at ¶¶99-102. Even prior to the dismissal of the Nevada District Court case, no such investigation was (or currently is) active before the ORC.

Second, Plaintiffs' claim of potential long-term liability based on exposure to private lawsuits is strained at best as the PLCAA "unequivocally bars lawsuits seeking to hold gun manufacturers responsible for the acts of individuals using guns for their intended purpose." 15 U.S.C. §§ 7901-7903 et seq.; *see also Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 633 F.Supp.3d 425, 432 (2022), *rev'd on other grounds Estados Unidos Mexicanos v. Smith & Wesson Brands,*

*Inc.*, 91 F.4th 511 (1st Cir. 2024), *cert. granted Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 145 S.Ct. 116 (Oct. 4, 2024); *see also* Minute Order, *Goldstein v. Earnest*, Case No.: 37-2020-00016638-CU-PO-CTL, (Cal. Super Ct. Dec. 2, 2024), at 2.[6] It cannot be disputed that the PLCAA protects the lawful marketing of firearms. *See, e.g., Estados Unidos Mexicanos*, 633 F.Supp.3d at 450-54 (examining and dismissing state consumer protection claims against S&W because "the complaint fails to allege that the marketing practices of the Company [are deceptive and] violate any common-law, statutory, or other established concept of fairness"); Minute Order, *Goldstein*, Case No.: 37-2020-00016638-CU-PO-CTL, at 2 (finding that plaintiff's claims "are immune under the Protection of Lawful Commerce in Arms Act (PLCAA)"). Accordingly, Plaintiffs' speculative claims that the Board and Management have breached their fiduciary duties because of the potential "long-term liability and risks" arising from some imagined civil liability fail as a matter of law. The Board and Management are well within the scope of their fiduciary duties to assess actual (not speculative) risk and to consider the broad immunity provided under the PLCAA in their assessment.[7]

## B.    Plaintiffs Fail to Plead Fraud with Particularity

Plaintiffs also claim in conclusory fashion that "[t]he Director Defendants knowingly, intentionally, and fraudulently violated their fiduciary duties…." *See* Complaint at ¶176. Under the federal standard, a plaintiff stating a claim for fraud must comply with Fed. R. Civ. P. 9(b): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The plaintiff's complaint therefore must include "the who, what, when, where, and how of the misconduct charged." *See Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003))

---

[6] A copy of the *Goldstein* case is attached hereto as Exhibit 3.

[7] This is especially true as Plaintiffs are surely aware that a firearm manufacturer must be found to have "knowingly violated a State or Federal statute applicable to the sale and marketing" of firearms before the protections of the PLCAA will be excepted—a finding that is unprecedented to date. *See* 15 U.S.C. § 7901(A)(iii)(I)-(II). Plaintiffs are also surely aware that a knowing statutory violation must be found to be a proximate cause of damages claimed before PLCAA protections are excepted – a finding that is unlikely given that claimed damages in any case in which the PLCAA applies invariably result from the intervening criminal misuse of a lawfully manufactured firearm. *Id.*

(internal quotations omitted). In addition, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *See id.* (internal quotations omitted). Given the previously explained deficiencies with Plaintiffs' breach of fiduciary duty allegations, Plaintiffs cannot meet this enhanced federal standard.

Plaintiffs equally have no hope of meeting the applicable Nevada standard of the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Guzman*, 137 Nev. at 130, 482 P.3d at 536 (citing *In re Amerco Derivative Litig.*, 127 Nev. 196, 223, 252 P.3d at 700 (2011) (citing to NRCP 9(b), the state analog to federal Rule 9(b)). Like the deficient complaint in *Amerco*, the Complaint fails to allege with any specificity the purported "fraud" of the Board or Management. *Amerco*, 127 Nev. at 224, 252 P.3d at 701. Indeed, Plaintiffs make no attempt to plead an instance of purported fraud with any particularity whatsoever. Plaintiffs simply ask the Court to infer some sort of misconduct without any precise allegations concerning: (a) who committed the purported "fraud"; (b) what the substance was; (c) when it occurred; (d) how it happened; or (e) any malicious motive. Like the deficient complaint in *Amerco*, the Complaint here clearly fails under Rule 9(b).

## II. PLAINTIFFS LACK STANDING FOR FAILING TO COMPLY WITH RULE 23.1

The Ninth Circuit has held that Rule 23.1 permits a plaintiff to bring a shareholder derivative suit only when two requirements are met. *See Potter v. Hughes*, 546 F.3d 1051, 1056 (9th Cir. 2008); Fed.R.Civ.P. 23.1. First, a plaintiff must have owned shares in the corporation at the time of the disputed transaction (the "contemporary ownership requirement"). *See id.* Second, the plaintiff must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors" (the "demand requirement"). *See id.* However, failure to meet the demand requirement may be excused if the facts show that demand would have been futile. *See id.* Specifically, a plaintiff may file a derivative suit only if she demonstrates that the corporation wrongfully refused, or would have wrongfully refused, "to proceed after suitable demand" on the corporation's board of directors. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95-96 (1991). Pre-suit demand requirements, and the futility exceptions thereto, are

governed by the law of the state of incorporation. *See id.* at 108-09. S&W is a Nevada corporation; thus, Nevada law applies in determining whether a settlement demand was futile. *See id* at 108-09.

### A.    Plaintiffs do not Adequately Represent the Interests of S&W Stockholders

In federal court, "[a] derivative theory of recovery, whether asserted individually or on behalf of a class, is governed by Fed. R. Civ. P. 23.1." *See Lewis v. Chiles*, 719 F.2d 1044, 1050 (9th Cir. 1983). Rule 23.1 states that a derivative action brought by "one or more shareholders ... to enforce a right" of a corporation "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." *See Quinn v. Anvil Corp.,* 620 F.3d 1005, 1012 (9th Cir. 2010). In other words, to have standing, a plaintiff must be a shareholder at the time of the alleged wrongful acts and retain ownership of the stock for the duration of the lawsuit. *See, e.g., id.; Lewis*, 719 F.3d at 1047.

To determine the adequacy of representation, the Ninth Circuit examines eight factors: (1) indications that the plaintiff is not the true party in interest; (2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit; (3) the degree of control exercised by the attorneys over the litigation; (4) the degree of support received by the plaintiff from other stockholders; (5) the lack of any personal commitment to the action on the part of the representative plaintiff; (6) the remedy sought; (7) the relative magnitude of the plaintiff's personal interests compared to his interest in the derivative action itself; and (8) the plaintiff's vindictiveness toward the defendants. *See Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990). For all the foregoing reasons, Plaintiffs cannot show that they adequately represent the interests of S&W stockholders.

Plaintiffs are not like most stockholders who invest in companies to help them grow and see a return on their investment. Instead, Plaintiffs are activist stockholders who invest in companies to effect social change – they hold Company stock only to enable them to make stockholder proposals and bring derivative actions such as this. For years, Plaintiffs have publicly called for

the Company to "[s]top the sale, production, design or conversion of military style semi-automatic assault weapons and associated accessories and components…for use by civilians." *See* Complaint at ¶124 at fn. 72 (citing the Monitoring Report at C-1). While they purported to make these demands "as investors," their reasons for doing so have had nothing to do with their investments. *See id.* Plaintiffs' stance clearly sets them apart from the Company's other stockholders, who hold the stock for investment purposes (i.e., to gain profit), rather than to attempt to enact social change by, for example, restricting the sale of lawful firearms. Accordingly, there can be no dispute that Plaintiffs' narrow personal interests in ending the sale of modern sporting rifles outweigh their interest in the financial success of the Company and places them in opposition to the typical interests of Company stockholders, who invest to make money, not to engage in social activism (as evidenced by the unsuccessful nature of Plaintiffs' stockholder proposals that are noted below). Plaintiffs' own public statements are the clearest indicators that they place their narrow personal interests ahead of any benefit to the Company by bringing this derivative action; and Plaintiffs' narrow fixation on their social activist agenda demonstrates a clear vindictiveness toward Defendants, the Company, and its other stockholders. *See Larson*, 900 F.2d at 1367.

Plaintiffs' narrow personal interests create a clear separation between themselves and their fellow stockholders. Plaintiffs admit that over the past five years, the majority of Company stockholders have not supported Plaintiffs' social activist agenda as presented in various stockholder proposals. *See* Complaint at ¶128. Indeed, Plaintiffs' 2024 stockholder proposal was unsupported by 77% of the Company's voting stockholders—and the proponents' representative notified the Company on April 10, 2025 that the proponents chose not to submit yet another stockholder proposal in 2025, presumably because they saw the writing on the wall. The low levels of stockholder support for Plaintiffs' single-interest proposals in recent years, as well as their recent abandonment of those efforts, are clear indicators that Plaintiffs do not adequately and fairly represent the interests of the Company's stockholders.

For these reasons, this action strongly resembles *National Center for Public Policy Research*

*v. Schultz*, No. 2:22-CV-00267-SAB, 2023 WL 5945958 (E.D. Wash. Sept. 11, 2023) (dismissing action because plaintiff was not a fair and adequate shareholder representative) (the "*Starbucks*" case). In *Starbucks*, the plaintiff (like here) was "an advocacy group committed to [] causes in government and the private sector"… "engaged in a nationwide campaign to litigate against" those viewed as adverse to its worldview. *Id.* at *1. Further paralleling the facts here, the *Starbucks* plaintiff owned a small amount of company shares which it had previously used to "put forward several shareholder proposals that … [had] been rejected by the vast majority of Starbucks shareholders." *Id.* at *2. In light of those factors, among other things, the *Starbucks* court found it "clear [that] Plaintiff is pursuing its personal interests rather than those of Starbucks" and dismissed the case. *See id.* at *4-5. In so doing, the *Starbucks* court found that the plaintiff was not a fair and adequate representative of Starbucks' stockholders as it sought "to override the authority of the Starbucks Board and obtain disproportionate control of Starbucks' decision making to advance its own agenda in a manner contrary to the desires of Starbucks Board, management, and the vast majority of other shareholders." *Id.* at *4. The *Starbucks* court found: "This Complaint has no business being before this Court and resembles nothing more than a political platform." *Id.* A conclusion like that in *Starbucks* is warranted here given the clear similarities between Plaintiffs and the *Starbucks* plaintiffs, as well as their attempted misuse of the judicial system to realize social aims that are contrary to the business interests of the Company.

**B.    <u>Plaintiffs' Failure to Issue a Demand on the Board is Unexcused</u>**

The Complaint also should be dismissed because of Plaintiffs' abject failure to make pre-suit demand on the Board. "Ordinarily, under Nevada's corporations law, a corporation's 'board of directors has full control over the affairs of the corporation.'" *See Shoen*, 122 Nev. at 632, 137 P.3d at 1178-79 (internal citations omitted); *see also Green v. Monheit*, No. 2:08-cv-238-RCJ-RJJ, 2010 WL 11579099, at *5 (D. Nev. March 3, 2010) (recognizing that "the demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of the corporation"). Nevada follows Delaware law in evaluating independence and

"NRCP 23.1 imposes heightened pleading imperatives in shareholder derivative suits" requiring a shareholder to "set forth ... particularized factual statements that ... [show] a demand would be futile or otherwise inappropriate." *See Schoen,* 122 Nev. at 633-34, 137 P.3d at 1179-80 (internal quotations omitted). "[T]o show interestedness, a shareholder must allege that a majority of the board members would be materially affected, either to [their] benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." *Id.* at 639 (alteration in original) (internal quotations omitted).

### 1. Plaintiffs fail to plead sufficient facts to show a demand would have been futile.

Plaintiffs plead insufficient facts to show that a demand would be futile because the entire Board faces a substantial risk of liability. As noted above, there is little likelihood that the Board or Management will be found liable under Nevada law. "Nevada permits the immunization of directors against personal liability for both their duty of care and their duty of loyalty to the corporation. Where such immunity exists, interestedness through potential liability is a difficult threshold to meet." *See Holt v. Golden*, 880 F.Supp.2d 199, 204 (D. Mass. 2012) (internal citations omitted). Plaintiffs simply fail to set forth any facts suggesting that they can meet this arduous standard, and "[a]llegations of mere threats of liability through approval of the wrongdoing or other participation [] do not show sufficient interestedness to excuse the demand requirement." *See Shoen*, 122 Nev. at 633, 137 P.3d at 1179. Plaintiffs' rank speculation about potential future "long-term liabilities and risks" is not enough to overcome this well-established Nevada legal requirement. Complaint ¶ 4. Plaintiffs' claim that a majority of the Board face a substantial threat of liability under Section 14(a) fails for reasons similar (Complaint ¶ 178); namely that there is not a substantial risk of liability to a majority of the Board under Section 14(a) because, as discussed fully in Section III below, Plaintiffs fail to meet the heightened pleading standards applicable to their proxy misstatement claims.  The alleged statements attributed to the Board are, in fact, truthful or matters of subjective opinion, among other reasons.

### 2. Plaintiffs plead insufficient facts for lack of independence.

Plaintiffs' claim that a majority of the Board lacks independence is equally meritless. The

primary gravamen of Plaintiffs' claim is that some of the current Board members recommended against Plaintiffs' various failed stockholder proposals or that they served on the Board at the time when the Monitoring Report was issued. *See* Complaint ¶¶182-190. Plaintiffs should not be allowed to create an argument about lack of independence just by vaguely accusing the Board of bias without pleading sufficient facts showing the same.

That the Board disagreed with Plaintiffs' numerous failed stockholder proposals does not demonstrate any lack of independence or interests that unduly conflict with the directors' duties as Board members—and is certainly not the particularized showing of facts needed to allege that a majority of the Board is under the influence of "extraneous considerations or influences" that is required. *See Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 59 (2015) (dismissing shareholder suit for failure to make pre-suit demand because plaintiffs failed to show that majority of the board lacked independence or was interested in the transaction) (internal citations and quotations omitted). Moreover, Plaintiffs' reliance on the Monitoring Report to demonstrate a lack of independence is entirely misplaced. Contrary to the Complaint's claim that the Monitoring Report shows the Board's "failure to monitor legal risks related to the Company's manufacturing, marketing and sales of AR-15 Rifles" (Complaint at ¶124), as explained earlier, the Monitoring Report instead identifies and acknowledges the risks inherent in the sale of firearms (including modern sporting rifles).  See <u>Exhibit 2</u> at 15.  And the Company went above and beyond what had been called for by the specific stockholder resolution by engaging an independent third-party to implement a continuing monitoring program of those risks.

Beyond Plaintiffs' reference to their many failed stockholder proposals and their subjective opinion regarding the merits of the Monitoring Report, Plaintiffs make only sparse allegations about the potential bias of certain Board members—all of which are inadequate as a matter of law. For example, Plaintiffs claim that Director Smith cannot be impartial because he is S&W's Chief Executive Officer. Complaint at ¶183. That allegation fails as a matter of law. *See Fosbre v. Matthews,* Nos. 3:09–CV– 0467–ECR–RAM, 3:09–CV–0489, 3:09–CV–0536, 3:09–CV– 0542,  3:09–CV–0489–ECR–VPC,  3:09–CV–0536–ECR–RAM,  3:09–CV–0542–ECR–VPC,

2010 WL 2696615, at *7 (D. Nev. July 2, 2010) ("demonstrating that a director is principally employed by a corporation, however, is not enough to establish that director is incapable of impartially considering a demand on that corporation"). Director Scott is alleged to have been an executive of the Company at some unspecified time. Complaint at ¶183. Based on that vague statement, Plaintiffs thus conclude that Director Scott cannot possibly be independent. That too fails as a matter of law. *See id.*

Director Lohmeier, who joined the Board in July 2023, is alleged to lack independence solely because she allegedly served on the board of the U.S. subsidiary of an international aerospace defense company that manufactures rockets, missile propulsion systems, ramjets, and ammunition (both military and commercial). *See* Complaint at ¶184. Director Monheit is claimed to lack independence for even more far-fetched reasons; specifically, his prior service on the board of a virtual interactive shooting experience company. *See* Complaint at ¶185. Plaintiffs' claims as to Directors Lohmeier and Monheit are senseless and aptly show the absurdity of Plaintiffs' pleading. They are akin to saying that a member of the board of an automobile manufacturing company cannot be independent or disinterested because he or she served on the board of an oil production company—or one that makes toy cars. Such arguments strain all credulity. Plaintiffs' remaining Board allegations fare no better. The only claimed issue as to Director Britt is that she was on the Board in 2019 when it issued the Monitoring Report. *See* Complaint at ¶187. As to Directors Diaz and Suggs, who joined the Board in 2021, there are no specific factual allegations concerning their lack of independence and interestedness. *See* Complaint at ¶¶181-190. None of these conclusory allegations about the Board meet Nevada's legal standard, which requires Plaintiffs to allege that "a majority of the board members would be materially affected, either to their benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." *See Shoen*, 122 Nev. at 639, 137 P.3d at 1183 (internal quotations omitted). To the contrary, Plaintiffs' Complaint makes it crystal clear that their whole issue with the Board is that it is not adverse to the Company's business (as Plaintiffs clearly are). Plaintiffs admit as much in their Complaint when talking about Director

Monheit: "he cannot possibly escape his bias in connection with the gun industry position…." *See* Complaint at ¶185. Plaintiffs' premise is that "support" and "bias" are equivalent; they are not. In so stating, they reveal their own deep-seated prejudice against the Company's business and the firearms industry as a whole. Plaintiffs' entire premise is flawed; one's association or experience with a particular industry does not cause that person to lack independence.

## III.    PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS THAT DEFENDANTS MADE FALSE OR MISLEADING STATEMENTS OR CAUSED INJURY IN VIOLATION OF SECTION 14(a) AND SEC RULE 14a-9

Section 14(a) prohibits soliciting proxies in violation of SEC rules and regulations. *See* 15 U.S.C. § 78n(a)(1). SEC Rule 14a-9 prohibits including "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact," as well as omitting any material fact required to render statements within the proxy statement not false or misleading. *See* 17 C.F.R. § 240.14a-9(a); *see also Kuebler v. Vectren Corp.*, 13 F.4th 631, 637 (7th Cir. 2021).[8] The elements of a Section 14(a) claim are: (i) the proxy statement contained a material misstatement or omission that; (ii) caused the plaintiff's injury, and (iii) that the proxy solicitation was an essential link in accomplishing the transaction. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384–85 (1970).

Plaintiffs' Complaint cannot withstand a motion to dismiss as it fails to plead facts to sustain each of these elements. The Private Securities Litigation Reform Act (the "PSLRA") applies to Plaintiffs' Section 14(a) claims. *See* 15 U.S.C. § 78n(a)(1); *see also* 17 C.F.R. § 240.14a-9(a); *Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000); *Wilson v. Great Am. Inds.,* 979 F.2d 924, 931 (2d Cir. 1992). The PSLRA imposes heightened pleading requirements on Section 14(a) plaintiffs. *See* 15 U.S.C. § 78u-4(b)(1); *Beck v. Dobrowski*, 559 F.3d 680, 681–82 (7th Cir. 2009); *New York City Employees' Retirement Sys. v. Jobs,* 593 F.3d 1018, 1022 (2010); *see also Glazer*

---

[8] *TSC Industries, Inc*. sets forth the general standard of materiality that best comports with Rule 14-9's policies: "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries v. Northway, Inc.*, 426 U.S. 438, 439 (1976 (quoting *Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 384 (1970)).

*Capital Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023) ("PSLRA imposes formidable pleading requirements to properly state a claim and avoid dismissal under Rule 12(b)(6)"). A plaintiff must identify each statement alleged to have been misleading, the reason why each statement was misleading, and all relevant facts supporting that conclusion. *See* 15 U.S.C. § 78u-4(b)(1). Plaintiffs have not come even remotely close to meeting this heightened pleading requirement here.

### A.    Plaintiffs Fail to Plead Sufficient Facts Showing That the Board Made Any False or Misleading Statements <u>Regarding Plaintiffs or Their 2024 Stockholder Proposal</u>[9]

Plaintiffs engage in revisionist history with respect to the six allegations of falsehoods that the Board supposedly made, or caused to be made, concerning the State Court Action or Plaintiffs' failed 2024 Stockholder Proposal.[10] Specifically, Plaintiffs allege the 2024 Proxy contained the following materially false or misleading statements with knowledge of their falsity or reckless disregard for the truth:

> (i) "[i]n May 2024, ***the court dismissed the Suit, having previously concluded that 'there is no reasonable possibility that Plaintiffs' suit will benefit the Company***;" (ii) the Plaintiffs were "admonished by a court for pursuing interests contrary to those of the Company and its stockholders;" (iii) the proponent of the 2024 Proposal "sued [Smith & Wesson] in an effort to prohibit [the Company] from manufacturing, marketing and selling a popular product line;" (iv) the 2024 Proposal would expose the Company to "'human rights costs' estimated at $557 billion per year;" (v) imposing the United Nations Guiding Principles on Business and Human Rights would require the Company to "reduce [its] lawful product offerings;" and (vi) "the point" of the 2024 Proposal was "to generate negative publicity" and harm the Company.

Complaint at ¶ 143 (emphasis in original) (the "Proxy Allegations"). Those do not constitute actionable misstatements or omissions under the PSLRA. As explained below, Plaintiffs fail to allege any concrete, contemporaneous facts showing any of the above statements were false or misleading when made, and courts routinely dismiss Section 14(a) claims under the PSLRA where, as here, statements are accurate, immaterial, or protected opinion. *See, e.g., Retail*

---

[9] Although they reference it, Plaintiffs failed to provide the Court with a copy of the Smith & Wesson Schedule 14(A) Proxy Statement (August 6, 2024). For ease of reference, Defendants attach it hereto as <u>Exhibit 4</u>.

[10] Although Plaintiffs appear to claim that S&W and all of the Defendants are potentially liable under Section 14(a), the Complaint only alleges misstatements by the Board Defendants. Complaint at ¶¶ 139-144.

*Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017).

As to the first Proxy Allegation, it is patently false for Plaintiffs to claim that "the sole reason that the District Court dismissed Plaintiffs' State Court Action without prejudice was that they failed to post a $500,000 bond." *See* Complaint at ¶145. Even Plaintiffs admit that the Nevada District Court concluded that there was "no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party [would] benefit the corporation or its security holders." *See* Complaint at ¶38 (quoting paragraph 17 of the Nevada District Court's Security Order verbatim); *see also* Complaint at ¶40, fn. 6 (attaching the Security Order). How the 2024 Proxy's use of an exact quote from the Nevada District Court could ever be false or misleading is beyond comprehension. *See* Exhibit 4 at p. 46, fn. 9 (quoting the Nevada District Court). A statement that is objectively true (and is nothing more than a quotation of a judicial opinion) cannot form the basis of a Section 14(a) violation. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). This is exactly the type of deficient pleading the PSLRA was designed to prevent.

Plaintiffs' second Proxy Allegation is that the 2024 Proxy falsely states that the Nevada District Court admonished Plaintiffs. Complaint ¶146. Plaintiffs only basis for asserting that the statement in the 2024 Proxy is false is the Nevada District Court's statement from September 17, 2024 that it "did not find [Plaintiffs'] claims were brought or maintained without reasonable grounds or to harass." Complaint at ¶146. First, Plaintiffs never explain how a judicial remark made on September 17, 2024 could render statements made more than a month earlier false when made (the 2024 Proxy was filed with the SEC on August 6, 2024). Further, the Nevada District Court did admonish Plaintiffs—rendering the Board's proxy statement true. Specifically, the Nevada District Court told Plaintiffs "that there is no reasonable possibility that Plaintiffs' suit will benefit the Company" and imposed a $500,000 bond requirement on Plaintiffs to potentially cover Defendants' legal fees and costs. Complaint at ¶145, fn. 83. *Black's Law Dictionary* defines "admonish" as meaning: "To caution or advise" and "To counsel against wrong practices,

or to warn against danger of an offense." Sixth Edition (1990) at p. 48. The Nevada state court's imposition of the bond requirement is highly unusual and signals more than a mere procedural safeguard—it operates as a clear admonishment to Plaintiffs. Moreover, the language used by the court in imposing the bond suggests a deterrent function. Taken together, the unusual nature of the bond's imposition and the context surrounding it lend credence to the position that this was not a routine procedural step, but rather an admonishment by the Nevada District Court— i.e., a cautionary message to Plaintiffs about the perceived weakness or impropriety of their claims. Moreover, Plaintiffs' conclusory pleading does not even begin to meet the heightened pleading requirements of the PSLRA. 15 U.S.C. § 78n(a)(1); *see also* 17 C.F.R. § 240.14a-9(a); *Grace*, 228 F.3d at 47 ; *Wilson,* 979 F.2d at 931.

Plaintiffs' third Proxy Allegation is that the Board falsely stated that Plaintiffs' State Court Action sought to "prohibit" the Company from "manufacturing, marketing and selling" modern sporting rifles. Complaint at ¶147. This statement (like the others) was also true. Specifically, Plaintiffs' State Court Action included Prayers for Relief asking the Nevada District Court to:

- Find[] the Director Defendants liable for breaching their fiduciary duties by knowingly allowing Smith & Wesson to violate federal, state and local laws through its manufacturing, marketing and sales of AR-15 Rifles; preventing any protection from liability otherwise afforded under the PLCAA;

- Find[] the Officer Defendants liable for breaching their fiduciary duties by knowingly allowing Smith & Wesson to violate federal, state and local laws through its manufacturing, marketing and sales of AR-15 Rifles; preventing any protection from liability otherwise afforded under the PLCAA; [and]

- Direct[] Smith & Wesson to take all necessary actions to reform and improve its compliance procedures and governance policies to comply with applicable laws and to protect Smith & Wesson and its stockholders from a repeat of the damaging events described herein[.]

Exhibit 1. Plaintiffs' State Court Complaint at Prayer for Relief B, C, and E. If the Nevada District Court had granted those Prayers for Relief, S&W's only protection against further violations would have been to stop selling modern sporting rifles (i.e., what Plaintiffs' Complaint calls AR-15 Rifles). Accordingly, Plaintiffs' third Proxy Allegation is not an objectively false or misleading statement of fact; instead, it is a truthful statement as to how the Company and the Board perceived Plaintiffs' lawsuit. Plaintiffs' Complaint lacks any particularized allegations

that Defendants disbelieved the opinions they expressed, or that the opinions omitted facts that rendered them misleading. Absent such allegations, Plaintiff cannot transform subjective judgments into actionable misstatements.

Plaintiffs' fourth Proxy Allegation fails to show the false or misleading nature of the Board's claim that Plaintiffs' failed 2024 Stockholder Proposal could have exposed S&W to "human rights costs estimated at $557 billion per year." Complaint ¶ 148. The Board's stated estimate is derived from source material that is even cited by Plaintiffs' Complaint. *See* Complaint at ¶ 148, fn. 86; *see also* Exhibit 4 at p. 46 (citing "Omnilert, *2023 Gun Violence Statistics* (January 16, 2024) (suggesting gun violence has an annual economic impact of $557 billion"). The reference to the Omnilert statics contained in the 2024 Proxy was both clear and conspicuous. *See* Exhibit 3 at p. 46, fn. 8. The fourth Proxy Allegation is, again, not a false or misleading statement by the Board. Unsurprisingly, Plaintiffs never really explain why that statement could be false or misleading, and their pleadings as to this allegation do not meet the heightened requirements of the PSLRA. 15 U.S.C. § 78n(a)(1); *see also* 17 C.F.R. § 240.14a-9(a); *Grace*, 228 F.3d at 47; *Wilson,* 979 F.2d at 931.

Plaintiffs' fifth Proxy Allegation should be rejected as it omits material facts that were included in the 2024 Proxy explaining why the Board believed that imposing the United Nations Guiding Principles on Business and Human Rights on S&W would require the Company to "reduce [its] lawful product offerings." *See* Complaint at ¶149; Exhibit 4 at p 46. For full context, the 2024 Proxy explained that Plaintiffs distributed a press release days after filing the State Court Complaint where Plaintiffs revealed that their strategy was to have S&W cease the sale, marketing, and manufacture of lawful products (i.e., modern sporting rifles). Exhibit 4 at p. 46, fn. 9. Again, the 2024 Proxy even provides a citation and link to Plaintiffs' public press release. *See* Complaint at ¶¶143 at fn. 80, 149; see also Exhibit 4 at p. 46, fn. 9. Accordingly, there is no deception – S&W invited investors to read the press release for themselves. *See Hurtado v. Gramercy Property Trust*, 425 F.Supp.3d 496, 519 (D. Md. 2019) (finding no "substantial likelihood" the disputed omission would have been viewed by the reasonable investor as having

significantly altered the total mix of information made available because the disputed proxy provided a thorough and accurate summary of Morgan Stanley's work); *see also Kuebler v. Vectren Corp.*, 412 F.Supp.3d 1000, 1008–10 (S.D. Ind. 2019) (collecting cases for the proposition that the failure to disclose inputs in a proxy's financial valuation "are immaterial when a proxy statement contains other valuation projections and a summary of the financial advisor's analysis"); *Vardakas v. Am. DG Energy Inc.*, No. 17-cv-10247-LTS, 2018 WL 1141360, at *5 (D. Mass. Mar. 2, 2018) (ruling omission of criteria that defendant's financial advisor used to select comparator companies for fairness opinion analysis was immaterial because the companies themselves were disclosed); *Ridler v. Hutchinson Tech., Inc.*, 216 F. Supp. 3d 982, 988-89 (D. Minn. 2016) (holding omitted information that plaintiff alleged concealed "flaws in the fairness opinion" was not material "given the detail provided in the nearly 200-page proxy and fifteen independent reasons given by the board in recommending the merger").

Similar to the second Proxy Allegation, Plaintiffs' sixth Proxy Allegation should be rejected as it arises out of statements that could not have been provably false or misleading at the time they were made. *See* 17 C.F.R. § 240.14a-9(a); *see also Kuebler*, 13 F.4th at 637. The complete sentence from the 2024 Proxy states, "[T]hose proposals are expensive and time consuming to address and are used by the proponent to generate negative publicity about us, which from the proponent's actions appears to be the point." *See* Complaint at ¶¶143 at fn. 82; *see also* Exhibit 3 at p. 47. Plaintiffs point to nothing that demonstrates those statements were false—or known to be false—*at the time they were made in August 2024.* Further, the phrase "appears to be the point" is unmistakably indicative of subjective interpretation and reveals an opinion rather than asserting an objective or verifiable truth. *See* Complaint ¶ 150; *see also* Exhibit 4 at p. 47. *Omnicare* instructs that an investor cannot state a claim by merely alleging that the opinion is wrong. *See Omnicare, Inc. v. Laborers Dist. Council Const. Inds. Pension Fund*, 575 U.S. 175,

194 (2015). The Court further holds "[t]hat it is no small task" for an investor to:

> identify particular (and material) facts going to the basis for the issuer's opinion— facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.

*See id.* In addition, the opinions expressed by the Company about the potential motivations of the proponents were informed by the Company's many years of interacting with the proponents – the 2024 Proxy was the seventh consecutive proxy statement filed by the Company that included a proposal from an ideologically aligned group of activist stockholders.

Because Plaintiffs do not identify a single false statement of fact or misleading opinion much less identify particularized material facts going into those opinions that were omitted, their Section 14(a) claim cannot survive under the PSLRA.

### B.    Plaintiffs Fail to Plead Sufficient Facts of Materially Misleading Disclosures Regarding Board-Level Oversight of Risk

Plaintiffs' claims as to material misleading disclosures regarding Board-level oversight of risks should be dismissed for failing to plead facts showing any of the elements of a Section 14(a) claim. *See Mills*, 396 U.S. 384–85; *see also Moss*, 572 F.3d at 969. Plaintiffs' facts in support of their Section 14(a) claim for misleading disclosures of Board-level oversight are taken nearly verbatim from their Breach of Fiduciary Duty claim in the State Court Complaint. *See* Complaint at ¶¶152-162 *compare with* Exhibit 1, Nevada District Court Complaint ¶¶135-145). In this regard, the Security Order is persuasive in framing Plaintiffs' particular factual allegations now used in support of their Section 14(a) claims as style over substance. The Security Order found in relevant part that Plaintiffs did not plead any facts showing that Defendants failed to properly oversee any potential liabilities that S&W might face. Specifically, it found that Plaintiffs' allegations as to Defendants' lack of oversight in fact "contradicted" Plaintiffs' allegations that there was a lack of oversight; and that Plaintiffs' disagreements with the reasonableness of Defendants' assessments and conclusions (which arose from their oversight) did not rebut the high bar and presumptions of Nevada's business judgment rule.

That Plaintiffs disagree with the ESG Committee's assessment of emerging risks is plain, as the Complaint alleges that the ESG Committee makes a "perversion" of the "emerging risks"

facing S&W. *See* Complaint at ¶155. Despite that conclusory allegation, the Complaint is devoid of any specific statement or omission made by the ESG Committee concerning its assessment of emerging risks—or even how any such statement or omission (if made) could have somehow injured Plaintiffs or S&W's other stockholders. As such, it fails to meet the heightened pleading requirements of the PSLRA. 15 U.S.C. § 78n(a)(1); *see also* 17 C.F.R. § 240.14a-9(a); *Grace*, 228 F.3d at 47; *Wilson*, 979 F.2d at 931; *Mills*, 396 U.S. at 384–85. Similarly, Plaintiffs' factual allegations against the Director Defendants should be dismissed for failing to plead any facts to support the elements of a Section 14(a) claim. *See Mills*, 396 U.S. at 384–85; s*ee also* Complaint at ¶¶157-162. Plaintiffs plead that the Director Defendants are focused on "reputational risks" given gun violence in the United States and did not consider "real material risks facing the Company in connection with its exposure to liability for manufacturing, marketing, and selling AR-15 Rifles used to commit gun violence." *See* Complaint at ¶¶157-160, 162. Again, Plaintiffs fail to plead any specific statement or omission made by the Director Defendants—regardless of its materiality—as to their assessment of risk related to the sale of modern sporting rifles. 15 U.S.C. § 78n(a)(1); *see also* 17 C.F.R. § 240.14a-9(a); *Grace*, 228 F.3d at 47; *Wilson,* 979 F.2d at 931; *Mills*, 396 U.S. at 384–85. Therefore, Plaintiffs' Section 14(a) claim should be dismissed for utterly failing to plead any non-conclusory facts with reasonable inferences from those facts that are "plausibly suggestive of a claim entitling the plaintiff to relief." *See Moss*, 572 F.3d at 969.

C.    **Plaintiffs Fail to Plead Facts Showing Injury Causation**

Under the PSLRA, a plaintiff is also required to allege and prove that the challenged misrepresentations or omissions caused her economic loss.[11] *See* 15 U.S.C. § 78u-4(b)(4); *see*

---

[11] Causation in the context of securities law consists of two components: transaction causation and loss causation. *See Dura Pharma., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005); *Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000). Transaction causation, often called reliance, is generally easier to establish than loss causation. *See Dura Pharma.*, 544 U.S. at 345–46 (2005). Where materiality is alleged and proven, proof of reliance on a particular statement or omission is not necessary. *See Mills*, 396 U.S. at 384–85 (rejecting court of appeals' additional requirement of proof that specific defect in proxy statement actually had a decisive effect on voting). A proxy solicitation itself may serve as the causal link in the transaction—that the challenged violation(s) caused the plaintiff to engage in the challenged transaction. *See id*. at

*also Law v. Medco Research, Inc.*, 113 F.3d 781, 786–87 (7th Cir. 1997) (§ 78u-4(b)(4) (codifying the court-made "loss causation" rule)). As established above, Plaintiffs fail to plead facts of any false or misleading statement made by the Board. Without any false or misleading facts, it follows that Plaintiffs' Complaint fails to plead facts of the other essential elements: (1) injury causation; and (2) that the proxy solicitation was an essential link in accomplishing the transaction. *See Mills*, 396 U.S. at 384–85. Thus, the Court should dismiss Plaintiffs' Section 14(a) claim for failure to plead all the essential elements.

## IV. IF THE COURT DOES NOT DISMISS PLAINTIFFS' COMPLAINT, IT SHOULD REQUIRE THAT SECURITY BE POSTED PURSUANT TO THE SECURITY ORDER OR NRS 41.520

Plaintiffs cannot dispute that their stockholder derivative claims are brought to remedy a purported breach of fiduciary duty by Defendants. Plaintiffs similarly cannot dispute that the Nevada District Court ordered them to post a bond pursuant to NRS 41.520 on that basis. In an attempt to escape that Order, Plaintiffs allowed dismissal of the State Court Action and filed this action in Nevada federal court. Application of a specific Nevada state law governing Plaintiffs' derivative claims should not be thwarted by such blatant gamesmanship. Further, the Security Order remains a binding judicial order on Plaintiffs, no matter where they file their derivative action against Defendants. This Court should enforce it as such. Finally, the Security Order should be enforced as a matter of equity. It was and remains a valid Order of the Nevada District Court that requires Plaintiffs to post a $500,000 bond before pursing any derivative claim against Defendants. Plaintiffs' flight from a state court forum to this Court should not be rewarded.

If the Court decides not to enforce the state court's order, then it should impose the same bond under NRS 41.520. The plain language of NRS 41.520 makes it clear that its application is not limited to Nevada state court actions, but to any "action brought to enforce a secondary right on the part of one or more shareholders in a corporation." NRS 41.520; *see also In re Cook*, Bankruptcy No. 7–04–17704 SA, Adversary No. 08–1074 S, 2009 WL 2913241, at *1-2 (Bankr. D.N.M. April 15, 2009) (noting that NRS 41.520 is substantive law, and not merely procedural

---

385, *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1099– 1100 (1991).

and therefore applies to any action asserting derivative claims under Nevada state law); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 557 (1949) (finding that New Jersey law requiring unsuccessful derivative plaintiff liable for all expenses applies in federal diversity cases because it is substantive law). Accordingly, NRS 41.520 applies in this matter just as any state law would under similar circumstances—and the Court can impose a bond in accord with the Nevada District Court's Security Order as a matter of *res judicata*. *Sierra Pacific Power Co. v. Craigie*, 738 F. Supp. 1325, 1328 (D.N.V. 1990) ("When a party asserts the preclusive effect of a state court judgement, 28 U.S.C. § 1738 (1966) requires that federal courts give a state court judgement the same full faith and credit as that judgement would receive under the law of the state in which the judgment was rendered").

Accordingly, if the Court allows Plaintiffs' action to continue past the motion to dismiss stage, then Defendants respectfully request that this Court enforce the Nevada District Court's Security Order and require Plaintiffs to post security in the amount of $500,000, or find Plaintiffs collaterally estopped from opposing entry of a new bond order by this Court in the same amount.

///

///

///

Defendants' Motion to Dismiss

1

2 **<u>CONCLUSION</u>**

3     For all of these reasons, Defendants respectfully request that the Court dismiss Plaintiffs'

4 Complaint with prejudice or, in the alternative, impose a bond in the amount of $500,000 as

5 security to cover Defendants' potential legal costs and fees pursuant to NRS 41.520.

6 DATED: May 1, 2025

7                                         */s/ Jeffrey F. Barr*
                                          JEFFREY F. BARR, ESQ.
                                          Nevada Bar No. 7269
8                                         Ashcraft & Barr | LLP
                                          9205 West Russell Road, Suite 240
9                                         Las Vegas, Nevada  89148
                                          (702) 631-4755
10
                                          *Attorneys for Defendants*
11
                          **<u>INDEX OF EXHIBITS</u>**
12

| EXHIBIT | Bates Number |
|---|---|
| Exhibit 1—District Court Complaint | SWBI_0000000001-SWBI_0000000055 |
| Exhibit 2—Monitoring Report | SWBI_0000000056-SWBI_0000000081 |
| Exhibit 3—Minute Report | SWBI_0000000082-SWBI_0000000086 |
| Exhibit 4—Proxy Statement | SWBI_0000000087-SWBI_0000000150 |

15                     **<u>CERTIFICATE OF SERVICE</u>**

16     I hereby certify that on the 1st day of May 2025, I served a true and correct copy of the

17 foregoing Defendants' **Motion to Dismiss** via CM/ECF.

18

19                                        */s/ Jeffrey F. Barr*
                                          An Employee of Ashcraft & Barr | LLP

20

21

22

23

24

25

26

27