**MATTHEW L. SHARP, LTD.**
Matthew L. Sharp, Esq.
Nevada Bar No. 4746
432 Ridge St.
Reno, NV 89501
(775) 324-1500
matt@mattsharplaw.com

**NEWMAN FERRARA LLP**
Jeffrey M. Norton, Esq. (*Admitted Pro Hac Vice*)
Benjamin D. Baker, Esq. (*Admitted Pro Hac Vice*)
1250 Broadway, 27th Floor
New York, NY 10001
Tel: (212) 619-5400
Fax: (212) 619-3090
jnorton@nfllp.com
bbaker@nfllp.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ADRIAN DOMINICAN SISTERS, SISTERS OF BON SECOURS USA, SISTERS OF ST. FRANCIS OF PHILADELPHIA, and SISTERS OF THE HOLY NAMES OF JESUS & MARY, U.S.-ONTARIO PROVINCE, derivatively on behalf of SMITH & WESSON BRANDS, INC., | Case No.: 2:25-cv-00236-GWN-MDC |

Plaintiff,

    v.

MARK P. SMITH, KEVIN A. MAXWELL, SUSAN J. CUPERO, ROBERT L. SCOTT, ANITA D. BRITT, FRED M. DIAZ, MICHELLE J. LOHMEIER, BARRY M. MONHEIT, and DENIS G. SUGGS,

                       Defendants.

    -and-

SMITH & WESSON BRANDS, INC., a Nevada Corporation,

                 Nominal Defendant.

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' <u>VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................... ii

I.    PRELIMINARY STATEMENT ............................................................1

II.   PROCEDURAL HISTORY AND RELEVANT BACKGROUND ...........................3

   A. Plaintiffs' Investigation and the Prior State Court Action..........................3

   B. The Company's Unlawful Practices..................................................5

   C. The Board Ignores the Company's Unlawful Practices and Issues False
      And/or Misleading Disclosures......................................................7

   D. The Courts Deem Smith & Wesson's Practices Unlawful and the
      Company Incurs Actual Harm .......................................................8

III.  ARGUMENT .............................................................................11

   A. Plaintiffs Satisfy the FRCP 23.1 Standing Requirements ..........................12

      1. The Complaint Sufficiently Alleges Demand Futility ...........................12

         a.  Smith & Wesson's Directors Consciously Disregarded
             Their Oversight Duties by Ignoring "Red Flags" of
             Unlawful Conduct.............................................................15

         b.  The Position of Smith & Wesson's Directors Taken Against
             the Plaintiffs' Stockholder Proposals Confirms that
             Demand is Futile .............................................................15

      2. Plaintiffs Fairly and Adequately Represent the Interests of
         Similarly Situated Stockholders..................................................17

   B. Plaintiffs Sufficiently Plead Derivative Breach of Fiduciary Duty
      Claims ................................................................................19

      1. Plaintiffs Rebut the Business Judgment Rule ...................................20

      2. Plaintiffs Allege Intentional Misconduct and a Knowing
         Violation of Law ..................................................................22

   C. Plaintiffs Sufficiently Plead a Direct Claim for Violations of Section
      14(a) ..................................................................................24

   D. The Individual Defendants' Bond Request is Baseless...........................26

   E. In the Alternative, Plaintiffs Should be Granted Leave to Amend.................28

IV.   CONCLUSION ..........................................................................29

CERTIFICATE OF SERVICE ...................................................................31

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Amalgamated Bank v. Yahoo! Inc.*,
    132 A.3d 752 (Del. Ch. 2016) ........................................... 13

*Arduini v. Hart*,
    774 F.3d 622 (9th Cir. 2014) ........................................... 13, 26

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................... 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................... 11

*Bevis v. City of Naperville*,
    85 F.4th 1175 (7th Cir. 2023) ........................................... 21

*Bianchi v. Brown*,
    111 F.4th 438 (4th Cir. 2024) ........................................... 21

*Biondi v. Scrushy*,
    820 A.2d 1148 (Del. Ch. 2003) ........................................... 15

*Brady v. Walmart Inc.*,
    2022 WL 2987078 (D. Md. July 28, 2022) ........................................... 23

*Broam v. Bogan*,
    320 F.3d 1023 (9th Cir. 2003) ........................................... 11

*Bryant v. City of Pomona*,
    2022 WL 4363430 (9th Cir. Sept. 21, 2022) ........................................... 28

*Chur v. Eighth Judicial Dist. Court of Nev.*,
    458 P.3d 336 (Nev. 2020) ........................................... 13, 19, 20

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ........................................... 11

*Cotter v. Kane*,
    473 P.3d 451 (Nev. 2020) ........................................... 17

*Craig v. Target Corp.*,
    2024 WL 4979234 (M.D. Fla. Dec. 4, 2024) ........................................... 25, 26

*Del. Cnty. Empls. Ret. Fund v. Sanchez*,
    124 A.3d 1017 (Del. 2015) ........................................... 13

*Desimone v. Barrows*,
    924 A.2d 908 (Del. Ch. 2007) ........................................... 16

*Duncan v. Bonta*,
    133 F.4th 852 (9th Cir. 2025) ........................................... 21

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ........................................................................... 28

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.* ,
   91 F.4th 511 (1st Cir. 2024) ......................................................................... 9, 21

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.* ,
   605 U.S. ___, 2025 WL 1583281 (2025) ............................................................ 23

*Felipe v. Playstudios Inc.*,
   2024 WL 1380802 (D. Nev. Mar. 31, 2024) ....................................................... 24

*Galef v. Alexander*,
   615 F.2d 51 (2d Cir. 1980) ................................................................................. 24

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246 (9th Cir. 1997) ............................................................................. 11

*Hughes v. Xiaoming Hu*,
   2020 WL 1987029 (Del. Ch. Apr. 27, 2020) ...................................................... 22

*In re Caremark Int'l*,
   698 A.2d 959 (Del. Ch. 1996) ...................................................................... 13, 15

*In re China Agritech, Inc.*,
   2013 WL 2181514 (Del. Ch. May 21, 2013) ............................................. 14, 15, 22

*In re Countrywide Fin. Corp. Derivative Litig.*,
   554 F. Supp. 2d 1044 (C.D. Cal. 2008) ............................................................. 12

*In re Massey Energy Co. Derivative & Class Action Litig.* ,
   2011 WL 2176479 (Del. Ch. May 31, 2011) ............................................... *passim*

*In re Walt Disney Co. Derivative Litig.*,
   825 A.2d 275 (Del. Ch. 2003) ...................................................................... 13, 22

*J.P. Morgan Chase & Co. S'holder Litig. v. Harrison* ,
   906 A.2d 766 (Del. 2006) .................................................................................. 12

*Jacobi v. Ergen*,
   2015 WL 1442223 (D. Nev. Mar. 30, 2015) ....................................................... 29

*La. Mun. Police Emps. Ret. Sys. v. Pyott*,
   46 A.3d 313 (Del. Ch. 2012) ....................................................................... 14, 22

*La. Mun. Police Emps. Ret. Sys. v. Wynn*,
   2013 WL 431339 (D. Nev. Feb. 1, 2013) ........................................................... 13

*Larson v. Dumke*,
   900 F.2d 1363 (9th Cir. 1990) ........................................................................... 18

*Leb. Cnty. Emps. Ret. Fund v. Collis*,
   311 A.3d 773 (Del. 2023) ......................................................................... 14, 19, 20

*Lee v. Fisher*,
   70 F.4th 1129 (9th Cir. 2023) ............................................................................ 12

iii

*Marchand v. Barnhill*,
   212 A.3d 805 (Del. 2019) ............................................................................... 20

*Minnesota v. Fleet Farm L.L.C.*,
   679 F. Supp. 3d 825 (D. Minn. 2023) ........................................................... 23

*N.Y. City Emps. Ret. Sys. v. Jobs*,
   593 F.3d 1018 (9th Cir. 2010) ........................................................................ 24

*Nat'l Ctr. for Pub. Policy Rsch. v. Schultz*,
   2023 WL 5945958 (E.D. Wash. Sept. 11, 2023) ..................................... 17, 18

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) .......................................................................... 11

*New York v. Armor Ally, LLC*,
   2024 WL 2270351 (S.D.N.Y. May 20, 2024) ............................................... 23

*New York v. Armor Ally, L.L.C.*,
   2024 WL 756474 (S.D.N.Y. Feb. 23, 2024) .................................................. 23

*NRA v. Bondi*,
   133 F.4th 1108 (11th Cir. 2025) ..................................................................... 21

*Roberts v. Smith & Wesson Brands, Inc.*,
   Case No. 22 La. 00000487 (Ill. Cir. Ct. Apr. 1, 2025) ........................ 9, 21, 23

*Parametric Sound Corp. v. Eighth Judicial Dist. Court of Nev.*,
   133 Nev. 417 (2017) ...................................................................................... 12

*Pension Fund v. Zuckerberg*,
   262 A.3d 1034 (Del. 2021) ............................................................................ 13

*Prescott v. Slide Fire Sols., LP*,
   410 F. Supp. 3d 1123 (D. Nev. 2019) ........................................................... 23

*Pyott v. La. Mun. Police Emps. Ret. Sys.*,
   74 A.3d 612 (Del. 2013) ................................................................................ 22

*Shoen v. SAC Holding Corp.*,
   137 P.3d 1171 (Nev. 2006) ............................................................................ 13

*Smith & Wesson Brands, Inc. v. AG of N.J.*,
   105 F.4th 67 (3d Cir. 2024) ............................................................................. 8

*Smith & Wesson Corp. v. City of Gary*,
   875 N.E.2d 422 (Ind. Ct. App. 2007) ............................................................ 23

*Soto v. Bushmaster Firearms Int'l, L.L.C.*,
   202 A.3d 262 (Conn.) .............................................................................. 23, 24

*Spink v. Lockheed Corp.*,
   60 F.3d 616 (9th Cir. 1995) ........................................................................... 27

*Stone v. Ritter*,
   911 A.2d 362 (Del. 2006) ......................................................................... 13, 21

*Teamsters Local 443 Health Servs. & Ins. Plan v. Chou* ,
    2020 WL 5028065 (Del. Ch. Aug. 24) ........................................................ 15

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.* ,
    845 A.2d 1031 (Del. 2004) ........................................................................... 12

*Williams v. Beemiller, Inc.*,
    100 A.D.3d 143 (4th Dep't 2012) ................................................................ 23

**STATUTES**

15 U.S.C. § 7903 ............................................................................................. 23

815 Ill. Comp. Stat. Ann. 505/2BBBB ............................................................. 6

Cal. Civ. Code § 3273.50 ................................................................................. 6

Cal. Penal Code § 16350 .................................................................................. 6

Colo. Rev. Stat. Ann. § 47-18-104 ................................................................... 6

Colo. Rev. Stat. Ann. § 6-27-101 ..................................................................... 6

Colo. Rev. Stat. § 18-12-101 ............................................................................ 6

Conn. Gen. Stat. § 53-202a .............................................................................. 6

D.C. Code Ann. § 7-2501.01 ............................................................................ 6

Del. Code Ann. tit. 10, § 3930 ......................................................................... 6

Del. Code Ann. tit. 11, § 1466 ......................................................................... 6

Haw. Rev. Stat. Ann. § 134-1 .......................................................................... 6

Haw. Rev. Stat. Ann. § 134-101 ...................................................................... 6

Mass. Gen. Laws ch. 140, § 121 ...................................................................... 6

Md. Code Ann., Crim. Law § 4-301 ................................................................ 6

Md. Code Ann., Pub. Safety § 5-101 ............................................................... 6

Md. Code Ann., Cts. & Jud. Proc. § 3-2301 .................................................... 6

N.J. Stat. Ann. § 2C:58-35 ............................................................................... 6

N.J. Stat. Ann. § 2C:39 .................................................................................... 6

N.Y. Gen. Bus. Law § 898-a ............................................................................ 6

N.Y. Penal Law § 14 ........................................................................................ 6

N.Y. Penal Law § 265.00 ................................................................................. 6

Nev. Rev. Stat. § 41.520 ........................................................................... *passim*

Nev. Rev. Stat. § 78.138 ........................................................... 19, 22, 19, 20, 24

Wash. Rev. Code Ann. § 7.48.330 ................................................................... 6

**RULES**

Fed. R. Civ. P. 12 ................................................................................................ 11

Fed. R. Civ. P. 14 ................................................................................................ 12

Fed. R. Civ. P. 23.1 ....................................................................................... *passim*

**OTHER**

Bower & Paine, *The Error at the Heart of Corporate Leadership*, HARVARD BUSINESS REVIEW (May-June 2017). .................................................................................... 17

Plaintiffs Adrian Dominican Sisters, Sisters of Bon Secours USA, Sisters of St. Francis of Philadelphia, and Sisters of the Holy Names of Jesus & Mary, U.S.-Ontario Province ("Plaintiffs"), derivatively, on behalf of Smith & Wesson Brands, Inc. ("Smith & Wesson"), respectfully submit this answering brief in opposition to the Defendants' Motion to Dismiss Plaintiffs' Verified Stockholder Derivative Complaint (Dkt. No. 24, the "Motion"), filed by individual defendants Mark P. Smith ("Smith"), Kevin A. Maxwell ("Maxwell"), Susan J. Cupero ("Cupero"), Robert L. Scott ("Scott"), Anita D. Britt ("Britt"), Fred M. Diaz ("Diaz"), Michelle J. Lohmeier ("Lohmeier"), Barry M. Monheit ("Monheit"), and Denis G. Suggs ("Suggs") (collectively, the "Individual Defendants") under Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 23.1 or, in the alternative, to impose a bond pursuant to NRS 41.520.[1] For the reasons set forth herein, the Motion should be denied in its entirety.

## I.      PRELIMINARY STATEMENT

The Complaint in this action details the story of a Company that, after 150 years of conducting successful and responsible business, had a board of directors ("Board") that allowed it to knowingly prioritize short-term revenue and profits over compliance with affirmative law.

In connection therewith, the Individual Defendants intentionally ignored red flags related to the Company's unlawful marketing and sales practices of AR-15 Rifles that caused it to incur substantial exposure to liability and harm, including: (i) steadily growing numbers of mass shootings in which the perpetrator has chosen to use the Company's AR-15 Rifles; (ii) state and federal investigations regarding the Company's unlawful marketing practices; (iii) lawsuits that sufficiently allege unlawful practices by the Company to support a predicate exception to the Protection of Lawful Commerce in Arms Act ("PLCAA") and prevent its application; and (iv) the significant support of Company stockholders for the Plaintiffs' stockholder proposals to adopt reforms that could mitigate the resulting harm.

---

[1]    References to "Compl. ¶ __" refer to the Verified Stockholder Derivative Complaint (Dkt. No. 1) (the "Complaint"). Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Complaint.

To be clear, contrary to the Individual Defendants' unfounded assertions, the "sole purpose" of Plaintiffs' Complaint here is not to "stop[] the manufacture, marketing, and sale of modern sporting rifles," or "burden the Company and harass the Board and Management into abandoning a lawful product line," or to "misuse the judicial system to pursue their activist agenda to effect societal change." Such *ad hominem* attacks on Plaintiffs appear to be based more on negative and alarmist press rather than a well-considered assessment of the fulsome allegations in the Complaint. Had the Individual Defendants undertaken that task, they would understand that the Complaint seeks to benefit the Company by forcing its Officers and Directors to adopt corporate governance measures aimed at: (a) recovering liabilities from those responsible for the Company's failure of oversight; (b) increasing oversight; (c) preventing Smith & Wesson from incurring further liabilities for defense and related costs from pending lawsuits which resulted from its dangerous marketing practices that facilitate illegal sales of AR-15 Rifles to individuals with an increased propensity to harm others, and in states, localities, and foreign countries that ban the same; and (d) repairing the substantial reputational harm suffered by the Company. Such actions would result in a clear benefit to the Company.

With regard to the Individual Defendants' purported efforts through the Shareholder Requested Report on Product Safety Measures and Monitoring of Industry Trends ("Monitoring Report"), Plaintiffs submit that the Monitoring Report is not only untested evidence but is otherwise nothing more than contrived window dressing that misses the mark entirely on Plaintiffs' allegations. As explained in the Complaint, the Monitoring Report offers zero support for the proposition that the Individual Defendants are exercising sufficient oversight over the Company's exposure to legal risks in connection with the illegal manufacturing, marketing, and sales of AR-15 Rifles. Instead, the Monitoring Report establishes that Individual Defendants *rejected* out of hand the suggestion that they monitor anything other than short-term revenue and profits (*i.e.*, there was no consideration of grave legal risks posed by the growing number of non-PLCAA actions and/or exposure to liability). And, while the Defendants conflate the monitoring of

reputational risks with legal risks, it is clear that the Monitoring Report neither rebuts nor conclusively establishes the falsity of any allegation in the Complaint.

At bottom, the Individual Defendants prioritized the Company's short-term revenue and profits over regulatory compliance, leading to a systemic failure to ensure that Smith & Wesson is protected by the PLCAA when sued for downstream harm related to the Company's manufacturing, marketing, and sales of AR-15 style rifles ("AR-15 Rifles"). The law does not permit such misconduct, which is "disloyal in the most fundamental sense."[2] As demonstrated below, each of Defendants' arguments lacks merit. The Complaint consists of well-pled particularized facts showing that a majority of Smith & Wesson's Board knowingly violated law and thus are not protected by the business judgment rule. Plaintiffs also sufficiently allege that a demand on the Board would be futile, given the directors' conflicts of interest and substantial risk of liability. In addition, Plaintiffs meet all standing requirements of Article III and Rule 23.1 – they are continuous shareholders who seek to protect the Company's interests, and their advocacy for corporate compliance does not disqualify them from fairly representing shareholders. Furthermore, Plaintiffs' claims under Section 14(a) of the Securities Exchange Act are well-pled under the applicable standards, identifying specific false or misleading statements in the Company's proxy materials and explaining exactly why they were false. Finally, Defendants' preposterous request to force Plaintiffs to post a $500,000 bond under NRS 41.520 should be denied.

For the reasons and arguments advanced above and hereunder, Plaintiffs respectfully submit that the Motion should be denied in its entirety.

## II.    PROCEDURAL HISTORY AND RELEVANT BACKGROUND

### A.    PLAINTIFFS' INVESTIGATION AND THE PRIOR STATE COURT ACTION

Since February 16, 2023, Plaintiffs investigated and litigated the claims in the Complaint.[3] Before filing this action, Plaintiffs litigated similar derivative claims alleging breach of fiduciary

---

[2]    *In re Massey Energy Co.*, 2011 WL 2176479, *21 n.148 (Del. Ch. May 31).
[3]    Compl. ¶¶ 30-47.

duty in Nevada's Eighth Judicial District Court (the "State Court Action").[4] On March 19, 2024, the District Court granted Defendants' Bond Motion pursuant to NRS 41.520, requiring Plaintiffs to post a $500,000 bond by April 23, 2024, concluding—without a modicum of proper analysis—that there was "no reasonable possibility" the claims would benefit the corporation or its security holders.[5] The District Court improperly adopted Defendants' proposed order containing unsupported conclusions on the merits, violating controlling law prohibiting such determinations.[6] After Plaintiffs declined to post the bond, the District Court dismissed the case without prejudice on June 11, 2024.[7] Later, on September 17, 2024, the court denied Defendants' subsequent Motion for Attorneys' Fees, explicitly finding Plaintiffs' claims were brought on "reasonable grounds" and involved "novel and arguable issues"—flatly contradicting its earlier bond order. Based on the District Court's *de facto* reversal of its earlier order, Plaintiffs determined an appeal was no longer necessary.[8]

On February 4, 2025, Plaintiffs filed the Complaint against the Individual Defendants, alleging breaches of fiduciary duties and violations of Section 14(a). The Complaint alleges that the Individual Defendants willfully permitted Smith & Wesson to engage in intentional misconduct and knowing violations of law associated with the Company's manufacturing, marketing, and sales of AR-15 style rifles ("AR-15 Rifles"), which has unnecessarily exposed the Company and its stockholders to significant harm.[9]

Plaintiffs assert that the Individual Defendants, including directors and senior officers, knowingly allowed Smith & Wesson to be exposed to significant liability by intentionally violating federal, state, and local laws through reckless manufacturing, marketing, and selling practices concerning AR-15 Rifles. Specifically, the Individual Defendants failed to exercise oversight or

---

[4]    Compl. ¶ 36.
[5]    Compl. ¶¶ 37-38.
[6]    Compl. ¶¶ 39-40.
[7]    Compl. ¶ 41.
[8]    Compl. ¶¶ 42, 44-45.
[9]    Compl. ¶¶ 1-2.

adopt risk-mitigation strategies despite numerous lawsuits, governmental investigations, and legislative actions explicitly related to the dangerous misuse of AR-15 Rifles in mass shootings.[10] Instead, the Board "made the affirmative decision to place the interests of the Company's customers above those of its stockholders."[11] In so doing, the Individual Defendants placed their "personal interests, greed, biases, beliefs, and political concerns above the interests of the Company and its stockholders."[12]

### B.    THE COMPANY'S UNLAWFUL PRACTICES

Smith & Wesson strategically entered the AR-15 market only after successfully lobbying Congress for the PLCAA's passage in 2005.[13] The Company spent millions lobbying for this legal protection before starting to manufacture AR-15 Rifles in January 2006.[14] The timing of the Company's efforts demonstrates the Board's keen awareness of the inherent liability risks associated with AR-15 manufacturing and sales.[15]

Since January 2012, the Individual Defendants knowingly allowed the Company to violate various laws, and, in doing so, willfully ignored numerous "red flags," including the use of Smith & Wesson AR-15 Rifles to commit highly publicized and repeated mass shootings across jurisdictions with laws banning AR-15 purchases, ownership, or possession.[16] The Individual Defendants allowed the Company to violate the law by marketing its AR-15 Rifles in a manner that violates numerous state laws to create a "halo effect"—a brand enhancement mechanism designed to confer legitimacy and tactical credibility upon consumer products by insinuating association with professional entities. The Company conducted this unlawful marketing through: (i) its use of "first-person shooter" video game aesthetics to appeal directly to juveniles and young adults; (ii) advertisements crafted to mimic the experience of popular violent video games,

---

[10]   Compl. ¶¶ 1-5.
[11]   Compl. ¶ 6.
[12]   Compl. ¶ 4.
[13]   Compl. ¶¶ 53-55.
[14]   Compl. ¶¶ 53, 63.
[15]   Compl. ¶¶ 52-53.
[16]   Compl. ¶ 65.

potentially desensitizing young individuals and encouraging real-life reenactments of virtual scenarios; (iii) the Company's strategic deployment of militarized branding to invoke the authority of institutions that never endorsed the Company's products, like the adoption of the "M&P" (Military & Police) label, combined with pervasive use of law enforcement iconography and textual associations with official oaths, aimed at creating the false impression that the Company's AR-15 Rifles were operationally sanctioned or regularly used by police or armed forces.[17] Through this practice, the Company is violating state laws that govern its marketing of AR-15 Rifles, like state unfair business practices statutes that prohibit unfair and deceptive advertising, including advertising that induces the unlawful and reckless use of the Company's products, which prohibits the Company from promoting the unlawful or dangerous use of its AR-15 Rifles).[18]

Compounding these practices is the Company's apparent indifference to state and local legal regimes explicitly prohibiting the sale or possession of AR-15 Rifles.[19] Rather than geo-fencing its advertising or adopting compliance protocols to respect jurisdictional bans, the Individual Defendants willfully and systematically disregarded state and local laws by permitting Smith & Wesson to maintain a uniform national advertising model that targets consumers in prohibited markets such as California, New York, and Illinois, as well as consumers who are too young to lawfully purchase its AR-15 Rifle.[20] These laws were explicitly enacted to mitigate the

---

[17]    Compl. ¶¶ 83-89.

[18]    *See, e.g.*, N.Y. Gen. Bus. Law §§ 898-a to -e; see also Del. Code Ann. tit. 10, § 3930; N.J. Stat. Ann. § 2C:58-35; Cal. Civ. Code §§ 3273.50-.55; Haw. Rev. Stat. Ann. §§ 134-101 to -104; Wash. Rev. Code Ann. § 7.48.330; Colo. Rev. Stat. Ann. §§ 6-27-101 to -106; 815 Ill. Comp. Stat. Ann. 505/2BBBB; Md. Code Ann., Cts. & Jud. Proc. §§ 3-2301 to -2304. Based on Smith & Wesson's headquarters in Tennessee, the Tennessee Unfair Trade Practices Act (TN Code § 47-18-104, e*t seq.*) also makes all of the Company's deceptive marketing practices unlawful.

[19]    *See, e.g.*, Cal. Penal Code §§ 16350, 16790, 16890, 30500-31115; Conn. Gen. Stat. §§ 53-202a – 53-202o; Colo. Rev. Stat. § 18-12-101; Del. Code tit. 11, § 1466(a); DC Code Ann. §§ 7-2501.01(3A), 7-2502.02(a)(6), 7-2505.01, 7-2505.02(a), (c); Haw. Rev. Stat. Ann. §§ 134-1, 134-4, 134-8; Md. Code Ann., Crim. Law §§ 4-301 – 4-306; Md. Code Ann., Pub. Safety § 5-101(r); Mass. Gen. Laws ch. 140, §§ 121, 122, 123, 131M; N.J. Stat. Ann. §§ 2C:39-1w, 2C:39-5, 2C:58-5, 2C:58-12, 2C:58-13; N.Y. Penal Law §§ 265.00(22), 265.02(7), 265.10, 400.00(16-a); Rev. Code Wash. (ARCW) Chp. 9.41 as amended by 2023 HB 1240.

[20]    Compl. ¶¶ 93-96.

risk and severity of mass shooting events; however, the Company's continuous and unmitigated sales practices reportedly undermine these legislative efforts, thereby significantly enhancing its exposure to legal liability. As a result of the Individual Defendants indifference to the Company's persistent violation of the law, and its illegal and irresponsible marketing and sales practices, Smith & Wesson currently faces numerous legal action and investigations that likely fall outside the protections afforded under the PLCAA through its "predicate exceptions."[21]

### C. THE BOARD IGNORES THE COMPANY'S UNLAWFUL PRACTICES AND ISSUES FALSE AND/OR MISLEADING DISCLOSURES

The Individual Defendants further chose the path of willful ignorance by failing to establish adequate oversight systems.[22] For example, the Company's ESG Committee glibly dismissed all "issues related to domestic litigation... international litigation... [and] regulatory and investor issues" as being "driven by gun control activists," rather than conducting serious risk analysis, which demonstrates conscious disregard for legal compliance obligations.[23] Similarly, the Board's 2019 "Monitoring Report" explicitly acknowledged prioritizing customer interests over fiduciary duties to stockholders, stating that the Company's "reputation as a strong defender of the Second Amendment is not worth risking for a vague goal of improving the Company's reputation among non-customers."[24] This report further establishes that the board knowingly decided to prioritize short-term profits and sales over the long-term legal risks that have the potential to not only undo those benefits but decimate the Company.[25]

Moreover, the Individual Defendants violated Section 14(a) by issuing materially false and/or misleading information in proxy statements that deprived shareholders of the accurate and complete information necessary for informed decision-making in corporate governance votes and caused stockholder proposals to be rejected and the re-election of Board members–ensuring that

---

[21] Compl. ¶¶ 97-106.
[22] Compl. ¶¶ 122-136.
[23] Compl. ¶¶ 119-120.
[24] Compl. ¶ 126.
[25] Compl. ¶ 127.

the Board would not consider the risks that the Company faced as a result of its illegal sales and marketing of AR-15 Rifles.[26] For example, the "***Board's Opposition Statement***" in the Company's 2024 proxy statement ("2024 Proxy") contained blatant misrepresentations regarding the Plaintiffs' prior state court action and falsely characterized a shareholder proposal co-filed by one of the Plaintiffs in order to ensure the rejection of that proposal.[27] The falsity of the Individual Directors statements in the 2024 Proxy, wherein they state, *inter alia*, that "**the court dismissed the Suit, having previously ruled that 'there is no reasonable possibility that Plaintiffs' suit will benefit the Company**,'" is made manifest by a related (albeit truthful) statement appearing in the Company's 2024 Annual Report, providing, "the court dismissed plaintiffs' action without prejudice for failing to post a bond pursuant to the court's order."[28] Similarly, since at least 2021, the Company's proxy statements misrepresented the extent of the Board's oversight of ESG risks, particularly regarding Smith & Wesson's exposure to significant liabilities stemming from its AR-15 Rifle sales practices, which ensured the re-election of Board members and that the Board would not consider the risks that the Company faced as a result of its illegal sales and marketing of AR-15 Rifles.[29]

### D. THE COURTS DEEM SMITH & WESSON'S PRACTICES UNLAWFUL AND THE COMPANY INCURS ACTUAL HARM

As a result of the Individual Defendants' intentional decision to allow the Company to violate various federal, state, and local laws, the protections afforded under the PLCAA are subject to a "predicate exception," and Smith & Wesson has incurred actual and substantial pecuniary and reputational harm, including: (i) defense costs from federal and state investigations regarding the Company's marketing practices;[30] (ii) defense and reputational costs from lawsuits that proceeded

---

[26]  Compl. ¶¶ 154-178.

[27]  Compl. ¶¶ 156-167 (emphasis added).

[28]  *Compare* 2024 Proxy at 46 n.9 (https://bit.ly/43K0W1v) *with* 2024 Annual Report at F-28 (https://bit.ly/3SDGPNg).

[29]  Compl. ¶¶ 168-178.

[30]  Compl. ¶¶ 100-103; *see also* U.S. House of Representatives Committee on Oversight and Reform, *Memorandum: The Committee's Investigation into Gun Industry Practices and Profits* (July 27, 2022); *Smith & Wesson Brands, Inc. v. Attorney General of the State of New Jersey*, 105

past the motion to dismiss stage, after courts found allegations of unlawful practices sufficient to prevent the application of the PLCAA;[31] (iii) reputational harm as a response to regular mass shootings involving AR-15s; and (iv) attorneys' fees of at least $451,981.89 that were imposed against the Company for improperly attempting to remove and appeal the Illinois victims' lawsuits.[32]

///

///

///

///

///

///

///

///

///

---

F.4th 67 (3rd Cir. 2024) (holding that Smith & Wesson must comply with New Jersey Attorney General's subpoena investigating the Company's marketing practices).

[31] Compl. ¶¶ 97-99, 105-106; *see, e.g.*, Order at 7, *Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL, Dkt. No. 289 (Cal. Supr. Ct. San Diego, July 2, 2021) (denying motion to dismiss based on sufficiency of allegations that the Company "knowingly violated a State or Federal Statute applicable to the sale or marketing of the product."); Order at 12, *Roberts v. Smith & Wesson Brands, Inc.*, Case No. 22 LA 00000487 (Ill. Cir. Ct. Apr. 1, 2025) ("[H]ere Plaintiffs have sufficiently alleged that Smith & Wesson's unlawful conduct created a condition that foreseeably led to the shooter's criminal act. The Complaints allege: (1) AR-15 style firearms, in particular the Smith & Wesson M&P 15 rifle, are the weapon of choice for mass shooters; (2) mass shooters are typically impulsive young men with hero complexes and delusions of militaristic grandeur; and (3) Smith & Wesson purposefully targeted its marketing of AR-15 style firearms at this group by employing tactics and themes it knew would be disproportionately attractive to dangerous people like the shooter."); *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc*., 91 F.4th 511, 530 (1st Cir. 2024) ("Here, defendants operate at a systemic level, allegedly designing, marketing, and distributing their guns so that demand by the cartels continues to boost sales. … In sum, we conclude that the complaint adequately alleges that defendants aided and abetted the knowingly unlawful downstream trafficking of their guns into Mexico."), *overruled on other grounds*, 605 U.S. ___, 2025 WL 1583281 (S. Ct. June 5, 2025).

[32] *See* Order at 4, *Roberts v. Smith & Wesson Brands, Inc*., No. 22-cv-6169 (N.D. Ill. March 21, 2025).

Indeed, the Individual Defendants chose and continue to refuse to acknowledge or consider the tremendous and growing risk before them, opting instead to drain the Company's resources defending an increasing number of PLCAA-excepted lawsuits specifically related to its AR-15 Rifles.[33] Further, the Individual Defendants' position about the Plaintiffs being "activist stockholders" with "their own viewpoint reflecting their narrow self-interests" is reflective of their inability to see the error in their practices related to AR-15 Rifles, and is undermined by reality. For example, over the past five years, the stock price of three exchange-traded funds that are screened for ESG criteria (*i.e.*, EFIV - SPDR® S&P 500® ESG ETF, XVV - iShares ESG Select Screened S&P 500 ETF, and ESGV - Vanguard ESG U.S. Stock ETF) outperformed Smith & Wesson by a huge margin averaging 120.8%.



As a result of the Board's oversight failures regarding the Company's illegal practices, the Individual Directors breached their fiduciary duties under Nevada law. Based on these allegations, the Plaintiffs seek: (i) significant governance reforms, including the implementation of effective oversight procedures to ensure compliance with federal, state, and local laws, and mechanisms to

---

[33]  Compl. ¶¶ 97-106.

monitor and mitigate risks associated with the Company's manufacturing, marketing, and sales of AR-15 Rifles; (ii) monetary damages to compensate Smith & Wesson for the economic harm sustained due to Defendants' alleged misconduct; and (iii) other equitable relief designed to protect the Company and its stockholders from future harm.

## III. ARGUMENT

The purpose of a FRCP 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint.[34] "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[35] To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."[36] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37] Although detailed factual allegations are not required, the factual allegations asserted in the complaint "must be enough to raise a right to relief above the speculative level."[38] All well-pleaded factual allegations will be accepted as true and all reasonable inferences that may be drawn from the allegations must be construed in the light most favorable to the non-moving party.[39] Accordingly, because Plaintiff demonstrates that the Complaint sufficiently pleads allegations to state claims for breach of fiduciary duty and violations of Section 14(a), Defendants' motion should be denied.[40]

///

///

///

---

[34]  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).
[35]  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citations omitted).
[36]  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[37]  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[38]  *Twombly*, 550 U.S. at 555.
[39]  *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).
[40]  Because Plaintiffs do not allege any fraud claims, they do not respond to Section I.A.3.B of the Motion.

### A.  PLAINTIFFS SATISFY THE FRCP 23.1 STANDING REQUIREMENTS

### 1.  The Complaint Sufficiently Alleges Demand Futility

Under Nevada law, courts look to Delaware law to determine whether a claim is derivative or direct.[41] Delaware law makes clear that Plaintiffs' Section 14(a) claims should be considered direct, not derivative.[42] The distinction makes sense – because Section 14(a) claims focus on the right of stockholders to receive accurate and complete information in a proxy statement before making an informed voting decision, it is the stockholders' voting decision (not the corporation itself) that is harmed by the false and/or misleading information in a proxy statement.[43] The same is true of Plaintiffs' Section 14(a) claim. Therefore, Plaintiffs' Section 14(a) claim is direct, and not subject to FRCP 23.1 or its demand requirement.[44]

With regard to Plaintiffs' derivative breach of fiduciary duty claims, under FRCP 23.1, a derivative plaintiff must allege that he either made a demand on the board of directors to take a requested action or, if not, state with particularity the reasons why making such a demand was

---

[41]  *Parametric Sound Corp. v. Eighth Judicial Dist. Court of Nev.*, 133 Nev. 417, 427 (2017) ("We thus take this opportunity to clarify *Cohen* and distinguish between direct and derivative claims by adopting the direct harm test, as articulated in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004), which allows a direct claim when shareholder injury is independent from corporate injury.").

[42]  *See In re JPMorgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 772 (Del. 2006) ("where it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct").

[43]  *See Lee v. Fisher*, 70 F.4th 1129, 1140 (9th Cir. 2023) ("Lee can bring her action against Gap under § 14(a) and Rule 14a-9 as a direct action under the *Tooley* test, because her complaint is based on the theory that Gap's shareholders were denied the right to a fully informed vote at the 2019 and 2020 annual meetings. Lee and other shareholders suffered the alleged harm—a proxy nondisclosure injury in violation of § 14(a) that interfered with their voting rights and choices—and would receive the benefit of the remedy—the equitable or injunctive relief sought in the complaint.").

[44]  *See* FRCP 23.1(a) ("This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce."); *see also In re Countrywide Fin. Corp. Deriv. Litig*, 554 F.Supp.2d 1044, 1075-83 (C.D. Cal.) (separately considering motion to dismiss Section 14(a) claims under Rule 12(B)(6) and breach of fiduciary claims under Rule 23.1).

futile.[45] Despite being a procedural pleading requirement, the substantive threshold of sufficiently alleging demand futility under FRCP 23.1 is governed by Nevada law, as Smith & Wesson's state of incorporation is Nevada.[46] In assessing the demand futility requirement, Nevada courts look to Delaware law.[47] Thus, the analysis requires the Court to consider three factors on a director-by director basis:

(i)     whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;

(ii)    whether the director would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand; and

(iii)   whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.[48]

In the *Caremark*[49] context, directors face a substantial threat of liability if they (i) "utterly failed to implement any reporting or information system or controls," or (ii) "consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention."[50] Bad faith applies where directors knowingly or intentionally disregard their responsibilities, "adopting a 'we don't care about the risks' attitude concerning a material corporate decision."[51] Further, demand-futility allegations must be assessed holistically, not in isolation, and the Court is "bound to draw all inferences from those particularized facts in

---

45   *See* FRCP 23.1.

46   *See Arduini v. Hart*, 774 F.3d 622, 628 (9th Cir. 2014); *Louisiana Mun. Police Employees Ret. Sys. v. Wynn*, 2013 WL 431339, at *3 (D. Nev. Feb. 1, 2013) ("Rule 23.1 does not establish the circumstances under which demand would be futile; rather, the law of the . . . incorporating state, Nevada, sets that standard.").

47   *See Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1184 (Nev. 2006) (adopting Delaware demand futility analysis), *abrogated on other grounds by*, *Chur v. Eighth Judicial Dist. Court in & for Cty. Of Clark*, 458 P.3d 336, 341 n.4 (Nev. 2020).

48   *United Food and Com. Workers Union and Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021).

49   *In re Caremark Int'l Deriv. Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996).

50   *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

51   *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275, 289 (Del. Ch. 2003).

favor of the plaintiff, not the defendant."[52] Plaintiffs' "particularized factual allegations [are] accepted as true."[53] The Court may draw inferences "from the absence of books and records that the Company could be expected to produce."[54] And, the particularity requirement does not obligate a plaintiff "to demonstrate a reasonable probability of success on the claim," only to "make a threshold showing, through the allegation of particularized facts, that [its] claims have some merit."[55]

Smith & Wesson's Board comprised seven members when the Complaint was filed. The Complaint's particularized facts, along with all favorable inferences to which Plaintiffs are entitled, create the required reasonable doubt that at least four directors—a majority of the Board—could objectively consider a demand. First, the Plaintiffs allege that the entire Demand Board faces a "substantial likelihood of liability" in connection with their violations of Section 14(a). Second, drawing from a fact pattern akin to the one the Delaware Supreme Court found sufficient to establish demand futility in *Lebanon County Employees' Retirement Fund v. Collis*, the Plaintiffs primarily rely on the second and third factors to demonstrate demand futility, presenting particularized facts that indicate the directors of Smith & Wesson faced a "substantial likelihood of liability" on their *Caremark* claims.[56] More specifically, as outlined in the Complaint, Plaintiffs advance claims for breach of fiduciary duty under: (i) the second prong of *Caremark*, regarding the Individual Defendants' intentional and bad faith "failure to monitor the corporation's systems once implemented";[57] and (ii) *In re Massey Energy Co.*, for the Individual Defendants' intentional and bad faith failure to ensure legal compliance by Smith & Wesson.[58]

---

[52] *Del. Cnty. Empls. Ret. Fund v. Sanchez*, 124 A.3d 1017, 1019-22 (Del. 2015).

[53] *Amalgamated Bank v. Yahoo! Inc*., 132 A.3d 752, 798 (Del. Ch. 2016).

[54] *China Agritech*, 2013 WL 2181514, *20.

[55] *Pyott*, 46 A.3d at 351; *accord China Agritech*, 2013 WL 2181514, *14.

[56] *Lebanon County Employees' Retirement Fund v. Collis ("AmerisourceBergen")*, 311 A.3d 773, 780 (Del. 2023).

[57] *See id*.

[58] *See In re Massey Energy Co.*, 2011 WL 2176479, at *20 (Del. Ch. 2011) ("a fiduciary … cannot be loyal to a … corporation by knowingly causing it to seek profit by violating the law.").

### a. Smith & Wesson's Directors Consciously Disregarded Their Oversight Duties by Ignoring "Red Flags" of Unlawful Conduct

*Caremark*'s second prong exposes directors to liability if they "knew" or "should have known that violations of law were occurring" yet "took no steps in a good faith effort to prevent or remedy that situation[.]"[59] Director knowledge of "evidence of corporate misconduct" is "the proverbial 'red flag,'" and a board acts in bad faith where it "consciously disregard[s] its duty to address that misconduct."[60]

Here, all of the Individual Defendants (*i.e.*, Smith, Maxwell, Cupero, Scott, Britt, Diaz, Lohmeier, Monheit, and Suggs) demonstrated intentional disregard for their oversight duties by ignoring numerous red flags that were raised through mass shootings involving AR-15 Rifles, investigations related to the Company's unlawful marketing practices, and lawsuits related to the same.[61] Nevertheless, despite numerous courts and investigations concluding that the Company was violating various federal, state, and local laws, the Individual Directors concluded that the short-term benefits of unlawful conduct outweighed the long-term risks of liability.[62] The Individual Directors' bad faith decision to conduct business by violating the law was never protected by business judgment, and therefore, they face a substantial likelihood of liability.

### b. The Position of Smith & Wesson's Directors Taken Against the Plaintiffs' Stockholder Proposals Confirms that Demand is Futile

As the court held in *Massey*, "when a company has a 'record' as a recidivist, its directors and officers cannot take comfort in the appearance of compliance at the pleading stage, when the plaintiffs are able to plead particularized facts creating an inference that the Board and management were aware of a troubling continuing pattern of non-compliance in fact and of a managerial attitude suggestive of a desire to fight with and hide evidence from the company's

---

[59]  *Caremark*, 698 A.2d at 971; *see also China Agritech*, 2013 WL 2181514, *24 (where directors know of illegal activity, they have a duty to "stop" it).
[60]  *Teamsters Local 443 Health Servs. & Ins. Plan v. Chou*, 2020 WL 5028065, *17 (Del. Ch. Aug. 24).
[61]  *See* Compl. ¶¶ 173-181.
[62]  *See id.*

regulators."[63] Moreover, courts routinely hold that a decision by purportedly independent directors to prejudge the facts and make explicit statements contrary to claims asserted in derivative litigation renders those directors incapable of controlling the derivative asset.[64]

Here, the Director Defendants issued the Monitoring Report and the Company's August 2023 proxy statement regarding the Plaintiffs' efforts.[65] In issuing the Monitoring Report, Scott, Monheit, and Britt made it abundantly clear that issuing a litigation demand related to the Company's manufacturing, marketing, and sales of AR-15 Rifles would be futile, because the Monitoring Report concludes that any consideration of the Plaintiffs' concerns would "not only be futile but would hurt the Company's business . . .."[66] Further, by issuing the Company's August 2023 proxy statement, all of the Director Defendants (*i.e.*, Smith, Scott, Britt, Diaz, Lohmeier, Monheit, and Suggs) made clear that the Demand Board "unanimously recommend[ed]" voting against a stockholder proposal to consider methods of potentially mitigating the Company's exposure to liability, based on their assertions that "it would require [the Company] to reduce [its] lawful product offerings," "gun control activists … want to ban entire classes of commonly-owned firearms," and the proponents' "absolutist views [are] inconsistent with individuals' fundamental [Second Amendment] right to provide for their own security."[67]

It is worse than a board choosing to "do nothing."[68] As then-Vice Chancellor Strine reasoned in *Massey*:

> As a kid, most of us are taught that it is not a good excuse to argue with the rules[.] For fiduciaries of Delaware corporations, there is no room to flout the law governing the corporation's affairs. If they do not like the applicable law, they can lobby to get it changed. But until it is changed, they must act in good faith to ensure that the corporation tries to comply with its legal duties.[69]

---

[63]  *See In re Massey Energy Co.*, 2011 WL 2176479, at *21 (Del. Ch. 2011).
[64]  *See Biondi v. Scrushy*, 820 A.2d 1148, 1166 (Del. Ch. 2003).
[65]  *See* Compl. ¶ 186.
[66]  *See* Compl. ¶¶ 187-188.
[67]  *See* Compl. ¶ 189.
[68]  *Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007).
[69]  *Massey*, 2011 WL 2176479, *21.

Having authorized failed maneuvers to escape Smith & Wesson's liability, the Demand Board demonstrates that it cannot objectively consider a demand to sue its own members.

### 2. Plaintiffs Fairly and Adequately Represent the Interests of Similarly Situated Stockholders

Under Nevada law, Courts consider eight factors to determine the adequacy of representation in derivative actions under NRCP 23.1:

> (1) indications that the plaintiff is not the true party in interest; (2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit; (3) the degree of control exercised by the attorneys over the litigation; (4) the degree of support received by the plaintiff from other shareholders;... (5) the lack of personal commitment to the action on the part of the representative plaintiff; (6) the remedy sought by plaintiff in the derivative action; (7) the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; and (8) plaintiff's vindictiveness toward the defendants.[70]

Considered together, all eight of these factors establish that Plaintiffs are fair and adequate representatives of the Company's stockholders.

Unlike in *National Center for Public Policy Research v. Schultz*, which serves as the basis for the entirety of the Individual Defendants' adequacy argument, the Plaintiffs: (i) are not an advocacy group that is intent on attacking the responsible and/or lawful manufacturing, marketing, or sales of firearms (*i.e.*, Plaintiffs are "long-time proponents of corporate responsibility," who "sponsored resolutions that provide shareholders with an understanding of the company's practices and exposure to risk and liability regarding the manufacture of AR-15 rifles.");[71] (ii) demonstrably garnered significant support for their stockholder proposals (*i.e.*, on average, 26% of Smith & Wesson stockholders supported Plaintiffs' stockholder proposals since 2018, and their 2018

---

[70] *Cotter on behalf of Reading Int'l, Inc. v. Kane*, 473 P.3d 451, 456 (Nev. 2020).

[71] *Compare Nat'l Center for Public Policy Research v. Schultz*, 2023 WL 5945958, at *1 (E.D. Wash. Sept 11, 2023) *with* Statement of Catholic Sisters (Dec. 7, 2023), available at https://bit.ly/43QpRjR. For context, activist funds seeking to reconstitute a public company's board typically hold (*i.e.,* obtain voting support from and the pressure campaign of) between 5% and 10% of a target company's common stock. *See* Bower & Paine, *The Error at the Heart of Corporate Leadership*, HARVARD BUSINESS REVIEW (May-June 2017).

stockholder proposal won with a plurality of support);[72] (iii) have not sought a declaratory judgment or injunctive relief regarding lawful action by the Board (*i.e.*, Plaintiffs seek damages from the Individual Defendants to compensate the Company for the harm they have caused);[73] and (iv) sufficiently allege demand futility, so they do not need to establish the wrongful refusal of a demand.[74]

Indeed, while the Individual Defendants repeatedly describe the Plaintiffs as "activists," who hold a "small number of shares" for the "sole purpose of stopping the manufacture, marketing, and sale of modern sporting rifles," they ignore that the Plaintiffs' 2018 stockholder proposal obtained the approval of a plurality of the Company's stockholders, and that the Plaintiffs' unsuccessful stockholder proposals gained significant stockholder support at each of the annual meetings.[75] Moreover, this Action does not seek to impose a human rights policy or otherwise overlap with the Plaintiffs' stockholder proposals, so such a comparison has limited value in determining whether Plaintiffs fairly and adequately represent the interests of similarly situated stockholders in pursuing this Action. Rather, the Plaintiffs' participation in stockholder proposals establishes that they: (i) are the true party in interest; (ii) are familiar with the subject matter of the

---

[72] *Compare Schultz,* 2023 WL 5945958, at *2 ("These proposals were rejected with only 1% and 3% of the total possible votes cast in favor.") *with* Plaintiffs' receiving stockholder support from 32% in 2018, 23% in 2019, 29% in 2021, 27% in 2022, 18% in 2023, and 23% in 2024.

[73] *Compare Schultz,* 2023 WL 5945958, at *2 *with* Complaint at 50-51. To be clear, there are numerous avenues available to Smith & Wesson to prevent the Company from violating federal, state, and local laws other than forcing it to "stop selling modern sporting rifles." Motion at 21. For example, the Company could geo-restrict its marketing of AR-15 Rifles to jurisdictions that allow them, stop marketing AR-15 Rifles on social media platforms that are commonly used by underage users, and/or take other actions designed to ensure the Company's compliance with governing law.

[74] *Compare Schultz,* 2023 WL 5945958, at *4 *with* Complaint ¶¶ 163-91.

[75] On average, 26% of stockholders support Plaintiffs' stockholder proposals (*i.e.*, 32% in 2018, 23% in 2019, 29% in 2021, 27% in 2022, 18% in 2023, and 23% in 2024), while 41% of stockholders voted against the proposals (*i.e.*, 29% in 2018, 40% in 2019, 37% in 2021, 38% in 2022, 49% in 2023, and 54% in 2024).

litigation; (iii) exercise control over this action (rather than the attorneys); (iv) received significant

support from other stockholders; and (v) are committed to the part of the representative plaintiff.[76]

Furthermore, the more worthwhile endeavor in concluding that Plaintiffs fairly and adequately represent the interests of similarly situated stockholders in pursuing this Action is a consideration of the remedy sought. The benefits of this Action, if successful, would be significant, shift the cost of the Individual Defendants' oversight failures from the Company to them, and prevent the same type of costs from being incurred or exacerbated in the future. Plaintiffs also own long-term stakes in the Company and have not shown any vindictiveness toward the Defendants. Instead, through their pursuit of this Action, Plaintiffs endeavor to benefit the Company and its stockholders by trying to make the Defendants fair and adequate stewards of Smith & Wesson and its stockholders.[77] Thus, the Individual Defendants' arguments that Plaintiffs would not fairly and adequately represent the interests of Smith & Wesson and its stockholders are without merit.

## B. PLAINTIFFS SUFFICIENTLY PLEAD DERIVATIVE BREACH OF FIDUCIARY DUTY CLAIMS

In *Chur*, the Nevada Supreme Court held that under NRS 78.138(7), to hold a corporation's officers or directors individually liable for damages resulting from official conduct, a plaintiff "must allege facts that when taken as true (1) rebut the business judgment rule, and (2) constitute a breach of a fiduciary duty involving intentional misconduct, fraud or a knowing violation of law."[78] This "requires a two-step analysis," wherein a plaintiff's allegations must rebut the "presumptions of the business judgment rule, codified in NRS 78.138," and establish that the officer or director's act "constitute[d] a breach of his or her fiduciary duties, and that breach

---

[76]    *See* Compl. ¶¶ 121-137; *Larson v. Dumke*, 900 F.2d 1363, 1368-69 (9th Cir. 1990) (finding representation of 23.41% of company stock was sufficient to satisfy Rule 23.1 when other shareholders were either defendants or had an interest in supporting current management).
[77]    *See* Compl. ¶¶ 192-217.
[78]    *Chur v. Eighth Judicial Dist. Court in & for Cty. Of Clark*, 458 P.3d 336, 341 (Nev. 2020).

must further involve intentional misconduct, fraud or a knowing violation of law."[79] Here, Plaintiffs accomplish both.

First, Plaintiffs advance claims for breach of fiduciary duty under the second prong of *Caremark*, for the Individual Defendants' intentional and bad faith "failure to monitor the corporation's systems once implemented."[80] Second, Plaintiffs advance claims for breach of fiduciary duty under *In re Massey Energy Co.*, for the Individual Defendants' intentional and bad faith failure to ensure legal compliance by Smith & Wesson. [81]

With regard to both theories, the Plaintiffs allege that the Individual Defendants were well aware of red flags through the use of the Company's AR-15 Rifles to commit mass shootings, including in locales banning the ownership of AR-15 Rifles, rampant illegal sales, reckless manufacture and marketing, and the Company's exposure to liability in connection with various legal actions and the experience of the industry as a whole (à la the Remington settlement following *Soto v. Bushmaster Firearms Int'l, LLC*). Yet, the Individual Defendants decided expressly to take no action.[82] And, because the Individual Defendants' breach of duty involved knowing illegality, Nevada's exculpation statute does not protect them. These allegations must be accepted as true at this stage. If proven, Plaintiffs' allegations squarely satisfy the *Chur* test: they rebut the business judgment presumption and establish a breach of loyalty involving intentional misconduct or knowing violations of law.[83]

## 1.    Plaintiffs Rebut the Business Judgment Rule

In connection with the first prong of NRS 78.138(7), Plaintiffs rebut the application of Nevada's business judgment rule by alleging that the Individual Defendants acted in "bad faith."[84] Like the failure of oversight theories advanced in connection with a recent Delaware Supreme

---

[79]  *Id.* at 340.
[80]  *AmerisourceBergen*, 311 A.3d at 780.
[81]  *In re Massey Energy Co.*, 2011 WL 2176479, at *20 (Del. Ch. 2011) ("a fiduciary … cannot be loyal to a … corporation by knowingly causing it to seek profit by violating the law.").
[82]  Compl. ¶¶ 97–106.
[83]  *See Chur*, 458 P.3d at 341.
[84]  Compl. ¶¶ 107–137.

Court's decision, Plaintiffs advance two types of claims against Smith & Wesson's officers and directors, both of which relate to their "bad faith failure to oversee … compliance with laws governing the distribution" and marketing of AR-15 Rifles.[85] Under *Caremark* and its progeny, "a director must make a good faith effort to 'oversee' the company's operations."[86] Officers and directors breach this fiduciary duty when they "(a) utterly fail[] to implement any reporting or information systems or controls; *or* (b) having implemented such a system or controls, consciously fail[] to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention."[87]

For starters, a number of courts already determined that state and local laws banning AR-15 Rifles are "but another example of a state regulating excessively dangerous weapons once their incompatibility with a lawful and safe society becomes apparent, while nonetheless preserving avenues for armed self-defense," and that "[t]he assault weapons at issue fall outside the ambit of protection offered by the Second Amendment because, in essence, they are military-style weapons designed for sustained combat  operations that are ill-suited and disproportionate to the need for self-defense."[88] Further, several federal and state courts concluded that lawsuits sufficiently allege that Smith & Wesson is, and at all times relevant to this lawsuit has been, violating various federal, state, and local laws.[89]

---

[85]   *Lebanon County Employees' Retirement Fund v. Collis ("AmerisourceBergen")*, 311 A.3d 773, 780 (Del. 2023).

[86]   *Marchand v. Barnhill*, 212 A.3d 805, 820 (Del. 2019).

[87]   *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

[88]   *Bianchi v. Brown*, 111 F.4th 438, 441-42 (4th Cir. 2024); *see also Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025); *Nat'l Rifle Assoc. v. Bondi*, 133 F.4th 1108 (11th Cir. 2025); *Bevis v. City of Naperville, Ill.*, 85 F.4th 1175 (7th Cir. 2023).

[89]   *See*, *e.g.*, Order at 12, *Roberts v. Smith & Wesson Brands, Inc*., Case No. 22 LA 00000487 (Ill. Cir. Ct. Apr. 1, 2025) ("[H]ere Plaintiffs have sufficiently alleged that Smith & Wesson's unlawful conduct created a condition that foreseeably led to the shooter's criminal act. The Complaints allege: (1) AR-15 style firearms, in particular the Smith & Wesson M&P 15 rifle, are the weapon of choice for mass shooters; (2) mass shooters are typically impulsive young men with hero complexes and delusions of militaristic grandeur; and (3) Smith & Wesson purposefully targeted its marketing of AR-15 style firearms at this group by employing tactics and themes it knew would

Bad faith applies where directors knowingly or intentionally disregard their responsibilities, "adopting a 'we don't care about the risks' attitude concerning a material corporate decision," like the Individual Defendants decision not to mitigate the Company's exposure to liability resulting from its unlawful manufacture, marketing, and sales of AR-15 Rifles.[90] Through the costs incurred by the Company to defend itself against resulting lawsuits and investigations, Smith & Wesson has already suffered, and will continue to suffer, actual harm.[91] Thus, the Complaint sufficiently alleges breaches of fiduciary duty and bad faith such that the business judgment rule, and Nevada's presumption of "good faith," does not apply.[92]

### 2. Plaintiffs Allege Intentional Misconduct and a Knowing Violation of Law

Second, Plaintiffs satisfy the requirement under Nevada law that they allege the Individual Defendants' breaches of fiduciary duty involved "intentional misconduct" and a "knowing violation of law."[93] As described *supra*, the Complaint alleges that the Individual Directors' oversight failures intentionally and knowingly allow the Company to violate various federal, state, and local laws related to marketing and banning the AR-15 Rifles.[94]

While the Individual Defendants' suggest that "it cannot be disputed that the PLCAA protects the lawful marketing of firearms," and the Company faces little potential long-term

---

be disproportionately attractive to dangerous people like the shooter."); *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511, 530 (1st Cir. 2024), *overruled on other grounds*, 605 U.S. ___, 2025 WL 1583281 (S. Ct. June 5, 2025) ("Here, defendants operate at a systemic level, allegedly designing, marketing, and distributing their guns so that demand by the cartels continues to boost sales. … In sum, we conclude that the complaint adequately alleges that defendants aided and abetted the knowingly unlawful downstream trafficking of their guns into Mexico.").

[90]   *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275, 289 (Del. Ch. 2003); *see also Hughes v. Hu*, 2020 WL 1987029 (Del. Ch. Apr. 27) (bad faith where directors met sporadically and devoted insufficient time to critical oversight functions after notice of irregularities); *In re China Agritech, Inc. S'holder Deriv. Litig.*, 2013 WL 2181514, *24 (Del. Ch. May 21) (knowingly failing to "stop" illegal activity); *La. Municipal Empls.' Ret. Sys. v. Pyott*, 46 A.3d 313, 356 (Del. Ch. 2012) (inference of bad faith from approval of business plans that pursued profit in violation of the law), *rev'd on other grounds*, 74 A.3d 612 (Del. 2017).

[91]   Compl. ¶¶ 135-137.

[92]   *See* NRS 78.138(3).

[93]   Compl. ¶¶ 107–137.

[94]   Compl. ¶¶ 97–106.

liability based on exposure to private lawsuits," they overlook that the PLCAA does not apply when the Company engages in unlawful conduct.[95] Further, the Individual Defendants' suggestion that it would be "unlikely" and is "unprecedented to date" that a plaintiff could prove a predicate exception to the PLCAA overlooks the reality that numerous courts and investigations already found allegations sufficient to preempt it from barring an action under 15 U.S.C. § 7903(5)(A)(iii).[96]

For example, in July 2022, the U.S. House of Representatives Committee on Oversight and Reform issued a report that extensively details false and/or problematic marketing practices for which the Company is unprotected from liability under the PLCAA.[97] Most recently, in *Roberts v. Smith & Wesson Brands, Inc.*, the Illinois court found that victims and their family members had sufficiently alleged unlawful conduct by the Company to prevent it from being afforded protection under the PLCAA:

> [H]ere Plaintiffs have sufficiently alleged that Smith & Wesson's unlawful conduct created a condition that foreseeably led to the shooter's criminal act. The Complaints allege: (1) AR-15 style firearms, in particular the Smith & Wesson M&P 15 rifle, are the weapon of choice for mass shooters; (2) mass shooters are typically impulsive young men with hero complexes and delusions of militaristic grandeur; and (3) Smith & Wesson purposefully targeted its marketing of AR-15

---

[95]  Motion at 9-10.

[96]  *See, e.g.*, *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 325 (Conn. 2019), *cert. denied sub nom. Remington Arms Co. v. Soto, 140 S. Ct. 513 (2019) (mem.); Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 432-435 (Ind. Ct. App. 2007), *petition for review denied*, 915 N.E.2d 978 (Ind. 2009) (table); *Williams v. Beemiller, Inc.*, 100 A.D.3d 143, 148, 150-151 (N.Y. App. Div. 2012), *amended by* 103 A.D.3d 1191 (N.Y. App. Div. 2013); *New York v. Armor Ally, LLC*, 2024 WL 756474, at *11-12 (S.D.N.Y. Feb. 23, 2024), *interlocutory appeal filed*, No. 24-773 (2d Cir. Mar. 26, 2024), *motion to certify interlocutory appeal granted*, 2024 WL 2270351 (S.D.N.Y. May 20, 2024); *Minnesota v. Fleet Farm LLC*, 679 F. Supp. 3d 825, 831-832, 841-842 (D. Minn. 2023); *Brady v. Walmart Inc.*, 2022 WL 2987078, at *8-10 (D. Md. July 28, 2022); *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1138-39 (D. Nev. 2019). In *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, while concluding that Mexico did not sufficiently allege unlawful conduct by the Company to pursue an aiding and abetting claim, the Supreme Court made no determination about whether Smith & Wesson's marketing was generally unlawful. *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 605 U.S. ___, 2025 WL 1583281, at *8 (S. Ct. June 5, 2025).

[97]  Compl. ¶¶ 100–102. The Individual Defendants baselessly suggest that the Committee's report is "specious" because it is not ongoing.

style firearms at this group by employing tactics and themes it knew would be disproportionately attractive to dangerous people like the shooter.[98]

Finally, the Defendants do not even attempt to dispute that the Company's manufacturing, marketing, and sales practices are in violation of state and local laws banning AR-15 Rifles.[99] This alone is sufficient to establish a predicate exception to the PLCAA, as was found by the Connecticut Supreme Court in *Soto v. Bushmaster Firearms Int'l, LLC*.[100] And, the Individual Defendants know, and have known, that the Company is violating these laws through the use of its AR-15 Rifles to perpetrate mass shootings in locales banning their sale, use, and ownership.[101] Still, the Individual Defendants refuse to take the Company's violation of the law seriously, and disavow efforts by Plaintiffs and other stockholders to alert them of the need to do so as the qualms of "gun activists." In doing so, Plaintiffs sufficiently allege intentional misconduct and a knowing violation of the law to sufficiently plead breach of fiduciary duty claims against the Individual Defendants.

### C.    PLAINTIFFS SUFFICIENTLY PLEAD A DIRECT CLAIM FOR VIOLATIONS OF SECTION 14(A)

To plead a claim under Section 14(a), a plaintiff must allege that the defendants prepared a proxy statement that contained a material misstatement or omission that caused the plaintiff's injury.[102] A Section 14(a) claim only requires a plaintiff to plead the defendants' negligence in issuing such a proxy statement, and at the pleading stage, courts do not weigh the defendants' competing interpretation of contested statements or require proof of harm; rather, Plaintiffs need only allege facts showing that the proxy misrepresentations had a tendency to induce stockholder

---

[98]    Order at 12, *Roberts v. Smith & Wesson Brands, Inc.*, Case No. 22 LA 00000487 (Ill. Cir. Ct. Apr. 1, 2025).

[99]    Compl. ¶¶ 93–96.

[100]    331 Conn. 53, 94, 202 A.3d 262 (Conn. 2019).

[101]    Compl. ¶¶ 61–96.

[102]    *See Felipe v. Playstudios Inc.*, 2024 WL 1380802, at *19 (D. Nev. Mar. 31, 2024) (quoting *New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012)).

action.[103] The protections afforded under the business judgment codified at NRS 78.138 cannot shield the Individual Defendants from liability for violating Section 14(a), because if broadly applied, doing so would frustrate the purpose and supremacy of the federal law.[104]

First, Plaintiffs allege that the 2024 Proxy contained misrepresentations or omissions that contributed to the rejection of the Plaintiffs' stockholder proposals and the Individual Defendants' reelection to the Board.[105] More specifically, Plaintiffs allege that the Director Defendants falsely stated in the 2024 Proxy's "Board Opposition Statement" that, *inter alia*: (i) "[i]n May 2024, the court dismissed the Suit, having previously ruled that 'there is no reasonable possibility that Plaintiffs' suit will benefit the Company;" (ii) the Plaintiffs were "admonished by a court for pursuing interests contrary to those of the Company and its stockholders;" (iii) the proponent of the 2024 Proposal "sued [Smith & Wesson] in an effort to prohibit [the Company] from manufacturing, marketing and selling a popular product line;" (iv) the 2024 Proposal would expose the Company to "'human rights costs' estimated at $557 billion per year;" (v) imposing the United Nations Guiding Principles on Business and Human Rights would require the Company to "reduce [its] lawful product offerings;" and (vi) "the point" of the 2024 Proposal was "to generate negative publicity" and harm the Company.[106] Plaintiffs go on to explain in detail why each of the statements from the 2024 Proxy was false, why they were material in depriving Smith & Wesson stockholders from making an informed voting decision, and why they caused the Plaintiffs' stockholder proposal to fail.[107] In doing so, the Plaintiffs sufficiently allege transaction and loss causation to satisfy both elements of a Section 14(a) claim.[108]

---

[103] *See id.*

[104] *See Galef v. Alexander*, 615 F.2d 51, 63 (2d Cir. 1980).

[105] Compl. ¶¶ 140–151.

[106] Compl. ¶ 143.

[107] Compl. ¶¶ 144–51.

[108] *See Craig v. Target Corp.*, 2024 WL 4979234, at *16 (M.D. Fla. Dec. 4, 2024) ("[B]ecause Plaintiffs have claimed that the . . . rejection of shareholder proposals . . . would not have occurred if not for these false and misleading proxy statements, an essential link is established for pleading a section 14(a) claim," and "those events caused a harm—i.e. the lack of oversight of social and political issues and risks," which is "sufficient to allege a direct harm from the transactions.").

Second, Plaintiffs allege that since 2021, the Company issued false and/or misleading disclosures in its proxy statements about Board-level oversight of ESG risks.[109] More specifically, Plaintiffs allege that the Individual Defendants deprived the Company's stockholders of accurate disclosures regarding the Director Defendants lack of consideration of material risks facing the Company as a result of its manufacturing, marketing, and sale of AR-15 Rifles. Plaintiffs go on to explain why the statements about consideration of ESG risks were false, why they were material in depriving Smith & Wesson stockholders from making an informed voting decision, and why they caused the Director Defendants to be reelected to the Board and continue to harm the Company in connection with their oversight failures.[110] In doing so, the Plaintiffs sufficiently plead transaction and loss causation to satisfy both elements of a Section 14(a) claim.[111]

### D.    THE INDIVIDUAL DEFENDANTS' BOND REQUEST IS BASELESS

As a fallback, Defendants ask this Court to require Plaintiffs to post a $500,000 bond as security for Defendants' costs, pursuant to NRS 41.520. "In order for an issue decided in another case to have preclusive effect, (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; ... (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation"; and (4) the issue was actually and necessarily litigated."[112]

This request should be rejected for several independent reasons. First, the state court's Bond Order under NRS 41.520 was interlocutory and it was statutorily prohibited from constituting a "determination of any one or more issues in the action or of the merits thereof," such that Plaintiffs cannot be estopped from litigating the issue before this Court. Second, even if the Bond Order were considered, NRS 41.520's stringent standard for requiring security is not met here, because the state court's ruling was directly contradicted by its later decisions demonstrating

---

[109]  Compl. ¶¶ 152-162.
[110]  Compl. ¶¶ 138–162.
[111]  *See Target Corp.*, 2024 WL 4979234, at *16.
[112]  *Arduini v. Hart*, 774 F.3d 622, 629 (2014)

the Plaintiffs' action *had* merit and the prospect of significant benefit to the Company. Third, Plaintiffs' Section 14(a) claim does not implicate NRS 41.520, and applying a state security for expense statute to a direct federal securities claim would violate state law and conflict with federal policy. Fourth, imposing a hefty bond in a case like this would be an affront as a matter of public policy, would undermine important federal interests, and is otherwise not justified by any undue (and unspecified) burden on Defendants at this stage.

*First,* the Eighth Judicial District Court's decision to grant the Individual Defendants' motion for security pursuant to NRS 41.520 was an interlocutory order that "***shall not*** be deemed a determination of any one or more issues in the action or of the merits thereof."[113] And, the Eighth Judicial District Court's Dismissal Order dismissing the case was merely a consequence of the failure to post a bond, not a determination on (or even related to) the merits of the case. Thus, neither the Bond Order nor the Dismissal Order is sufficient to raise the doctrine of offensive collateral estoppel with regard to the imposition of a bond in this case.[114]

*Second*, based on the Eighth Judicial District Court's conflicting holdings between the Bond Order ("no reasonable probability that prosecution will benefit the corporation or its security holders"), and the Order denying the Individual Defendants' motion for attorneys' fees ("[t]he claims asserted by the Plaintiffs were 'based on novel and arguable issues,'" and "[t]here is no evidence that the Plaintiffs' claims were brought and/or designed to harass the Defendants."), there has been no clear determination of any issue in this case (particularly not on the merits), such that the application of collateral estoppel would be appropriate.[115] In fact, if anything, the subsequent Order denying the Individual Defendants' motion for attorneys' fees should be given weight as a *de facto* reversal as it is the last word from the state court. It would be inconsistent for this Court

---

[113] *Id*. at 340.
[114] *See Spink v. Lockheed Corp.*, 60 F.3d 616, 624 (9th Cir. 1995), *rev'd on other grounds*, 517 U.S. 882, 116 S. Ct. 1783, 135 L. Ed. 2d 153 (1996) ("Only a final judgment that is 'sufficiently firm' can be issue preclusive.").
[115] *Id*.

to now declare, on the same facts, that there is "no reasonable possibility" the suit will benefit the Company when the state judge implicitly recognized the potential legitimacy of Plaintiffs' issues.

*Third*, NRS 41.520 only applies to derivative claims that are "brought to enforce a secondary right on the part of one or more shareholders in a corporation . . . because the corporation or association refuses to enforce rights which may properly be asserted by it . . .," so it does not apply to the Plaintiffs' direct claim under Section 14(a).[116]

*Fourth*, even assuming, *arguendo*, that if under the rigorous standard of NRS 41.520, the Individual Defendants could establish that there is no reasonable possibility that this derivative action will benefit Smith & Wesson and its stockholders (and they have not), the Individual Defendants fail to provide any support that their demand for a $500,000 security bond is appropriate by any measure or by any authority. Under NRS 41.520(4)(b), Defendants must establish the "probable reasonable expenses, including attorney's fees, of the corporation and moving party which will be incurred in the defense of the action."[117] There is no identification of the qualities of the advocates who will be defending this action, no discussion of the character of the work that will be done, no identification of any specific tasks that will be performed, no identification of the hourly rates that will be charged and no discussion of the time any particular task will take. Moreover, it appears that, notwithstanding its caustic disregard for the merits of the derivative claims in this action, the Individual Defendants assume that the action will not be resolved on a dispositive motion. Because the Individual Defendants fail to meet their burden to establish a reasonable basis for the amount of any security bond, they are not entitled to one.

Thus, Defendants' demand for a $500,000 bond is excessive and improper – at any amount – and should be rejected by this Court.

### E.    IN THE ALTERNATIVE, PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND

While Plaintiffs believe their Complaint sufficiently establishes grounds for their claims under Rules 12(b)(6) and 23.1, if the Court is inclined to grant the Motion, in whole or in part,

---

[116] *See* NRS 41.520.
[117] NRS 41.520(4)(b).

Plaintiffs respectfully request that they be granted an opportunity to amend. "It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile."[118] In connection with derivative claims, such as the breach of fiduciary duty claims asserted by Plaintiffs, leave to amend should be granted even when demand futility is not sufficiently pled.[119]

Here, there are a number of reasons that amending the Complaint would not be futile, including, *inter alia*, that Plaintiffs could: (i) clarify and make explicit that their Section 14(a) claim is direct and not subject to Rule 23.1 or NRS 41.520; and (ii) incorporate additional allegations regarding the Company's violation of federal, state, and local law that Plaintiff believes are subject to judicial notice. Nevertheless, the Individual Defendants have not and cannot establish that the Complaint is so defective that allowing leave to amend would be an exercise in futility. Therefore, if the Court is inclined to grant the Motion, in whole or in part, Plaintiffs should be granted at least one opportunity to amend.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully submit that the Court should enter an Order denying the Motion in its entirety, or, in the alternative, granting leave to amend, and for such other and further relief as the Court deems just and proper.

///

///

///

///

---

[118] *Bryant v. City of Pomona*, 2022 WL 4363430, at *1 (9th Cir. Sept. 21, 2022); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment.").

[119] *See Jacobi v. Ergen*, 2015 WL 1442223, at *7 (D. Nev. Mar. 30, 2015) ("I am not yet convinced that Jacobi cannot state sufficient facts to demonstrate demand futility, and I find that he should be permitted one more opportunity to state his demand-futility allegations if he has additional facts to support them.").

Dated:  June 30, 2025

MATTHEW L. SHARP, LTD.


_____/s/ *Matthew L. Sharp*_____
Matthew L. Sharp, Esq.
Nevada Bar No. 4746
432 Ridge Street
Reno, NV 89501
(775) 324-1500
matt@mattsharplaw.com

**NEWMAN FERRARA LLP**
Jeffrey M. Norton, *Admitted Pro Hac Vice*
Benjamin D. Baker, *Admitted Pro Hac Vice*
1250 Broadway, 27th Fl.
New York, NY 10001
(212) 619-5400
jnorton@nfllp.com
bbaker@nfllp.com

*Counsel for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jeffrey F. Barr, Esq.
ASHCRAFT & BARR LLP
*Attorneys for Defendants*

DATED this 30th day of June 2025.

_/s/ Cristin B. Sharp_
An employee of Matthew L. Sharp, Ltd.