**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ADRIAN DOMINICAN SISTERS, *et al.*,

                        Plaintiffs,

       vs.

SMITH & WESSON BRANDS, INC., *et al.*,

                    Defendants.

Case No.: 2:25-cv-00236-GMN-MDC

**ORDER GRANTING MOTION TO DISMISS**

Pending before the Court is the Motion to Dismiss, (ECF No. 24), filed by Defendants Mark P. Smith, Anita D. Britt, Fred M. Diaz, Michelle J. Lohmeier, Barry M. Monheit, Robert Scott, Denis G. Suggs, Kevin A. Maxwell, and Susan J. Cupero.  Plaintiffs Adrian Dominican Sisters, Sisters of Bon Secours USA, Sisters of St. Francis of Philadelphia, and Sisters of the Holy Names of Jesus & Mary, U.S.-Ontario Province filed a Response, (ECF No. 27), to which Defendants replied, (ECF No. 38).

For the reasons discussed below, the Court GRANTS Defendants' Motion to Dismiss.

## I.    BACKGROUND

This is a shareholder derivative action brought by Plaintiffs on behalf of nominal Defendant Smith & Wesson Brands, Inc. ("Smith & Wesson" or "the Company") against Defendants[1]—members of Smith & Wesson's Board of Directors (the "Board") and senior management team. (*See generally* Compl., ECF No. 1).  Plaintiffs allege that Defendants allowed the company to become exposed to significant liability for intentionally violating

---

[1] "Director Defendants" or the "Board" collectively refers to Mark P. Smith, Anita D. Britt, Fred M. Diaz, Michelle J. Lohmeier, Barry M. Monheit, Robert Scott, and Denis G. Suggs.  "Officer Defendants" collectively refers to Mark P. Smith, Kevin A. Maxwell, and Susan J. Cupero.  The Director Defendants and Officer Defendants are referred to collectively as "Defendants."

federal, state, and local laws through its manufacturing, marketing, and sales of semi-automatic firearms as well as their violations of Section 14(a) of the Exchange Act. (*See id.*).  Plaintiffs are shareholders of Smith & Wesson who allege they have been investigating the claims brought in the Complaint since February 2023. (*Id.* ¶ 30).

Before filing this action, Plaintiffs litigated derivative claims alleging breaches of fiduciary duties in Nevada's Eighth Judicial District Court (the "State Court Action"). (*Id.* ¶ 36).  In March 2024, the state court granted Defendants' Bond Motion pursuant to Nevada Revised Statute 41.520, requiring Plaintiffs to post a $500,000 bond by April 23, 2024, concluding that there was "no reasonable possibility" the claims would benefit the corporation or its security holders. (*Id.* ¶ 37).  Plaintiffs did not post the bond, so the state court dismissed their action without prejudice. (*Id.* ¶ 41).

Plaintiffs then filed this present action bringing four causes of action.  Plaintiffs' first cause of action alleges Director Defendants violated their fiduciary duties by allowing the company to become exposed to significant liability for intentionally violating federal, state, and local laws through its manufacturing, marketing, and sales of semi-automatic firearms. (*See* Compl. ¶¶ 192–201).  Plaintiffs' second and third causes of action allege that the Officer Defendants violated their fiduciary duties of loyalty and care. (*Id.* ¶ 202–217).  Plaintiffs' fourth cause of action alleges that the Director Defendants violated Section 14(a) of the Exchange Act when they disseminated false and misleading proxy statements in their 2024 Proxy. (*See* Compl. ¶¶ 218–223).  Defendants now move to dismiss all claims against them.

## II.     LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 23.1

A derivative shareholder's claim allows an individual stockholder to bring "suit to enforce a corporate cause of action against officers, directors, and third parties." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534

(1970)).  "Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Id.* (quotations omitted) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949)).

Federal Rule of Civil Procedure ("FRCP") 23.1 permits a plaintiff to bring a shareholder derivative suit only when two requirements are met. *See Potter v. Hughes*, 546 F.3d 1051, 1056 (9th Cir. 2008); Fed. R. Civ. P. 23.1.  First, a plaintiff must have owned shares in the corporation at the time of the disputed transaction (the "contemporary ownership requirement"). *Potter*, 546 F.3d at 1056.  Second, the plaintiff must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors" (the "demand requirement"). *Id.*  If no demand was made a plaintiff must plead with particularity the reasons why such demand would have been futile. *Arduini v. Hart*, 774 F.3d 622, 628 (9th Cir. 2014).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Dismissal is appropriate under FRCP 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, FRCP 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant. . . undue prejudice to the opposing party by virtue of. . . the amendment, [or] futility of the amendment. . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## III.   **DISCUSSION**

Defendants move to dismiss Plaintiffs' complaint arguing they lack standing under FRCP 23.1 and that they fail to state a claim under FRCP 12(b)(6).  Defendants attach as exhibits documents Plaintiffs' reference in their Complaint to support their dismissal arguments.  While Defendants do not affirmatively request that the Court take judicial notice of their exhibits, the Court nonetheless will *sua sponte* determine whether to take judicial notice of such exhibits as well as other documents referenced in Plaintiffs' Complaint.  The Court first addresses which documents to take judicial notice of before turning to the issue of standing which necessarily implicates portions of Defendants' FRCP 12(b)(6) arguments.[2]

### A.  Judicial Notice

A court may take judicial notice of a fact that is "not subject to reasonable dispute" in that the fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Otherwise, if the district court considers materials outside

---

[2] Because the Court finds that Plaintiffs lack standing, it need not address all of Defendants' FRCP 12(b)(6) arguments.

of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

Plaintiffs rely on numerous documents referenced in their Complaint to support their allegations. Among those documents are the 2000 Settlement Agreement between the Company and the federal government, (Compl. ¶ 72), the Board-issued Shareholder Requested Report on Product Safety Measures and Monitoring of Industry Trends (the "Monitoring Report"), (*id.* ¶ 124), a memorandum issued by United States House of Representatives Committee on Oversight and Reform issued detailing the Committee's investigation into the gun industry practices and profits, (the "Committee Memorandum"), (*id.* ¶ 101), and the Company's 2024 Proxy Statement, (*id.* ¶ 140). Defendants attach as exhibits the Monitoring Report and the 2024 Proxy Statement, but the Court also considers whether to take judicial notice of the 2000 Settlement Agreement and Committee Memorandum. (*See* Monitoring Report, Ex. 2 to Mot. Dismiss, ECF No. 24-2); (*see also* 2024 Proxy Statement, Ex. 4 to Mot. Dismiss, ECF No. 24-4).[3]

Courts may take judicial notice of documents that are incorporated by reference into a complaint, even if not attached to the same, if (1) "the complaint refers to the document," (2) "the document is central to the plaintiff's claim," and (3) "the authenticity of the document is undisputed." *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The Court finds that each element is met as to the 2000 Settlement Agreement, the Monitoring Report, the Committee Memorandum, and 2024 Proxy Statement such that judicial notice is appropriate.

Defendants also attach as exhibits two court records: Plaintiffs' state court complaint and a state court minute order in a different case against Smith & Wesson. Judicial opinions, other court records, and matters of public record are properly subject to judicial notice. *Lee v.*

---

[3] 2000 Settlement Agreement, sec.gov/Archives/edgar/data/1092796/000095015301500879/p65473ex10-14.txt (last visited Mar. 18, 2026); Committee Memorandum, HHRG-117-GO00-20220727-SD005.pdf (last visited Mar. 18, 2026).

*City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001), *abrogated on other grounds as stated in Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  Specifically, the Court may judicially notice the existence of another court's decision—which includes the stated reasoning of the authoring court as well as the date of the decision—and other filings made in the case, but not the facts recited in that decision or other filings. *Id.*  Courts are especially warranted in taking judicial notice of related proceedings in another (or the same) court if those proceedings have a "direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).  Accordingly, the Court takes judicial notice of Plaintiffs' state court complaint but declines to take judicial notice of the minute order because it is unnecessary for purposes of this Order.

### B.  FRCP 23.1 Standing

The Court now turns to the issue of standing.  Defendants argue that Plaintiffs' Complaint must be dismissed because Plaintiffs do not adequately represent the class of shareholders and fail to adequately plead demand futility pursuant to Federal Rule of Civil Procedure 23.1 and Nevada law.

### 1.  Ownership of Shares & Adequate Representation

To establish standing under FRCP 23.1 Plaintiffs must first allege that they owned shares in Smith & Wesson at the time of the disputed transaction. Fed. R. Civ. Pro. 23.1(b)(1). Here, Plaintiffs allege that they own Smith & Wesson shares. (*See* Compl. ¶¶ 9–12).  But even though Plaintiffs allege they own shares of the company, Defendants argue that Plaintiffs nevertheless fail to adequately represent the interests of other shareholders such that they lack standing. (Mot. Dismiss 19:22–23, ECF No. 24).

A "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. Pro. 23.1(a).  To determine

the adequacy of representation, the Court examines eight factors: (1) "indications that the plaintiff is not the true party in interest"; (2) "the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit"; (3) "the degree of control exercised by the attorneys over the litigation"; (4) "the degree of support received by the plaintiff from other shareholders"; (5) "the lack of personal commitment to the action on the part of the representative plaintiff"; (6) "the remedy sought by plaintiff in the derivative action"; (7) "the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself"; and (8) "plaintiff's vindictiveness toward the defendants." *Cotter on behalf of Reading Int'l, Inc. v. Kane*, 473 P.3d 451, 456 (Nev. 2020) (adopting the factors in *Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990). "[I]t is frequently a combination of factors which leads a court to conclude that the plaintiff does not adequately represent shareholders." *Id.* "A 'strong showing of one factor' is sufficient, particularly if it is 'inimical' to the interests of the company or the company's other shareholders. *Nat'l Ctr. for Pub. Pol'y Rsch. v. Schultz*, No. 2:22-CV-00267-SAB, 2023 WL 5945958, at *3 (E.D. Wash. Sept. 11, 2023) (quoting *Youngman v. Tahmoush*, 457 A.2d 376, 379 (Del. Ch. 1983).

Defendants focus their arguments on three factors. First, they argue that Plaintiffs' "narrow personal interests" in ending the sale of semi-automatic firearms outweigh their interest in the financial success of Smith & Wesson and places them in opposition to the typical interests of other stockholders "who invest to make money, not to engage in social activism." (*See* Mot. Dismiss 20:8–11). Second, Defendants argue that Plaintiffs' "narrow fixation on their social activist agenda demonstrates a clear vindictiveness toward Defendants." (*Id.* 20:14–15). And lastly, they argue that the majority of Smith & Wesson stockholders have not supported Plaintiffs' position as presented in various stockholder proposals which received "low levels of stockholder support." (*Id.* 20:18–19).

Defendants ultimately contend that this action "strongly resembles" *National Center for Public Policy Research v. Schultz*, No. 2:22-CV-00267-SAB, 2023 WL 5945958 (E.D. Wash. Sept. 11, 2023) (the "*Starbucks*" case).  The Court agrees that the two cases have some similarities, but this case is distinguishable from *Starbucks*, at this juncture, such that the Court finds the Plaintiffs here demonstrate that they adequately represent shareholders.

First, Defendants label Plaintiffs as "activist stockholders who invest in companies to effect social change." (Mot. Dismiss 19:25–26).  They liken Plaintiffs here to the plaintiff in *Starbucks* who had "self-described political interests" that were in opposition to the company's interests. *Nat'l Ctr. for Pub. Pol'y Rsch.*, 2023 WL 5945958, at *4.  But Plaintiffs label themselves as "long-time proponents of corporate responsibility." (Resp. 24:17).  They also state they are not "intent on attacking the responsible and/or lawful manufacturing, marketing, or sales of firearms." (Resp. 24:16–17).  This is distinguishable from *Starbucks* where the plaintiff seemed to be intent on opposing any DEI initiative that Starbucks wished to implement.  Plaintiffs here also state that their Complaint seeks to benefit Smith & Wesson by forcing its Officers and Directors to adopt corporate governance measures aimed at: (a) recovering liabilities from those responsible for the Smith & Wesson's failure of oversight; (b) increasing oversight; (c) preventing Smith & Wesson from incurring further liabilities for defense and related costs from pending lawsuits resulting from its marketing practices that facilitate illegal sales of semi-automatic firearms to individuals with an increased propensity to harm others, and in states, localities, and foreign countries that ban the same; and (d) repairing the substantial reputational harm suffered by Smith & Wesson. (Resp. 9:7–4).  Thus, without considering any unincorporated documents and only considering the facts alleged in the Complaint, as the Court must do at the dismissal stage, Plaintiffs' Complaint does not allege self-described political interests such that plaintiff's personal interests outweigh their interest in

the derivative action itself; their alleged interests purport to pertain to corporate governance concerns.

Second, Defendants aver that Plaintiffs public statements demonstrate their vindictiveness toward Defendants, much like the *Starbucks* plaintiff's statements did. (Mot. Dismiss 20:12–15); (Reply at n.31, ECF No. 38). But the article Defendants reference to support this argument, while cited in the Monitoring Report that the Court has taken judicial notice of, is not part of the record and cannot be considered at this stage. Thus, Defendants fail to establish that Plaintiffs are being vindictive towards them.

Lastly, Defendants compare Plaintiffs' "low levels" of stockholder support to the lack of support the plaintiffs in *Starbucks* received. (Mot. Dismiss 20:18–19). In *Starbucks*, the plaintiff's initiatives received "little support from Starbucks' other shareholders and no support from Starbucks' Board" when the proposals were rejected with only 1% and 3% of the total possible votes cast in favor. *Nat'l Ctr. for Pub. Pol'y Rsch.*, 2023 WL 5945958, at *2–4. The court found that the plaintiff sought "to override the authority of the Starbucks Board and obtain disproportionate control of Starbucks' decision making to advance its own agenda in a manner contrary to the desires of Starbucks Board, management, and the vast majority of other shareholders." *Id.* Here, Plaintiffs proposed various stockholder proposals which they allege "received votes in favor from an average of 40.6% of voting shares." (Compl. ¶ 128). But in their Response, Plaintiffs state "on average, 26% of Smith & Wesson stockholders supported Plaintiffs' stockholder proposals." (Resp. 24:20–21). They further state that one of their proposals received a plurality of support; but a plurality is not a majority. (*See id.* 24:21–25:1). So, while not as low as the support received by the plaintiff in *Starbucks*, the degree of support of Plaintiffs' proposal was not high. But, because only one of the eight factors outlined in *Cotter* is present, Defendants fail to demonstrate that Plaintiffs do not adequately represent the interests of the shareholders.

## 2. Demand Futility

Because it is undisputed that Plaintiffs made no demand on Smith & Wesson's board, the Court next turns to the issue of whether making a demand would have been futile.  Under FRCP 23.1, a shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such a demand would have been futile. Fed. R. Civ. P. 23.1(b)(3).  All of Plaintiffs' claims in this lawsuit are derivative, so they must make a particularized showing of demand futility.[4]

FRCP 23.1 provides the pleading standard for measuring the factual detail present in a shareholder complaint but does not provide the substantive rule for assessing what reasons are sufficient to excuse demand on the corporation. *See Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014).  That rule is instead supplied by the law of the state of incorporation. *Kamen*, 500 U.S. at 109.  Here, Smith & Wesson is incorporated in Nevada; thus, Nevada law governs. (*See* Compl.  ¶ 14).  The Nevada Supreme Court has adopted the approach developed by the Delaware Supreme Court. *See Shoen v. SAC Holding Corp.*, P.3d 1171, 1184 (Nev. 2006), *abrogated on other grounds by Chur v. Eighth Jud. Dist. Court in & for Cty. of Clark*, 458 P.3d 336 (Nev. 2020).

---

[4] Plaintiffs argue that their Section 14(a) claim should be considered direct, not derivative, seemingly attempting to circumvent the demand requirement under FRCP 23.1. (Resp. 19:3–10).  But Plaintiffs' Complaint is titled "Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty and Violations of Section 14(A) of the Securities Exchange Act of 1934 and Jury Demand." (*See* Compl.).  Further, Plaintiffs repeatedly refer to the action as a "derivative action" throughout the Complaint. (*See, e.g.,* Compl. ¶¶ 1, 163, 50:6).  Nowhere do Plaintiffs refer to the action as a "direct action."  It is improper for Plaintiffs to attempt to amend their Complaint in a responsive brief. *See, e.g., Riser v. Cent. Portfolio Control Inc.*, No. 3:21-CV-05238-LK, 2022 WL 2209648, at *4 (W.D. Wash. June 21, 2022), *aff'd*, No. 23-35502, 2024 WL 4707886 (9th Cir. Nov. 7, 2024); *see also Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").  The Court therefore analyzes Plaintiffs' claims under the standard applicable to derivative action claims because that is how they are pled.  The Court does not consider any of Plaintiffs' arguments related to Section 14(a) being a direct claim.

To show that demand would have been futile, Plaintiffs must allege particularized facts that raise a reasonable doubt as to whether (1) the directors are disinterested and independent or (2) the challenged transaction was the result of a valid business judgment. *Id.* at 1182 (2006). Plaintiffs must additionally satisfy NRS 78.138(7) by alleging that: (1) "The director's or officer's act or failure to act constituted a breach of his or her fiduciary duties as a director or officer"; and (2) "[s]uch breach involved intentional misconduct, fraud or a knowing violation of law." Nev. Rev. Stat. 78.138(7).

"Demand futility analysis is normally conducted on a claim-by-claim basis." *Fosbre v. Matthews*, No. 3:09-CV-0467-ECR-RAM, 2010 WL 2696615, at *3 (D. Nev. July 2, 2010), *aff'd sub nom. Israni v. Bittman*, 473 F. App'x 548 (9th Cir. 2012) (citing *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1080 (C.D. Cal. 2008); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 977 (Del. Ch. 2003), *aff'd,* 845 A.2d 1040 (Del. 2004)).  The Smith & Wesson Board consisted of, at the time this lawsuit was filed, seven directors.[5]  Thus, to establish demand futility, Plaintiffs must plead facts raising a reasonable doubt regarding the capability of at least four of those directors to impartially consider a demand with regard to each claim. *See Shoen,* 137 P.3d at 1184 n. 62. Plaintiffs assert two claims against the Director Defendants that the Court must analyze for demand futility: breach of fiduciary duties and violation of Section 14(a).

### a.  Breach of Fiduciary Duties

The Court begins by analyzing whether Plaintiffs adequately allege particularized facts that raise a reasonable doubt as to whether the Directors are disinterested and independent, before turning to discuss whether Plaintiffs rebut the business judgment rule.  If Plaintiffs plead particularized facts that raise a reasonable doubt as to either disinterested/independence or the

---

[5] At the time this action was filed, the Board consisted of the following seven members: Britt, Diaz, Lohmeier, Monheit, Scott, Smith, and Suggs. (Compl. ¶ 171).

business judgment rule, then they sufficiently allege that demand would be futile for their claim for breach of fiduciary duties. *Shoen*, 137 P.3d at 1182.

### i.   Disinterested and Independent

Plaintiffs allege that a demand on the current Board would be futile because all seven members of the Board face a substantial risk of liability—and are therefore interested—for acting in bad faith by knowingly permitting the Company to manufacture, market, and/or sell semi-automatic firearms in violation of federal, state, and local laws banning individuals from purchasing, using, and/or possessing the same, and for failing to ensure that the Company operated in such a manner that it would be protected from liability under the Protection of Lawful Commerce in Arms Act ("PLCAA"). (Compl. ¶173).  Plaintiffs also allege that a demand would be futile because the majority of the board members lack independence to consider a demand. (*Id.* ¶¶ 182–189).  The Court begins by analyzing disinterestedness before turning to independence.

### (A). Disinterestedness

"[T]o show interestedness, a shareholder must allege that a majority of the board members would be materially affected, either to [their] benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." *Shoen*, 137 P.3d at 1183.  An interested director is one who has "divided loyalties" or stands to receive a financial benefit from the transaction at issue. *Id.* at 1182.

A "substantial likelihood" that a director would face liability can sometimes create reasonable doubt that the directors are disinterested. *Holt v. Golden*, 880 F. Supp. 2d 199, 203–04 (D. Mass. 2012) (applying Nevada law to a derivative action complaint).  "Significantly, however, Nevada permits the immunization of directors against personal liability for both their duty of care and their duty of loyalty to the corporation.  Where such immunity exists, 'interestedness through potential liability is a difficult threshold to meet.'" *Id.* at 204 (quoting

*Shoen*, 137 P. 3d at 1184).  Importantly, "allegations of mere threats of liability through approval of the wrongdoing or other participation, however, do not show sufficient interestedness to excuse the demand requirement." *Shoen*, 137 P. 3d at 1183.  Instead, "interestedness because of potential liability can be shown only in those rare cases where defendants' actions were so egregious that a substantial likelihood of director liability exists." *Id.* (citation modified).

Looking at the allegations pled against each Director, the Court finds that Plaintiffs fail to plead that they are interested.  Beginning with Scott, Plaintiffs allege he lacks disinterest because he had knowledge of the Company's violation of federal, state, and local law in connection with its manufacturing, marketing, and selling of firearms because he was on the Board when Smith & Wesson entered into the 2000 Settlement Agreement with the federal government. (Compl ¶ 176).  The 2000 Settlement states verbatim: "The parties agree further that this Agreement does not constitute an admission of any violation of law, rule or regulation by the manufacturer parties to the Agreement, or any of their employees.  Nothing in this Agreement shall be construed to be an admission of liability."[6]  Plaintiffs allegation that Scott lacks disinterest because he was on the Board when the Company entered into the 2000 Settlement is implausible; the settlement Plaintiffs' rely on clearly does not support their assertion that it put Scott on notice of the Company's violations of law when the settlement does not find that the parties violated the law nor does it find the parties liable for anything.

Plaintiffs next allege that Britt, Diaz, Monheit, Scott, Smith, and Suggs lack disinterest because they were on the Board when United States House of Representatives Committee on Oversight and Reform issued the Committee Memorandum detailing the Committee's investigation into the gun industry practices and profits.[7]  Plaintiffs allege that the Committee

---

[6] 2000 Settlement Agreement at 1, sec.gov/Archives/edgar/data/1092796/000095015301500879/p65473ex10-14.txt (last visited Mar. 11, 2026).
[7] Committee Memorandum, HHRG-117-GO00-20220727-SD005.pdf (last visited Mar. 18, 2026).

Memorandum detailed Smith & Wesson's violation of the 2000 Settlement Agreement and various state consumer protection laws, (Compl. ¶ 177), but nowhere in the Committee Memorandum does it say that Smith & Wesson violated the 2000 Settlement Agreement or violated state consumer protection laws.  So again, Plaintiffs allegation that Britt, Diaz, Monheit, Scott, Smith, and Suggs lack disinterest because they were on the Board when the Memorandum was issued and would thus have knowledge of alleged violations of the law is implausible.

Because NRS 78.138(7) requires intent or knowledge on the part of directors in order to hold them individually liable for their conduct, it would follow that failure to allege intent or knowledge would render Director Defendants disinterested because they would not face a substantial likelihood of liability.  Without allegations establishing that defendants acted intentionally or knowingly, defendants' liability is a "mere threat," *Shoen*, 137 P. 3d at 1184, which is insufficient to create reasonable doubt that any defendant faces a "substantial likelihood" of personal liability for their alleged violations of local, state, and federal laws.

Thus, Plaintiffs fail to allege that any of the Board members, let alone a majority of them, lack disinterestedness.

### (B). Independence

Independence exists when a director's decision is based on the "corporate merits of the subject before the board" rather than on "extraneous considerations or influences." *Aronson v. Lewis,* 473 A.2d 805, 816 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  To raise reasonable doubt as to a director's independence, a shareholder must allege that a majority of the board members "[are] beholden to directors who would be liable," or are otherwise interested so that they would be unable to consider a demand on its merits. *Shoen*, 137 P.3d at 1183 (citation omitted).  Plaintiffs allege that a majority of the

Board has ties to the gun industry that prevent those members of the Board—Smith, Scott, Lohmeier, and Monheit—from being capable of independently evaluating a litigation demand. (Compl. ¶ 182).

Beginning with Smith and Scott, Plaintiff alleges they are, or have been, employed as executives for the Company and thus cannot be considered independent members of the Board. (*Id.* ¶ 183). But, as Defendants argue, demonstrating that a director is principally employed by a corporation is insufficient to establish that director is incapable of impartially considering a demand on that corporation. *Fosbre*, 2010 WL 2696615, at *7 (citing *In re NutriSystem, Inc. Derivative Litig.*, 666 F. Supp. 2d 501, 515 (E.D. Pa. 2009) ("Under Delaware law, merely being employed by a corporation is not, by itself, sufficient to create a reasonable doubt as to the independence of a director.")). The fact that Smith currently serves as CEO and Scott previously served as an executive officer is insufficient to establish that they lack independence to consider a demand. Even more, Plaintiffs wholly fail to respond to Defendants' arguments regarding Smith and Scott's independence, which the Court construes as a concession. *See* LR 7-2(d).

With respect to Lohmeier, Plaintiffs allege that because she serves as a director for ammunitions manufacturer Nammo Defense Systems Inc., she cannot escape her bias in connection with the gun industry position related to the manufacture, marketing, and sale of semi-automatic firearms. (Compl. ¶ 184). And with respect to Monheit, Plaintiffs allege he is a director for American Outdoor Brands, Inc., which was created from the same company as Smith & Wesson, and is Vice Chairman for That's Entertainment Corp., which offers entertainment based on its virtual interactive shooting experience utilizing laser technology-based replica firearms. (Compl. ¶ 185). They contend that based on Monheit's longstanding connection with the Company, and his current position on the board of a firearms-related company, he cannot escape his bias in connection with the gun industry position related to the

manufacture, marketing, and sale of semi-automatic firearms. (*Id.*).  Defendants argue that these allegations do not establish their lack of independence, and the Court agrees.  Without more, Plaintiffs merely allege that a board member of a company cannot be independent solely because they also serve on the board of other companies that are tangentially related.  Significantly, Plaintiffs wholly fail to respond to Defendants' arguments regarding Lohmeier and Monheit's independence, which the Court construes as a concession. *See* LR 7-2(d).

Plaintiffs further allege that Scott, Monheit, and Britt "explicitly stated" that a demand related to the Company's manufacturing, marketing, and sales of semi-automatic firearms would be futile because they were on the Board when the Monitoring Report was issued demonstrating their lack of independence. (Compl. ¶ 187).  The portion of the Monitoring Report Plaintiffs rely on to support their assertion says:

> To summarize, [Smith & Wesson's] reputation among firearm buyers and Second Amendment supporters is more critical to the success of the Company and the enhancement of shareholder value than its reputation among industry detractors and special interest groups with a political agenda.  In fact, efforts to improve the Company's reputation among its critics would not only be futile but would hurt the Company's business as it did 19 years ago.

(Compl. ¶ 187).  This portion of the Monitoring Report does not raise reasonable doubt as to Scott, Monheit, and Britt's independence.  First, the Director Defendants did not explicitly state demand would be futile as Plaintiffs state.  Second, to establish a lack of independence, a shareholder must allege that a majority of the board members is beholden to directors who would be liable or is otherwise interested such that they would be unable to consider a demand on its merits.  Plaintiffs have not done so here.  In fact, this allegation cuts against Plaintiffs' lack of independence arguments because the Monitoring Report leads to an inference that demand may have been futile if Plaintiffs were "industry detractors [or] special interest groups with a political agenda," who are opposed to the "enhancement of shareholder value."  But, as

discussed above, Plaintiffs label themselves as "long-time proponents of corporate responsibility" and push back against Defendants labeling them as political activists. (Resp. 24:17). Moreover, if Plaintiffs are in fact "industry detractors [or] special interest groups with a political agenda," who are opposed to "enhancement of shareholder value," they would not adequately represent the Company's shareholders and would be unable to bring a derivative action. Thus, this allegation does not establish a lack of independence.

Finally, Plaintiffs allege that the Board Defendants lack independence because they were on the Board when it recommended voting against a stockholder proposal to conduct a third-party Human Rights Impact assessment. (Compl. ¶ 189). But Plaintiffs themselves argue that this "action does not seek to impose a human rights policy or otherwise overlap with the Plaintiffs' stockholder proposals." (Resp. 25:11–14). So how can the Board Defendants' rejection of the same proposal establish a lack of independence such that demand would be futile? Based on Plaintiffs' own argument, it cannot.

Thus, the Court finds that Plaintiffs fail to adequately plead that a majority of the Board lacks independence such that demand would be futile. Accordingly, Plaintiffs fail to allege particularized facts that raise a reasonable doubt as to whether the Director Defendants are disinterested and independent. *Shoen v. SAC Holding Corp.*, 137 P.3d at 1182.

### ii. Business Judgment Rule

Because the Court finds that Plaintiffs fail to plead that Defendants are interested and lack independence, the Court next considers whether there are sufficient facts to rebut the business judgment rule. The business judgment rule is codified in NRS 78.138(3). The statute provides a presumption of good faith, stating that "directors and officers, in deciding upon matters of business, are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation." NRS 78.138(3). "Generally, the business judgment rule protects directors and officers from individual liability and limits judicial interference with

corporate decisions when those decisions are made in good faith." *Guzman v. Johnson*, 483 P.3d 531, 536 (2021).

Plaintiffs argue that they rebut the Nevada business judgment rule by alleging that the Director Defendants acted in bad faith for failure to oversee compliance with laws governing distribution and marketing of semi-automatic firearms. (Resp. 20:20–21:3 (citing Compl. ¶¶107–137)). Plaintiffs' Complaint repeatedly alleges that Defendants "knowingly, intentionally, and fraudulently" violated—and will continue to violate—various federal, state, and local laws through its manufacturing, marketing, and sales of semi-automatic firearms due to a lack of oversight. (*See, e.g.*, ¶ 195). But these allegations, without more, are mere legal conclusions. (Mot. Dismiss 16:15–18). For example, the Complaint does not allege how they violated each specific law, so the Complaint fails to sufficiently allege a knowing violation of law for this reason. Moreover, as discussed above, the documents Plaintiffs cite to support their assertion that Defendants violated laws do not show they did. The Complaint is also devoid of any factual allegations related to the "who, what, when, where, and how" Defendants committed any fraudulent acts related to their alleged violations of law. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (explaining a complaint alleging fraud must allege "the who, what, when, where, and how" of the alleged fraud). Plaintiffs therefore fail to sufficiently rebut the business judgment rule.

In sum, Plaintiffs fail to sufficiently allege that demand would have been futile under either path articulated in *Shoen* with respect to the breach of fiduciary duties claim.

### b.  Violation of Section 14(a)

Now the Court addresses whether demand would have been futile with respect to the allegations that the Director Defendants violated Section 14(a) of the Exchange Act. The Court begins by analyzing whether Plaintiffs adequately allege particularized facts that raise a reasonable doubt as to whether the Directors are disinterested and independent.

### i. Disinterested and Independent

Plaintiffs again contend that making a demand would have been futile based on a theory of liability such that there would be doubts as to the Director Defendants' disinterestedness and independence. (Resp. 21:10–11). Plaintiffs merely allege that the Board Defendants are interested and lack independence because they face a substantial risk of liability for causing the Company to issue the 2024 Proxy with materially false and/or misleading statements of fact in violation of Section 14(a) of the Exchange Act. (Compl. ¶ 178). But this allegation is a legal conclusion and lumps all of the Director Defendants together. Plaintiffs do not detail how each individual Director Defendant is interested and lacks independence based on issuing the 2024 Proxy. Plaintiffs therefore fail to allege particularized facts that raise a reasonable doubt as to whether the Director Defendants are disinterested and independent with respect to the Section 14(a) claim. *Shoen*, 137 P.3d at 1182.

### ii. Business Judgment Rule

Because the Court finds that Plaintiffs fail to plead that the Director Defendants are interested and lack independence, the Court next considers whether there are sufficient facts to rebut the business judgment rule. *See Shoen*, 137 P. 3d at 1181. Plaintiffs fail to provide any facts or argument regarding whether the business judgment rule has been rebutted for the Section 14(a) claim. They therefore have not rebutted the business judgment rule and fail to demonstrate that demand would be futile with respect to their Section 14(a) claim.

In sum, Plaintiffs fail to plead that demand would have been futile for the entirety of their claims and thus lack standing to bring a derivative action. Thus, Defendants' Motion to Dismiss is GRANTED. But because it is unclear whether amendment would be futile, the Court grants Plaintiffs' leave to amend to attempt to cure the deficiencies identified in this Order.

### 3.  Security Bond

Before filing this action, Plaintiffs litigated derivative claims alleging breaches of fiduciary duties in the State Court Action. (Compl. ¶ 36).  In March 2024, the state court granted Defendants' motion for security bond pursuant to NRS 41.520, requiring Plaintiffs to post a $500,000 bond by April 23, 2024, concluding that there was "no reasonable possibility" the claims would benefit the corporation or its security holders. (*Id.* ¶ 37).  Plaintiffs did not post the bond, so the state court dismissed their action without prejudice. (*Id.* ¶ 41).  In the alternative to dismissal, Defendants move the Court to find Plaintiffs collaterally estopped from opposing entry of a new bond order by this Court in the same amount as the State Court Action bond. (Mot. Dismiss 34:13–14).  Defendants argue that Plaintiffs filed this action in federal court to escape the bond order in the State Court Action and to essentially "forum shop." (Reply 14:20–23).

Collateral estoppel, or issue preclusion, "applies to prevent relitigation of [ ] a specific issue that was decided in a previous suit between the parties, even if the second suit is based on different causes of action and different circumstances." *Arduini*, 774 F.3d at 629 (citing *Five Star Cap. Corp. v. Ruby*, 194 P.3d 709, 713–14 (Nev. 2008)).  In order for an issue decided in another case to have preclusive effect (1) "the issue decided in the prior litigation must be identical to the issue presented in the current action"; (2) "the initial ruling must have been on the merits and have become final"; (3) "the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation"; and (4) "the issue was actually and necessarily litigated." *Id.*  Because the first two elements are not at issue, the Court focuses its analysis on the last two.

Plaintiffs argue that the state court's bond order, nor the order dismissing the case, is sufficient to raise the doctrine of offensive collateral estoppel with respect to the imposition of a bond in this case. (Resp. 34:12–13).  Specifically, Plaintiffs argue that the bond order was not

final because it was an "interlocutory order that '*shall not* be deemed a determination of any one or more issues in the action or of the merits thereof.'" (Resp. 34:8–9 (providing an "*id.* at 340" cite to *Arduini v. Hart*, 774 F.3d 622 (2014)).[8]  But as the Ninth Circuit has explained, "[t]o be 'final' for [issue preclusion] purposes, a decision need not possess 'finality' in the sense of 28 U.S.C. § 1291," the threshold for finality required on appeal. *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007) (quoting *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983)).  Rather, "[i]ssue preclusion [has been applied to] matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief." *Id.*; *see also Bartel v. Tokyo Elec. Power Co., Inc.*, 371 F. Supp. 3d 769, 781 (S.D. Cal. 2019) (applying collateral estoppel to a dismissal for lack of personal jurisdiction determined in a related case); *Alzheimer's Inst. of Am. v. Eli Lilly & Co.*, 128 F. Supp. 3d 1249, 1255 (N.D. Cal. 2015), *aff'd sub nom. AIA Am., Inc. v. Eli Lilly & Co.*, 695 F. App'x 573 (Fed. Cir. 2017) (applying collateral estoppel to a decision awarding one party attorneys' fees under to 35 U.S.C. § 285 in a related case).  Thus, the Court finds that the bond order was final for purposes of collateral estoppel.

Moreover, the parties had a full and fair opportunity to actually and necessarily litigate the issue of a security bond.  The state court considered the parties briefing on the bond issue and held a hearing. *Sisters v. Smith*, A-23-882774-B, 2024 Nev. Dist. LEXIS 737, at *3 (Nev. Dist. Ct. Mar. 19, 2024).  The state court then issued a reasoned Findings of Fact, Conclusions of Law, and Order—the bond order—granting the motion to require security under NRS 41.520. *See generally id.*  The Court is unpersuaded that because the state court later denied the defendants' motion for attorneys' fees, the state court "*de facto*" reversed its prior bond order as Plaintiffs contend. (Resp. 34:20–22).  The Court therefore finds that the issue was actually

---

[8] There is no page 340 in *Arduini*, and the case does not otherwise support Plaintiffs' assertion, so it is unclear which case Plaintiffs attempted to cite.

and necessarily litigated.  Collateral estoppel therefore applies to the issue of security bond in this case.

The state court already decided the issue of whether to impose a security bond finding that Defendants had met the high burden of establishing the need for one under NRS 41.520. Because Plaintiffs are estopped from relitigating the issue of whether to impose a security bond under NRS 41.520, the Court will impose the bond that the state court ordered in the amount of $500,000.

**IV.    CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 24), is **GRANTED**.

**IT IS FURTHER ORDERED** that if Plaintiffs seek to amend their Complaint, they shall have 21 days from the date of this Order to do so.

**IT IS FURTHER ORDERED** that Plaintiffs must post a security bond in the amount of $500,000 within 14 days of this Order.  Failure to post the bond will result in this action being dismissed without prejudice.

**DATED** this __23__ day of March, 2026.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT