**MATTHEW L. SHARP, LTD.**
Matthew L. Sharp, Esq.
Nevada Bar No. 4746
432 Ridge Street
Reno, NV 89501
(775) 324-1500
matt@mattsharplaw.com

**NEWMAN FERRARA LLP**
Jeffrey M. Norton, Esq. (*Admitted Pro Hac Vice*)
Benjamin D. Baker, Esq. (*Admitted Pro Hac Vice*)
55 East 59th Street, 17th Floor
New York, NY 10022
(212) 619-5400
jnorton@nfllp.com
bbaker@nfllp.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ADRIAN DOMINICAN SISTERS, SISTERS OF BON SECOURS USA, SISTERS OF ST. FRANCIS OF PHILADELPHIA, and SISTERS OF THE HOLY NAMES OF JESUS & MARY, U.S.-ONTARIO PROVINCE, derivatively on behalf of SMITH & WESSON BRANDS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARK P. SMITH, KEVIN A. MAXWELL, SUSAN J. CUPERO, ROBERT L. SCOTT, ANITA D. BRITT, FRED M. DIAZ, MICHELLE J. LOHMEIER, BARRY M. MONHEIT, and DENIS G. SUGGS, <br><br> Defendants. <br><br> -and- <br><br> SMITH & WESSON BRANDS, INC., a Nevada Corporation, <br><br> Nominal Defendant. | Case No.: 2:25-cv-00236-GWN-MDC |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION

- 1 -

Plaintiffs Adrian Dominican Sisters, Sisters of Bon Secours USA, Sisters of St. Francis of Philadelphia, and Sisters of the Holy Names of Jesus & Mary, U.S.-Ontario Province (collectively, "Plaintiffs"), respectfully submit this memorandum in support of their motion for reconsideration of the Court's March 23, 2026 Order Granting Defendants' Motion to Dismiss (the "Order"). Reconsideration is appropriate under Federal Rule of Civil Procedure 59(e) and Local Rule 59-1 to "correct manifest errors of law or fact upon which the judgment rests."[1]

## I.    PRELIMINARY STATEMENT

The Order commits at least five independent and fundamental legal errors with respect to the Court's imposition of a $500,000 security bond under NRS § 41.520. Each independently warrants reconsideration and vacatur of the bond requirement:

*First*, even accepting for purposes of argument that the Section 14(a) claim is derivative, a state security-for-expenses statute cannot govern a purely federal derivative claim. Under *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), and the *Cohen*/*Borak* framework, the bond requirement is legally inapplicable to Plaintiffs' Exchange Act claim.

*Second*, the Court applied federal common-law finality principles, drawn from Ninth Circuit cases that have nothing to do with Nevada preclusion law, to determine whether the state court's bond order qualified as "final" for purposes of issue preclusion. Under 28 U.S.C. § 1738, that was reversible error. Nevada has not adopted the federal "sufficiently firm" standard, and no Nevada authority supports giving preclusive effect to an interlocutory bond order followed by a dismissal without prejudice.

*Third*, the Court declined to conduct the threshold identity-of-issues inquiry that issue preclusion demands, simply assuming the element was satisfied, when in fact the federal Complaint materially differed from the state court pleading by asserting a Section 14(a) Exchange Act claim that was never before the state court.

---

[1]    *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

*Fourth*, NRS § 41.520(4) expressly provides that a bond determination "shall not be deemed a determination of any one or more issues in the action or of the merits thereof." That statutory command categorically forecloses the preclusive effect the Court attributed to the state bond order, and the Court's single-sentence response did not engage with the statutory text.

*Fifth*, the Order is internally self-defeating. It grants Plaintiffs twenty-one days to amend the Complaint but requires Plaintiffs to post the bond within fourteen days (*i.e.*, the bond must be posted before any amended pleading is filed, without regard to the substance of the amended pleading to which the bond would apply). A bond calibrated to claims the Court has ordered Plaintiffs to supersede is both procedurally inconsistent and irreconcilable with the complaint-specific inquiry that NRS § 41.520 requires.

For these reasons, the Court should grant reconsideration and vacate the bond requirement in its entirety, or in the alternative, defer any bond requirement until the Court evaluates an amended complaint.

## II.    PROCEDURAL HISTORY AND RELEVANT BACKGROUND

Before filing this action, Plaintiffs litigated derivative fiduciary-duty claims in the Eighth Judicial District Court of Nevada (the "State Court Action"), asserting state-law claims for breach of fiduciary duty relating to Smith & Wesson Brands, Inc.'s alleged exposure to liability through the manufacture, marketing, and sale of semi-automatic firearms.[2] In March 2024, the state court granted Defendants' bond motion under NRS § 41.520, requiring Plaintiffs to post a $500,000 bond by April 23, 2024, on the ground that there was "no reasonable possibility" the claims would benefit the corporation or its security holders.[3] The state court's bond order was prepared by Defendants and differed in material respects from the court's own conclusions expressed at the hearing on the bond motion—a circumstance that further underscores the infirmity of treating that

---

[2]    Compl. ¶ 36.

[3]    *Id*. ¶ 37.

order as a preclusive, fully adjudicated determination. Plaintiffs did not post the bond, and the state action was dismissed without prejudice.[4]

Plaintiffs then filed this action in federal court, asserting four causes of action: (1) breach of fiduciary duties by the Director Defendants; (2) and (3) breach of fiduciary duties of loyalty and care by the Officer Defendants; and (4) violations of Section 14(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78n(a)) and SEC Rule 14a-9, arising from materially false and misleading statements in the Company's 2024 Proxy Statement.[5] The Section 14(a) claim was not asserted in, and could not have been asserted in, the State Court Action, as it arises from a 2024 proxy solicitation and federal rights that were never before the state court.

In the March 23, 2026 Order, the Court dismissed the Complaint on demand-futility grounds and, in the alternative, imposed a $500,000 bond under NRS § 41.520, applying collateral estoppel from the state court bond order.[6] The Court assumed—without analysis—that the first two elements of Nevada's issue-preclusion test (identity of issues and finality) were "not at issue," then found the remaining elements satisfied because the state court received briefing, held a hearing, and issued a written order.[7] The Order directed Plaintiffs to post the bond within fourteen days while simultaneously granting them twenty-one days to file an amended complaint.[8]

## III.    ARGUMENT

### A.    THE STANDARD FOR RECONSIDERATION UNDER RULE 59(E) IS SATISFIED

A district court may grant a Rule 59(e) motion to reconsider a judgment in order "to correct manifest errors of law or fact upon which the judgment rests."[9] Reconsideration is also appropriate upon "newly discovered evidence" or "an intervening change in controlling law."[10] Each of the errors identified below constitutes a manifest error of law in the Court's collateral-estoppel

---

[4]  *Id*. ¶ 41.
[5]  Compl. ¶¶ 192-223.
[6]  Order at 20-22.
[7]  *Id*.
[8]  *Id*. at 22.
[9]  *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).
[10]  *Id*.

analysis. Because the bond requirement rested entirely on the preclusion finding, correction of those legal errors requires that the bond be vacated.

**B.    THE BOND REQUIREMENT CANNOT APPLY TO PLAINTIFFS' SECTION 14(A) CLAIM**

The Court imposed the NRS § 41.520 bond across all of Plaintiffs' claims without any analysis of whether a state security-for-expenses statute may constitutionally or legally govern a federally created Exchange Act claim. That failure was manifest error. Under settled Supreme Court authority, state security-for-expenses statutes do not reach purely federal derivative claims.

In *J.I. Case Co. v. Borak*, the Seventh Circuit reversed the trial court's application of Wisconsin's security-for-expenses statute to the plaintiff's Section 14(a) claim, and the Supreme Court affirmed that federal courts may grant full remedial relief under Section 14(a) free from state-law procedural restrictions that would defeat the federal enforcement scheme.[11] The Court emphasized that Congress enacted Section 14(a) to prevent management from "obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation" and that private enforcement is a "necessary supplement to Commission action."[12] Requiring a substantial cash bond as a precondition to litigating a federal proxy claim would directly undermine that congressional purpose. *Borak*, and the Supreme Court's earlier decision in *Cohen v. Beneficial Industrial Loan Corp.*, establish a coherent rule: while state security-for-expenses statutes may apply in federal court to state-law derivative claims litigated under diversity jurisdiction, they do not apply to derivative or direct claims arising under federal statutes.[13] That rule reflects the Supremacy Clause principle that state procedural devices cannot be allowed to frustrate federal rights.[14]

---

[11]  *J.I. Case Co. v. Borak*, 377 U.S. 426, 430-32 (1964).
[12]  *Id*. at 432.
[13]  *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 555-57 (1949); *Borak*, 377 U.S. at 430-31.
[14]  *See Hanna v. Plumer*, 380 U.S. 460, 472-74 (1965).

Plaintiffs' fourth cause of action arises entirely under 15 U.S.C. § 78n(a) and Rule 14a-9.[15] Whatever the merit of applying NRS § 41.520 to the state-law fiduciary counts (which Plaintiffs also dispute), the Court committed manifest error by failing to conduct a separate analysis of the Section 14(a) count and to exclude it from the bond requirement. The Order should at minimum be modified to carve out the Section 14(a) claim.[16]

### C. THE COURT APPLIED FEDERAL (NOT NEVADA) FINALITY PRINCIPLES, IN VIOLATION OF 28 U.S.C. § 1738

Under 28 U.S.C. § 1738, a federal court must give a prior state-court judgment "the same full faith and credit . . . as [it has] by law or usage in the courts of such State."[17] The Supreme Court has held, without qualification, that this command requires a federal court to apply the preclusion law of the rendering state, not free-floating federal common law.[18] The Ninth Circuit applies the same rule.[19] However, Nevada's issue-preclusion test, as articulated by the Nevada Supreme Court, requires four elements: (1) identical issues; (2) the initial ruling was "on the merits and ha[s] become final"; (3) the party against whom preclusion is asserted was a party or in privity; and (4) the issue was actually and necessarily litigated.[20] That formulation (*i.e.*, "on the merits and have become final") is conjunctive. Both conditions must independently be satisfied.

The Court did not apply the Nevada test but instead resolved the finality element by citing two Ninth Circuit cases.[21] Those cases articulate the federal common-law principle that a ruling

---

[15] Compl. ¶¶ 218-23.

[16] Furthermore, it would make little sense to impose a bond on state derivative claims pleaded in tandem with a federal claim because the case will be litigated (and defended) with or without claims covered by NRS § 41.520.

[17] 28 U.S.C. § 1738.

[18] *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

[19] *See Pike v. Hester*, 891 F.3d 1131, 1138 (9th Cir. 2018) ("[B]ecause we examine the preclusive effect of a Nevada state court decision, we apply Nevada issue preclusion law").

[20] *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1055 (2008); *Univ. of Nev. v. Tarkanian*, 110 Nev. 581, 599 (1994).

[21] Order at 21 (citing *Syverson v. International Business Machines Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007), and *Luben Industries, Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983)).

need not be "final" in the Section 1291 appellate sense to have preclusive effect.[22] Neither *Syverson* nor *Luben Industries* is a Nevada decision, and neither purports to apply Nevada law. And, nothing in Nevada Supreme Court authority establishes that Nevada has adopted the federal "sufficiently firm" standard from *Syverson* and *Luben*.

The Nevada Supreme Court's consistent, unvarying formulation is that the prior ruling must have been "on the merits and have become final" (*i.e.*, language that appears in every Nevada issue-preclusion decision from *Tarkanian* through *Five Star Capital*). No Nevada case endorses a relaxed "sufficiently firm" substitute. That absence of Nevada authority is significant. Under Section 1738, the operative question was whether Nevada courts would treat the prior bond order as preclusive. If no Nevada authority supports giving preclusive effect to an interlocutory bond order followed by a dismissal without prejudice, the Court was not free to supply that support by importing federal circuit precedent. The burden of proving issue preclusion lies with the party asserting it, and that burden was not met here.[23]

### D.  THE COURT FAILED TO ANALYZE WHETHER THE ISSUES WERE IDENTICAL, AND THEY WERE NOT

Nevada's first element of issue preclusion requires that "the issue decided in the prior litigation must be identical to the issue presented in the current action."[24] The Court skipped this element entirely, declaring that identity of issues was "not at issue."[25] That was manifest legal error. Identity of issues is a threshold requirement that courts must independently assess; it cannot be assumed. The failure to conduct the required analysis is itself grounds for reconsideration. Had the Court conducted the required analysis, it would have found the issues non-identical. NRS § 41.520 directs the court to evaluate whether there is "no reasonable possibility that the prosecution of the cause of action alleged in the complaint" will benefit the corporation or its security holders.[26]

---

[22]  Order at 21.
[23]  *See Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 481 (2009).
[24]  *Five Star Capital Corp.*, 194 P.3d at 713.
[25]  Order at 20.
[26]  NRS § 41.520(1).

The inquiry is expressly complaint-specific. The state court evaluated a complaint asserting only state-law fiduciary-duty claims arising from the Company's firearms manufacturing and marketing practices. It never evaluated whether prosecution of a Section 14(a) claim arising from the Company's 2024 Proxy Statement (*i.e.*, a proxy statement issued after the state action commenced) had any reasonable possibility of benefiting Smith & Wesson.

The federal Complaint is materially different from the state court pleading. It asserts a derivative Exchange Act claim for violations of Section 14(a) and Rule 14a-9, predicated on the 2024 Proxy Statement containing materially false and misleading statements concerning the Company's risk disclosures and governance representations.[27] That claim did not exist in the state court action and could not have been evaluated in the state court's bond proceeding. A bond ruling made without reference to a Section 14(a) claim cannot, as a matter of logic and preclusion doctrine, be "identical" to a ruling that would have been required to assess such a claim.

The Court's assumption that identity of issues was conceded was also inconsistent with Plaintiffs' opposition brief, which contested the applicability of collateral estoppel to the federal action in its entirety. That challenge necessarily encompassed the identity-of-issues element, even if Plaintiffs' brief did not use that precise label. The Court was not free to treat the element as waived in the face of a broad challenge to the preclusion analysis.

### E.  NRS § 41.520(4) EXPRESSLY BARS THE PRECLUSIVE EFFECT THE COURT ATTRIBUTED TO THE BOND ORDER

The most texturally direct argument against the Court's preclusion holding is also the one the Court addressed least. NRS § 41.520(4) provides: "A determination . . . that security either must or must not be furnished . . . shall not be deemed a determination of any one or more issues in the action or of the merits thereof."[28] That language is categorical, unambiguous, and directly on point. The Court's only response to this statutory text was to cite Syverson for the proposition that a ruling "need not possess 'finality' in the sense of 28 U.S.C. § 1291" to have preclusive

---

[27]  Compl. ¶¶ 218-23.
[28]  NRS § 41.520(4).

effect.[29] But Plaintiffs' argument was not about Section 1291 appellate finality. It was about the Nevada Legislature's unambiguous command that a bond determination "shall not be deemed a determination of any one or more issues in the action." The Court never addressed that argument. That failure is manifest error.

The phrase "any one or more issues in the action" is sweeping.[30] It does not say the bond ruling is not a determination of the fiduciary-duty merits. It says the ruling is not a determination of "any" issue, which includes the procedural question of whether a bond should be required in a subsequent proceeding. The most natural reading of the statute is that the Nevada Legislature deliberately insulated bond proceedings from issue-preclusive effect across the board, precisely to prevent the result that occurred here: a bond ruling in one proceeding being carried forward as a preclusive adjudication in another. Reading NRS 41.520(4) to permit preclusion on the bond issue, while forbidding preclusion on the merits issues, requires the Court to supply a distinction the Legislature did not draw. Courts must give statutes their plain meaning and avoid interpretations that render statutory text surplusage.[31] The Court's reading renders NRS § 41.520(4) a dead letter in exactly the circumstances it was designed to govern.

### F.   THE ORDER'S INTERNAL SEQUENCING IS SELF-CONTRADICTORY AND PRODUCES AN UNJUST RESULT

The Order simultaneously grants Plaintiffs twenty-one days to file an amended complaint and requires Plaintiffs to post a $500,000 bond within fourteen days.[32] That sequencing is internally inconsistent and independently warrants reconsideration. The bond was imposed based on collateral estoppel from the state court's assessment of the "cause of action alleged in the complaint" in that proceeding.[33] By granting leave to amend, the Court has acknowledged that the current Complaint may (and should) be materially revised to cure the demand-futility deficiencies

---

[29]   Order at 21.
[30]   NRS § 41.520(4).
[31]   *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).
[32]   Order at 22.
[33]   NRS § 41.520(1).

- 9 -

the Order identified. An amended complaint supersedes the original in all respects; it is not the same pleading.[34]

If Plaintiffs were to file an amended complaint after the bond deadline, and the case was dismissed without prejudice, the claims before the Court would no longer be the claims on which the bond was predicated. Assuming Plaintiffs do not file an amended complaint before the bond is due, then posting the bond would lock in a pleading framework the Court has already determined to be deficient. Either way, requiring Plaintiffs to post a half-million-dollar bond before their amendment deadline expires is procedurally illogical: the bond requirement is keyed to an evaluation of the current Complaint, but the Court has invited Plaintiffs to replace that Complaint with a materially different one.

This is not a technical sequencing concern. The NRS § 41.520 inquiry is complaint-specific.[35] If Plaintiffs amend the Complaint, as the Order contemplates, the amended pleading may assert different claims (or only assert federal claims that are not subject to NRS § 41.520), frame existing claims differently, add defendants, or otherwise alter the NRS § 41.520 calculus. A bond imposed on the basis of the current Complaint provides no legitimate basis for constraining a materially different amended complaint, and a fresh NRS § 41.520 evaluation would be required for the amended pleading in any event. For these reasons, the Court should at minimum defer any bond requirement until after Plaintiffs have filed any amended complaint and the Court has had an opportunity to evaluate whether NRS § 41.520 applies to the claims as amended.

### G. THE COURT'S CATEGORICAL REFUSAL TO ANALYZE WHETHER THE SECTION 14(A) CLAIM IS DIRECT ALSO WARRANTS RECONSIDERATION

The Court declined to evaluate whether Plaintiffs' Section 14(a) claim was direct rather than derivative, on the ground that Plaintiffs had labeled the action a "derivative action" throughout the Complaint and could not amend the pleading through a responsive brief.[36] Plaintiffs expressly

---

[34] *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

[35] *See* NRS § 41.520(1) (whether there is "no reasonable possibility that the prosecution of the cause of action alleged in the complaint . . . will benefit the corporation").

[36] Order at 10 n.4.

argued in their opposition that the Section 14(a) claim should be treated as direct under Delaware law, which governs the direct/derivative distinction for claims brought on behalf of a Nevada corporation whose analysis tracks the framework developed by the Delaware courts. The Court's categorical refusal to engage with that legal argument, as opposed to a new factual allegation, constituted a manifest error of law.

The classification of a Section 14(a) claim as direct versus derivative is a legal question that goes to the core of whether the bond requirement applies at all. *Borak* expressly recognized that Section 14(a) suits may be brought either directly or derivatively.[37] Delaware's two-part test for distinguishing direct from derivative claims, as articulated in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, asks whether (1) the plaintiff suffered the harm directly, and (2) the plaintiff (*i.e.*, not the corporation) would receive the benefit of any recovery.[38] Under that framework, a claim arising from materially false and misleading proxy solicitations that directly misled shareholders in connection with a vote is properly characterized as a direct claim on behalf of those shareholders, not as a derivative claim belonging to the corporation.[39]

If the Section 14(a) claim is direct, then neither Federal Rule of Civil Procedure 23.1's demand requirement nor the NRS § 41.520 bond mechanism applies (*i.e.*, both are procedural constraints on derivative suits). A ruling that Plaintiffs could not raise this legal argument in their opposition, without any substantive engagement with whether the argument is correct, effectively denies Plaintiffs the opportunity to have a genuine legal issue resolved. Because the Court is granting Plaintiffs leave to amend, reconsideration of this point is especially appropriate: any amended complaint can properly label and frame the Section 14(a) claim consistent with the legal arguments Plaintiffs have preserved, and the Court should address the direct/derivative question on the merits in connection with any amended pleading.

///

---

[37] 377 U.S. at 430-31.
[38] *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004).
[39] *Id.*

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant reconsideration and: (1) vacate the $500,000 bond requirement in its entirety; (2) in the alternative, exclude the Section 14(a) claim from any bond requirement, consistent with the *Cohen*/*Borak* framework; and (3) in the further alternative, defer any bond requirement until after Plaintiffs file any amended complaint and the Court conducts a fresh NRS § 41.520 analysis calibrated to the claims in that amended pleading.

Dated:  April 17, 2026

**MATTHEW L. SHARP, LTD.**


        /s/ *Matthew L. Sharp*
Matthew L. Sharp, Esq.
Nevada Bar No. 4746
432 Ridge Street
Reno, NV 89501
(775) 324-1500
matt@mattsharplaw.com

**NEWMAN FERRARA LLP**
Jeffrey M. Norton, *Admitted Pro Hac Vice*
Benjamin D. Baker, *Admitted Pro Hac Vice*
55 East 59th Street, 17th Floor
New York, NY 10022
(212) 619-5400
jnorton@nfllp.com
bbaker@nfllp.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jeffrey F. Barr, Esq.
ASHCRAFT & BARR LLP
*Attorneys for Defendants*

DATED this 17th day of April 2026.

*/s/ Suzy L. Thompson*
An employee of Matthew L. Sharp, Ltd.

- 13 -