Jeffrey F. Barr, Esq. (SBN 7269)
**EVANS FEARS SCHUTTERT MCNULTY MICKUS**
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119
Telephone: (702) 805-0290
Facsimile: (702) 805-0291
jbarr@efsmmlaw.com

John A. Sten, Esq. Massachusetts Bar No. 629577
(Pro Hac Vice)
Ann Makkiya, Esq. Massachusetts Bar No. 640143
(Pro Hac Vice forthcoming)
**BYRD CAMPBELL, P.A.**
100 State Street, 3rd Floor
Boston, MA 02109
Telephone: (407) 392-2285
jsten@byrdcampbell.com
amakkiya@byrdcampbell.com
*Attorneys for Defendants and Nominal Defendant*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ADRIAN DOMINICAN SISTERS, SISTERS OF BON SECOURS USA, SISTERS OF ST. FRANCIS OF PHILADELPHIA, and SISTERS OF THE HOLY NAMES OF JESUS AND MARY, U.S.-ONTARIO PROVINCE, derivatively on behalf of SMITH & WESSON BRANDS, INC.; <br><br> Plaintiffs, <br><br> v. <br><br> MARK P. SMITH, KEVIN A. MAXWELL, SUSAN J. CUPERO, ROBERT L. SCOTT, ANITA D. BRITT, FRED M. DIAZ, MICHELLE J. LOHMEIER, BARRY M. MONHEIT, and DENIS G. SUGGS; <br><br> Defendants, <br><br> and <br><br> SMITH & WESSON BRANDS, INC., a Nevada Corporation, <br><br> Nominal Defendant. | **Case No.: 2:25-cv-00236-GWN-MDC** <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION [ECF. 40]** |

Evans Fears Schuttert McNulty Mickus
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119

Defendants,[1] by and through their undersigned counsel, respectfully submit the following Response to Plaintiffs' Motion for Reconsideration (the "Motion").

**INTRODUCTION**

A Motion to Reconsider under Federal Rule of Civil Procedure 59(e) has been described as an extraordinary remedy that should not be granted absent highly unusual circumstances. This is not one of those circumstances.  This Court was correct the first time, and there is no reason for this Court to reconsider its thorough and well-reasoned ruling dismissing Plaintiffs' claims and ordering (in the event Plaintiffs seek to amend their Complaint) Plaintiffs to post a security bond in the amount of $500,000.

Plaintiffs' Motion fails on both procedural and substantive grounds. It is procedurally improper because it: (1) reiterates arguments previously raised; and (2) raises arguments that Plaintiffs could have previously raised but did not. The Motion is also substantively without merit as Plaintiffs have failed to show that the Court's dismissal Order is erroneous, let alone that the Court committed the type of "clear" or "manifest" error warranting reconsideration.[2] Plaintiffs' Motion is precisely the type of "second bite at the apple" that the Ninth Circuit has repeatedly rejected.

**ARGUMENT**

**I.    PLAINTIFFS' MOTION IS PROCEDURALLY IMPROPER**

The analysis and standards for reconsideration under Rule 59(e) are well-settled. Rule 59(e) "offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *See Allstate Insurance Company v. Nassiri,* 2021 WL 965308, *2 (D. Nev. 2021) (internal citation omitted). Reconsideration under Rule 59(e) is appropriate only if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *See Beauregard v. Sampson,* 2023 WL 4826519 at *2 (internal citation omitted).

---

[1] Defendants adopt the same shorthand references used in their moving papers.

[2] Defendants disagree with Plaintiffs' self-serving (and erroneous) recitation of the "Procedural History and Relevant Background," (ECF 40, pp. 3-4), particularly as it pertains to the "state court's bond order."

Based on the above-referenced narrow, limited bases for reconsideration, "[a Rule 59(e)] motion for reconsideration should not be granted, absent highly unusual circumstances[.]" *See Beauregard v. Sampson,* 2023 WL 4826519, *2 (D. Nev. 2023) (internal citations omitted); *see also Blackmon v. New Albertson's Inc.,* 2012 WL 3613956, *2 (D. Nev. 2012) (noting "[a] motion for reconsideration should not merely present arguments previously raised" and "is not a vehicle permitting the unsuccessful party to reiterate arguments previously presented."). "Mere dissatisfaction with the court's order, or belief that the court is wrong in its decision, is not grounds for reconsideration." *See Bird v. Recontrust Co.,* 2014 WL 3696703, *1 (D. Nev. July 23, 2014) (internal citation omitted); *Brown v. Kinross God, U.S.A.,* 378 F. Supp.2d 1280, 1288 (D. Nev. 2005) (noting the moving party may not use the motion as "an avenue to re-litigate the same issues and arguments upon which the court has already ruled."); *Carroll v. Nakatani,* 342 F.3d 934, 945 (9th Cir. 2001) (noting that if a movant's clear error arguments relate to matters that either "were raised or could have been raised before the judgment was entered, … they do not form a proper basis for a Rule 59(e) motion."). That, however, is precisely what Plaintiffs attempt to do here with respect to the security bond order – which was fully briefed and addressed by this Court in the March 23, 2026 Order.

Plaintiffs' Motion is nothing more than an improper attempt at a "do-over" by delving further into previously raised arguments that this Court has already considered and addressed or advancing arguments that Plaintiffs could have raised in prior briefing, which is *per se* insufficient under Rule 59(e)'s exacting standards. As a result, Plaintiffs' Motion should be summarily rejected as procedurally improper without even addressing the arguments on the merits.

## II.     PLAINTIFFS FAIL TO DEMONSTRATE A "CLEAR" OR "MANIFEST" ERROR OF LAW

Even assuming, *arguendo,* this Court considers and treats Plaintiffs' Motion as a proper Rule 59(e) Motion – which it should not – the Motion fails as a matter of law as Plaintiffs have not (and cannot) demonstrate <u>any</u> error in the Court's ruling, let alone the "clear" or "manifest" error that justifies reconsideration under Rule 59(e). To establish "manifest error" (also referred to as "clear error") a party must prove that the court was "more than just maybe or probably wrong" but rather "dead wrong." *See e.g. Campion v. Old Republic Home Prot. Co., Inc.* 2011 WL 1935967,

*1 (S.D. Cal. May 20, 2011) (internal citation omitted); *Bull v. City & County of San Francisco,* 758 F. Supp.2d 925, 928 (N.D. Cal. 2010) (noting the "clear error" standard under Rule 59(e) is not met unless "the prior decision was 'clearly' wrong.") (internal citation omitted); *Rupert v. Bond*, 2015 WL 78739, *2 (N.D. Cal. Jan. 6, 2015) (noting a "manifest error of law" is not merely one in which the party disagrees with the Court, but instead is the "wholesale disregard, misapplication, or failure to recognize controlling precedent on the part of the court."); *Ford v. Ciraolo-Klepper,* 2017 WL 3616608, *1 (E.D. Cal. Jun. 26, 2017) ("Clear error is a very exacting standard in which the court must be more than just maybe or probably wrong; it must be dead wrong.") (internal citations omitted); *Bardo v. Clark,* 2021 WL 2778532, *1 (N.D. Cal. July 2, 2021) (noting "[a] district court does not commit clear error warranting reconsideration when the question before it is a debatable one.").[3]

Plaintiffs do not contend that there has been an "intervening change in the law" or "discovery of new evidence." Rather, Plaintiffs broadly assert that: (1) the Order commits "fundamental legal errors with respect to the Court's imposition of a $500,000 security bond"; and (2) each of the errors "constitutes a manifest error of law in the Court's collateral-estoppel analysis" and "warrants reconsideration and vacatur of the bond requirement."[4] These arguments fail for myriad reasons.

### A.    The Court Correctly Concluded That Plaintiffs Are Collaterally Estopped From Challenging The Security Bond Requirement.

Courts routinely deny motions for reconsideration when the moving party's arguments were "properly considered, adjudicated, and rejected." *See e.g. Pickell v. Sands,* 2014 WL 1884464, *2 (E.D. Cal. May 12, 2014). That is the case here where the security bond issue was fully considered and adjudicated by this Court, which concluded that "the [State Court] bond order was final for purposes of collateral estoppel." *See* Order (ECF 39), p. 21 [14-15]. In addition to this fatal

---

[3] The *Campion* court noted that, while the Ninth Circuit has not defined a standard for "clear error," other federal circuits have. *See Campion,* 2011 WL 1935967, at *1. For example, the Seventh Circuit has vividly observed that "[t]o be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must … strike [the court] as wrong with the force of a five-week old, unrefrigerated dead fish." *See Slate v. Am. Broad. Companies, Inc.,* 12 F. Supp.3d 30, 35 (D.D.C. 2013) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir. 1988)).

[4] Motion, at pp. 2-5.

deficiency, none of the arguments advanced by Plaintiffs demonstrate the required "clear error" by the Court to justify reconsideration under Rule 59(e).

### 1.    Plaintiffs' Section 14(a) claim does not impact the Court's issue preclusion decision.

Plaintiffs attempt to avoid preclusion, by pointing to their federal Section 14(a) claim, is unavailing. Plaintiffs argue that the issues are "non-identical" because the Court never evaluated Plaintiffs' Section 14(a) claim pursuant to NRS §41.520 and that the State Court's security bond order "do[es] not apply to derivative or direct claims arising under federal statutes."[5] Both of these arguments are without merit.

First, given that Plaintiffs do not dispute identity of issues in their original briefing, this argument is effectively waived. Moreover, it is incontrovertible that the security bond issue litigated in the State Court action and the present federal action are identical – hence the Court's acknowledgment that this element is "not at issue."[6] Plaintiffs' belated argument is also belied by the Court's Order, which explicitly states that the State Court fully resolved the security bond issue pursuant to NRS §41.520 and concluded "there was 'no reasonable possibility' the claims would benefit the corporation or its security holders."[7]

As for Plaintiffs' argument that the security bond order does not apply to their Section 14(a) claim, Plaintiffs cannot evade preclusion by simply adding a federal claim. The Court correctly found Plaintiffs had a full and fair opportunity to litigate the bond issue in State Court and nothing in Plaintiffs' Motion detracts or changes that conclusion. *See* Order, p. 20. As this Court correctly acknowledged, under Nevada law, issue preclusion "applies to prevent re-litigation of [ ] a specific issue that was decided in a previous suit between the parties, *even if the second suit is based on different causes of action and different circumstances.*" *Id.* (citing *Arduini v. Hart,* 774 F.3d 622, 629 (9th Cir. 2014)) (emphasis added). The *Arduini* court explained that "[i]ssue preclusion cannot be avoided by attempting to raise a new legal or factual argument that involves *the same ultimate issue previously decided in the prior case.*" *Arduini,* 774 F.3d at 630 (citing *Alcantara v. Wal-Mart Stores, Inc.,* 321 P.3d 912, 916-17 (Nev. 2014) (stating that "[i]f a party could avoid issue

---

[5] Motion, pp. 5-8.
[6] Order, p. 20.
[7] Order, p. 2

preclusion by finding some argument it failed to raise in the previous litigation, the bar on successive litigation would be seriously undermined.").

In addition, Plaintiffs' reliance on *J.I. Case Co. v. Borak,* 377 U.S. 426 (1964) in support of their argument is similarly misplaced. In *Borak*, the Supreme Court concluded that federal courts have the power to provide all necessary remedial relief for violations of the Act (specifically Section 14(a)) and that federal remedies should not be constrained or restricted by conflicting state laws. *Id.* at 434-435. In its holding, the Supreme Court explained that the purpose of Section 14(a) was to safeguard corporate governance and protect investors from deceptive practices in proxy solicitations and that limiting remedies to declaratory relief would undermine these objectives by potentially forcing plaintiffs to seek redress in state courts, where federal securities interests might not be adequately protected. *Id.* at 434-45 (highlighting that federal remedies should not be constrained by conflicting state laws).  That is <u>not</u> the case here.

First, Plaintiffs did not pursue their Section 14(a) claim in the state court proceeding and only did so here to gain this Court's jurisdiction and attempt to thereby avoid the State Court's security bond order – so there is no issue of pursuing a federal claim in state court.

Second, there is nothing "conflicting" or "limiting" as it pertains to the Court's conclusion that Plaintiffs are estopped from re-litigating the security bond issue and imposing the security bond. The Court still has the power to grant all necessary remedies available under the Act. *See e.g. Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 374 (1985) (noting "[w]hile a state court will have no occasion to address the question whether a state judgment has issue or claim preclusive effect in a later action that can be brought only in federal court, a federal court may nevertheless rely in the first instance on state preclusion principles to determine the extent to which an earlier state judgment bars subsequent litigation."); *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 556-57 (1949) (concluding that a state law requiring posting of bond in shareholder derivative suits does not conflict with federal law and can be enforced in addition to, and consistently with, Rule 23).[8]

---

[8] Nothing in Section 14(a) or Rule 14a-9 prohibits a state from requiring plaintiffs to demonstrate that their derivative litigation has a reasonable possibility of benefitting the corporation. Moreover, while *Borak* established an implied private right of action under Section

### 2. The Court correctly applied Nevada law in its issue preclusion analysis.

The Supreme Court has concluded (and Plaintiffs do not dispute)[9] that "[t]he preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States … as they have by law or usage in the courts of such State from which they are taken.'" *See Marrese,* 470 U.S. at 380 (citing 28 U.S.C. §1738); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481-82 (1982) (noting federal courts must, as a matter of full faith and credit, apply the state's law of collateral estoppel). While Plaintiffs argue that the Court "applied federal (not Nevada) finality principles," (also referred to as the "Nevada test"),"[10] the Order clearly and unambiguously references the four-part test articulated by the Supreme Court of Nevada in *Star Cap. Corp. v. Ruby,* 194 P.3d 709, 713-14 (Nev. 2008), and applied by this Court.[11]

---

14(a), there has been a notable shift where the decision has been heavily discredited and viewed unfavorably by the Supreme Court, as well as the Ninth Circuit. *See e.g. Lee v. Fisher,* 70 F.4th 1129, 1147-49 (9th Cir. 2023) (acknowledging the Supreme Court's "shift away from implying private rights of action" and that "the Court has since 'adopted a far more cautious course before finding implied causes of action.'"). The *Lee* Court further explained that "[i]n the specific context of §14(a) actions, the Court also expressed second thoughts as to the propriety of establishing an implied private right of action, noting that it 'would have trouble inferring any congressional urgency to depend on implied private actions to deter violations of §14(a), when Congress expressly provided private rights of action in §§9(e), 16(b), and 18(a) of the same Act.'" *Id.* at 1148 (stressing that "after the decision in *Borak,* the Supreme Court's jurisprudence has evolved in a way that calls into question *Borak's* statement about derivative §14(a) actions" and "***now looks to state law*** rather than federal common law to fill in gaps relating to federal securities claims, and under Delaware law, a §14(a) action is direct, not derivative.") (emphasis added) (internal citations omitted). Significantly, the *Lee* Court also concluded "the injury caused by a violation of §14(a) gives rise to a *direct* action … not a derivative action" and that *Borak's* recognition of an implied *derivative* right under Section 14(a) is dicta and not binding precedent. *Id.* at 1146-49 (noting *Borak's* statement that a shareholder could bring a derivative §14(a) action, which was not necessary to decide that case, and not addressed in subsequent Supreme Court cases, does not establish a strong public policy in favor of such actions" and that "[t]hese jurisprudential shifts undermine any claim that there is a strong public policy favoring *Borak's* dictum that shareholders can bring a derivative §14(a) action."). That is particularly poignant here, where the Court concluded that Plaintiffs' Section 14(a) claim is pled as a *derivative* claim, not a direct claim. *See* Order, p. 10 (fn. 4).

[9] Motion, p. 6.

[10] Motion, p. 6.

[11] Order, p. 20 ("In order for an issue decided in another case to have preclusive effect (1) 'the issue decided in the prior litigation must be identical to the issue presented in the current action'; (2) 'the initial ruling must have been on the merits and have become final'; (3) 'the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation'; and (4) 'the issue was actually and necessarily litigated.'").

As for element number two of the Nevada test (also referred to as the "finality element") – the single element contested by Plaintiffs – the Court concludes that "[b]ecause the first two elements are not at issue, the Court focuses its analysis on the last two." Order, p. 20 (emphasis added). Specifically, the Court correctly concluded (and Plaintiffs cannot credibly contest) that: (1) the underlying issue (imposition of a security bond) is identical to the issue decided in the prior State Court litigation; and (2) the ruling *as to the bond order* was on the merits and final. *Id.* at 20-22 (concluding collateral estoppel applies where: (1) "the parties had a full and fair opportunity to actually and necessarily litigate the issue of a security bond"; (2) "[t]he state court considered the parties briefing on the bond issue and held a hearing"; and (3) "[t]he state court then issued a reasoned Findings of Fact, Conclusions of Law, and Order – the bond order – granting the motion to require security under NRS 41.520.").

Plaintiffs' argument that the Court "did not apply the Nevada test" and instead "resolved the finality element by citing two Ninth Circuit cases"[12] is nothing more than a red herring. A plain reading of the Order clearly shows that the Court *did* in fact apply the Nevada test (citing *Arduini,* 774 F.3d at 629 and the four-part test articulated in *Five Star Cap. Corp. v. Ruby,* 194 P.3d 709-713 (Nev. 2008)), with subsequent reference to *Syerson* and *Luben* (and numerous other cases) to further illustrate instances where issue preclusion applied to "preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief."[13] Notably, Plaintiffs cite no Nevada authority holding that an interlocutory order, reached after full briefing and a hearing, cannot be "sufficiently firm" to warrant preclusion. This baseless argument does nothing to undermine the Court's analysis.

### 3.    NRS §41.520(4) does not bar preclusion.

Plaintiffs' reliance on NRS § 41.520(4) is misplaced. The statute prevents a bond ruling from being treated as a determination of the *merits* of the underlying derivative claims. *See* NRS § 41.520(4). It does not prohibit courts from giving preclusive effect to the bond determination itself when the same procedural issue arises in a subsequent action. Notably, Plaintiffs fail to cite a single

---

[12] Motion, p. 6 (referring to the Court's citation to *Syerson v. Int'l Bus. Machines Corp.,* 472 F.3d 1072 (9th Cir. 2007) and *Luben Indus., Inc. v. United States,* 707 F.2d 1037 (9th Cir. 1983)).
[13] Order, pp. 20-21.

case in support of this proposition and simply resort to the arguments referenced above (identity of issues argument and that the federal Complaint contains a Section 14(a) claim) – neither of which change the fact that the security bond requirement issue has been fully litigated and adjudicated in the State Court proceeding, and that Plaintiffs are collaterally estopped from relitigating that issue in this forum.

### 4.     The Court's Sequencing of Deadlines is Not Inconsistent.

Plaintiffs' challenge the sequencing of the bond deadline (14 days from the date of the Order) and the deadline to file an amended complaint (21 days from the date of the Order) as "internally inconsistent."[14] It is not. First, nothing in NRS §41.520 or Rule 59(e) requires the Court to align those deadlines. Second, Plaintiffs stated intention to amend (and their speculative arguments surrounding the "different claims" that Plaintiffs "may assert" "[i]f Plaintiffs were to file an amended complaint…,")[15] does not alter the fact that the security bond requirement issue has been fully litigated and adjudicated in the State Court proceeding, and that Plaintiffs are collaterally estopped from relitigating that issue in this forum. Simply put, Plaintiffs anticipated amendment does not (and cannot) reopen or unsettle a determination that is final and binding.

Whether or not Plaintiffs may file an amended pleading has no bearing on the preclusive effect of the previously litigated bond issue. Plaintiffs cite no authority suggesting that leave to amend somehow nullifies a bond requirement or that they may avoid a statutory bond by announcing an intent to revise their pleading. Should Plaintiffs seek to file an amended complaint that materially affects the bond analysis, they are free to raise that issue then.[16] But their speculative concern regarding hypothetical future pleadings is not a proper basis for reconsideration under Rule 59(e) now.

///

///

---

[14] Motion, p. 9.

[15] Motion, pp. 9-10.

[16] NRS §41.520(4) provides that "[t]he amount of the security may thereafter from time to time be increased or decreased in the discretion of the court upon showing that the security provided has or may become inadequate or is excessive." *See* NRS §41.520(4).

**5.      The Court properly addressed Plaintiffs' contention that the Section 14(a) claim should be treated as "direct" and not "derivative."**

The Motion acknowledges that this issue was previously and "expressly argued" by Plaintiffs' in their Opposition and argues that the Court's "categorical refusal to engage with that legal argument" constitutes "a manifest error of law." Motion, pp. 10-11. In addition to improperly attempting to relitigate this issue, this argument is demonstrably false and belied by the detailed explanation provided in the Court's Order rejecting Plaintiffs' argument and stressing that the Court "analyzes Plaintiffs' claims under the standard applicable to derivative action claims because that is how they are pled" and that "[t]he Court does not consider any of Plaintiffs' arguments related to Section 14(a) being a direct claim." Order, p. 10, fn. 4.  In support of this conclusion, the Court highlights, *inter alia*, that:

- Plaintiffs' Complaint is titled "Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty and Violations of Section 14(a) of the Security Exchange Act of 1934 and Jury Demand."
- Plaintiffs repeatedly refer to the action as a "derivative action" throughout the Complaint.
- Nowhere do Plaintiffs refer to the action as a "direct action."
- It is improper for Plaintiffs to attempt to amend their Complaint in a responsive brief.

*Id.* As referenced above, mere disagreement with the Court's decision is not one of the accepted bases for reconsideration and certainly does not constitute a "manifest error of law." The Court correctly declined to entertain Plaintiffs' post-hoc attempt to reframe the Complaint.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

Plaintiffs' Motion revisits issues that have already been decided or that could have previously been presented to the Court. For these reasons, and the reasons set forth above, Defendants respectfully request that the Motion be denied in its entirety.

Dated: May 15, 2026

**EVANS FEARS SCHUTTERT MCNULTY MICKUS**

**/s/** Jeffrey F. Barr, Esq.
Jeffrey F. Barr, Esq. (SBN 7269)
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119
Telephone: (702) 805-0290
Facsimile: (702) 805-0291
jbarr@efsmmlaw.com

**BYRD CAMPBELL, P.A.**
John A. Sten, Esq. (MA Bar No. 629577)
(Pro Hac Vice)
Ann Makkiya, Esq. (MA Bar No. 640143)
(Pro Hac Vice forthcoming)
100 State Street, 3rd Floor
Boston, MA 02109
Telephone: (407) 392-2285
jsten@byrdcampbell.com
amakkiya@byrdcampbell.com

*Attorneys for Defendants and Nominal Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION** was served on counsel of record this 15th day of May, 2026, using the Court's CM/ECF System.

_/s/ Kaitlyn Kalloo_
An Employee of Evans Fears Schuttert McNulty Mickus