Matthew L. Sharp, Esq.
Nevada Bar No. 4746
**MATTHEW L. SHARP, LTD.**
432 Ridge Street
Reno, NV 89501
(775) 324-1500
matt@mattsharplaw.com

Jeffrey M. Norton, Esq. (*Admitted Pro Hac Vice*)
Benjamin D. Baker, Esq. (*Admitted Pro Hac Vice*)
**NEWMAN FERRARA LLP**
55 East 59th Street, 17th Floor
New York, NY 10022
(212) 619-5400
jnorton@nfllp.com
bbaker@nfllp.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ADRIAN DOMINICAN SISTERS, SISTERS OF BON SECOURS USA, SISTERS OF ST. FRANCIS OF PHILADELPHIA, and SISTERS OF THE HOLY NAMES OF JESUS & MARY, U.S.-ONTARIO PROVINCE, derivatively on behalf of SMITH & WESSON BRANDS, INC.,

     Plaintiff,

  v.

MARK P. SMITH, KEVIN A. MAXWELL, SUSAN J. CUPERO, ROBERT L. SCOTT, ANITA D. BRITT, FRED M. DIAZ, MICHELLE J. LOHMEIER, BARRY M. MONHEIT, and DENIS G. SUGGS,

     Defendants.

  -and-

SMITH & WESSON BRANDS, INC., a Nevada Corporation,

     Nominal Defendant.

Case No.: 2:25-cv-00236-GWN-MDC

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION**

///

Plaintiffs Adrian Dominican Sisters, Sisters of Bon Secours USA, Sisters of St. Francis of Philadelphia, and Sisters of the Holy Names of Jesus & Mary, U.S.-Ontario Province (collectively, "Plaintiffs"), respectfully submit this reply memorandum in further support of their Motion for Reconsideration ("Motion," ECF No. 40) of the Court's Order Granting Defendants' Motion to Dismiss ("Order," ECF No. 39), and in response to Defendants' Opposition ("Opposition," ECF No. 43).

## I.    PRELIMINARY STATEMENT

Defendants' Opposition offers little substance on the merits of Plaintiffs' Motion. Defendants cite no Nevada case giving issue-preclusive effect to a security-for-expenses order under NRS § 41.520, let alone one involving direct claims under the federal Exchange Act. They do not reconcile NRS § 41.520(4)'s command that a bond determination "shall not be deemed a determination of any one or more issues in the action" with the use of that same bond determination as collateral estoppel. They do not address the dispositive distinction between *Cohen*, a diversity-only state-law derivative case, and *Borak*, a federal Section 14(a) case in which the Supreme Court affirmed the inapplicability of a state security-for-expenses statute. And, most tellingly, Defendants rely on *Lee v. Fisher* for the proposition that, under Delaware law, a Section 14(a) claim is direct, not derivative (*i.e.*, a concession that underscores why the security bond for derivative claims cannot properly be imposed on Plaintiffs' federal proxy claim).

In short, Defendants treat repetition of the Order's rationale as a substitute for engagement with its legal defects. That is not what Rule 59(e) permits. Where, as here, the moving party identifies controlling law that the Court misapplied or overlooked, reconsideration is warranted. The Court should grant the Motion, vacate the bond requirement in its entirety, or in the alternative, expressly exclude the Section 14(a) claim from the bond analysis and defer any further consideration as to the necessity for a bond until Plaintiffs file an amended complaint.

///

///

///

## II.   ARGUMENT

### A.   THE MOTION SATISFIES THE MANIFEST-ERROR STANDARD UNDER RULE 59(E)

Defendants make much of the familiar refrain that reconsideration is an "extraordinary remedy" and cannot be used as a "second bite."[1]  However, "[m]anifest error of law" is one of Rule 59(e)'s enumerated grounds, and a motion that identifies such error necessarily revisits the prior ruling.[2]  Thus, Defendants' framing does not resolve Plaintiffs' Motion, which sets forth "'some valid reason why the court should reconsider its prior decision' and 'facts or law of a strongly convincing nature to persuade the court to reverse its prior decision.'"[3]

In their Motion, Plaintiffs do not ask the Court to reweigh the factual record or revisit a discretionary case-management ruling.  Rather, Plaintiffs identify five legal defects in one part of the Court's motion to dismiss ruling (*i.e.*, the bond decision) that reflect a "manifest" or "clear" error of law:  (i) misapplication of NRS § 41.520 to federal securities law without addressing controlling Supreme Court authority limiting state procedural impositions on federal rights;[4] (ii) misapplication of 28 U.S.C. § 1738 by applying federal preclusion law;[5] (iii) misapplication of issue identity by assuming a threshold element;[6] (iv) failure to give effect to NRS § 41.520(4);[7] and (v) imposition of a complaint-specific bond before the operative complaint is before the Court.[8]

///

---

[1]  Opp. at 2-4.  The Defendants' waiver argument is without merit.  The legal errors raised in Plaintiffs' Motion stemmed from the Court's stated rationale and could not have been addressed before the ruling.  A party cannot forfeit its right to seek correction of a manifest legal error merely because the court's order crystallized that error in a form that was not fully developed before the ruling.

[2]  *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

[3]  *Solak v. Rochford*, 2020 WL 7479637, at *1 (D. Nev. Dec. 18, 2020) (quoting *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003)).

[4]  *See* Motion at 5-6.

[5]  *Id*. at 6-7.

[6]  *Id*. at 7-8.

[7]  *Id*. at 8-9.

[8]  *Id*. at 10-11.

- 3 -

The practical stakes confirm that reconsideration is appropriate. Defendants seek to condition Plaintiffs' ability to plead and litigate their Section 14(a) claim on a $500,000 state-law bond applicable only to derivative claims. If that is wrong, it is not a marginal defect. It is a threshold legal error that affects access to a federal statutory remedy. Rule 59(e) exists to correct precisely that type of error before the case proceeds on an unsound procedural foundation.

**B.    THE BOND CANNOT APPLY TO PLAINTIFFS' FEDERAL SECTION 14(A) CLAIM**

**1.    *Borak* Controls the Section 14(a) Claim**

Defendants' argument about the Court's application of the state bond statute to Plaintiffs' federal Section 14(a) claim erroneously combines the holdings from two materially different cases, *Cohen* and *Borak*.[9] The controlling distinction is jurisdictional and remedial. *Cohen* involved a state-law derivative claim in a diversity case. *Borak* involved a federal proxy claim under Section 14(a). Defendants' brief treats those decisions as interchangeable, but they operate on opposite sides of the *Erie*/Supremacy Clause line.

In *Cohen*, the Supreme Court held that a state security-for-expenses statute applied as substantive state law in a stockholder derivative action where federal jurisdiction existed "only because the parties are of diverse citizenship."[10] However, *Cohen* was not a federal securities case, it did not involve a federal cause of action, did not involve Section 14(a), and did not hold that a state bond statute may condition prosecution of a federally created Exchange Act claim.[11] Thus, the case has no bearing on whether the Nevada bond statute can be applied to Plaintiffs' federal Section 14(a) claim.

Unlike *Cohen*, *Borak* is directly on point. In *Borak*, the plaintiff asserted both a state fiduciary-duty count and a Section 14(a) count.[12] The district court applied a Wisconsin security-for-

---

[9]    *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949); *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964).

[10]    *Beneficial Industrial Loan Corp.*, 337 U.S. at 543, 555-57.

[11]    *Id*. at 555-57.

[12]    *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964).

expenses statute and required a bond.[13]  The Seventh Circuit reversed, holding the state statute inapplicable, and the Supreme Court affirmed.[14]  The Court held that private Section 14(a) suits are permissible "for both derivative and direct causes," that "the overriding federal law" controls the scope of redress, and that the federal character of the right remains unchanged even where state-law questions are implicated.[15]

*Borak* also rejected the imposition of a state bond on a Section 14(a) claim, as Defendants have asked this Court to do.  In reaching this holding, the Supreme Court warned that if federal proxy plaintiffs were forced into state-law remedial channels, "the whole purpose" of Section 14(a) might be frustrated, and procedural "hurdles" including "security for expenses statutes" might prove "insuperable to effective relief."[16]  Defendants' assertion that there is "nothing conflicting or limiting" about imposing a $500,000 bond on the Section 14(a) claim is impossible to square with *Borak's* reasoning.[17]

Defendants' effort to limit *Borak* by relying on later cases that construe implied rights of action more cautiously is irrelevant.  Section 14(a) private claims remain recognized in this Circuit, as recently addressed in *Lee* (which Defendants themselves invoke).[18]  *Lee* may narrow *Borak's* dictum concerning derivative characterization, but it does not overrule *Borak's* operative holding that federal courts must be able to furnish effective relief for Section 14(a) violations without state procedural devices defeating the federal remedy.  Until the Supreme Court says otherwise, *Borak* remains a binding authority that federal courts may grant effective relief for Section 14(a) violations and that state security-for-expenses statutes cannot be deployed to frustrate that federal remedy.  Thus, at a minimum, the Court should modify the Order to make clear that NRS § 41.520 cannot apply to the Section 14(a) claim, whether that claim is treated as derivative under *Borak* or direct under *Lee*.

---

[13]  *Id.* at 428.

[14]  *Id.* at 434-35.

[15]  *Id*.

[16]  *Id.*

[17]  Opp. at 6.

[18]  *Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023) (*en banc*).

To be clear, a half-million-dollar bond is no small hurdle when it operates as a precondition to litigating a federal securities claim.

### 2.    Defendants Confirm that Plaintiffs' Section 14(a) Claim Cannot Be Subject to Nevada's Derivative Bond Requirement

While addressing *Lee*, Defendants quote the *en banc* Ninth Circuit for two propositions that defeat their own position:  "under Delaware law, a § 14(a) action is direct, not derivative" and the "injury caused by a violation of § 14(a) gives rise to a direct action."[19]  Those propositions, if accepted, defeat the bond requirement as to Plaintiffs' Section 14(a) claim, because NRS § 41.520 only applies to derivative actions enforcing "secondary rights" (*i.e.*, it does not apply to direct claims brought by stockholders).

Defendants cannot have it both ways.  They cannot rely on *Lee* to say that Section 14(a) claims are direct for purposes of avoiding *Borak's* derivative-claim reasoning, while simultaneously insisting that Plaintiffs' Section 14(a) claim remains derivative for purposes of imposing a Nevada derivative bond.  If *Lee* governs the characterization question, then the Section 14(a) claim should be treated as direct, and neither Rule 23.1 nor NRS § 41.520 applies.  If *Borak* governs because Plaintiffs pleaded the claim derivatively, then the state bond statute cannot be used to obstruct the federal claim.  Either conclusion requires reconsideration.

This error is particularly consequential because, if the Section 14(a) claim is direct, NRS § 41.520 is inapplicable on its own terms.  The statute governs only an action "instituted or maintained in the right of any private corporation . . . by the holder or holders of shares."[20]  A direct claim brought on behalf of misled shareholders is not such an action.  And, because the Court granted leave to amend, Plaintiffs' amended complaint can and will frame the federal proxy claim in accordance with the governing direct-claim authorities.  It would be procedurally backward to require Plaintiffs to post a derivative bond before the Court evaluates the amended pleading that will determine whether any derivative bond regime applies.

---

[19]    Opp. at 7 n.8.

[20]    NRS § 41.520(1).

## C.    THE COURT APPLIED FEDERAL (NOT NEVADA) PRECLUSION PRINCIPLES

### 1.    The Bond Order Cannot Satisfy Nevada's Finality Test

While Defendants suggest that the Court "applied Nevada law" because the Order recited *Five Star's* four-part test, merely reciting the correct test is not the same as applying it.[21]  Rather than satisfying Nevada's conjunctive test that "the initial ruling must have been on the merits and have become final," the Order's finality analysis relied on *Syverson* and *Luben* (*i.e.*, federal cases applying federal common-law "sufficiently firm" preclusion principles) to determine the preclusive effect that Nevada courts would give the state bond order.[22]

Defendants cite no Nevada case holding that an interlocutory NRS § 41.520 bond order, followed by dismissal without prejudice for failure to post security, constitutes a final merits adjudication for issue-preclusion purposes.  That omission is dispositive because Defendants bear the burden.[23]  And, since the Nevada test requires that the prior ruling must be both "on the merits" and "final," a bond order that the Nevada Legislature has declared not to be a determination of "any one or more issues in the action or of the merits thereof" cannot be transformed into a final merits determination by importing federal "sufficiently firm" doctrine from *Syverson* and *Luben*.[24]

Properly viewed, the record is this:  (i) Defendants asked the Court to give preclusive effect to a Nevada state-court bond order; (ii) Section 1738 required application of Nevada law; (iii) the Court applied federal Ninth Circuit cases; and (iv) no published decision in any forum, state or federal, has ever held that an interlocutory state bond determination, followed by dismissal without prejudice, is "final" for Nevada issue-preclusion purposes.[25]  Because Defendants have shown no Nevada authority supporting preclusion in these circumstances, the bond order should be vacated.

---

[21]  Opp. at 7-8.

[22]  *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1051 (2008).

[23]  *Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 481 (2009).

[24]  *See Syverson v. International Business Machines Corp.*, 472 F.3d 1072 (9th Cir. 2007); *Luben Industries, Inc. v. United States*, 707 F.2d 1037 (9th Cir. 1983).

[25]  *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Pike v. Hester*, 891 F.3d 1131, 1138 (9th Cir.

- 7 -

### 2.     Plaintiffs' Section 14(a) Claim Was Not Litigated

In connection with Plaintiffs' Section 14(a) claim, Defendants' preclusion argument fails at the first element. Nevada issue preclusion applies only when "the issue decided in the prior litigation" is "identical to the issue presented in the current action."[26] The issue here is not the abstract phrase "security bond." Under NRS § 41.520, the issue is whether there is no reasonable possibility that prosecuting the "cause of action alleged in the complaint" will benefit the corporation or its security holders (*i.e.*, a complaint-specific inquiry).[27]

The state court did not evaluate the Complaint before this Court, and certainly not the anticipated amended pleading; it could not have. The Section 14(a) claim arises from the Company's 2024 Proxy Statement, which post-dates the filing of the state court action and was never before the state court in any form. A claim grounded in a proxy solicitation that had not yet occurred when the state bond motion was litigated cannot have been "actually and necessarily" decided in that proceeding. Indeed, neither the state court nor this Court ever evaluated: (i) the merits of Plaintiffs' Section 14(a) claim arising from the Company's 2024 Proxy Statement; (ii) whether federal proxy relief could benefit Smith & Wesson or its stockholders; or (iii) whether a direct federal proxy claim is outside NRS § 41.520 altogether. Those issues were absent from the state proceeding. Thus, Plaintiffs' Section 14(a) claim was not "actually and necessarily litigated," as Nevada law requires.[28]

Defendants' answer is that Plaintiffs cannot avoid preclusion by adding a federal claim, but in making this argument, they mistakenly conflate claim preclusion with issue preclusion.[29] *Five Star* itself distinguishes claim preclusion, which can reach claims that *could* have been brought, from issue

---

2018) ("[B]ecause we examine the preclusive effect of a Nevada state court decision, we apply Nevada issue preclusion law").

[26] *Five Star*, 124 Nev. at 1055 (2008).

[27] NRS § 41.520(1).

[28] *Five Star*, 124 Nev. at 1055.

[29] Opp. at 5-6. Contrary to Defendants' assertion, Plaintiffs did not "avoid" the state bond order by filing in this Court. Rather, Plaintiffs pursued a federal claim that did not exist when the state court ruled, in the federal forum to which Congress directed Section 14(a) claimants.

preclusion, which reaches only a specific issue actually decided in a prior suit.[30] Defendants' reliance on *Arduini* and *Alcantara* does not alter the rule (*i.e.*, those cases permit preclusion only when the same ultimate issue was actually decided). They do not permit preclusion when the later complaint presents a different statutory claim, a different proxy statement, a different remedial framework, and a different direct-versus-derivative analysis.

Nor can Defendants carry their burden by asserting waiver. The party invoking issue preclusion bears the burden of establishing each element, and a court cannot apply preclusion unless all elements are satisfied.[31] Defendants have not identified a prior ruling that decided the federal Section 14(a) bond question because no such ruling exists.

### D. NRS § 41.520(4)'S PLAIN TEXT BARS PRECLUSIVE USE OF THE BOND ORDER

Defendants' reading of NRS § 41.520(4) cannot be reconciled with the statutory text. The statute provides that a determination that security must or must not be furnished "shall not be deemed a determination of any one or more issues in the action or of the merits thereof."[32] Defendants assert that this language merely prevents a bond ruling from being treated as a determination of the merits of the underlying derivative claims.[33] That interpretation omits half the sentence.

The Legislature did not say only that a bond determination is not a determination "of the merits." It also said the determination is not a determination of "any one or more issues in the action."[34] The bond issue is an issue. Defendants' position asks the Court to treat the state bond ruling as conclusive on that very issue in this action. That is the preclusive use the statutory text forbids.

Defendants respond that Plaintiffs cite no case applying NRS § 41.520(4) this way.[35] But Defendants cite no case applying it in the manner they advance either. And, they are the party bearing

---

[30] *Five Star*, 124 Nev. at 1056-58.
[31] *Bower*, 125 Nev. at 481.
[32] NRS § 41.520(4).
[33] Opp. at 8-9.
[34] NRS § 41.520(4).
[35] Opp. at 8-9.

the burden to establish the applicability of preclusion.[36]  The absence of Nevada authority expanding preclusion against the statute's text favors Plaintiffs, not Defendants.  The Court should apply the ordinary rule that statutory text controls.  A reading that gives effect to both clauses, "any one or more issues" and "the merits," forecloses issue preclusion from the bond ruling.  A reading that preserves only the merits clause makes the issues clause surplusage.[37]

### E.    THE BOND AND AMENDMENT DEADLINES CANNOT BE RECONCILED

Defendants' response on sequencing misses the point.  Plaintiffs do not suggest that Rule 59(e) mechanically requires the bond deadline and amendment deadline to align.  Rather, Plaintiffs contend that the NRS § 41.520 analysis is complaint-specific, and the Court should not require Plaintiffs to post a $500,000 bond based on a future, superseding pleading that the Court already permitted Plaintiffs to file.[38]  If Plaintiffs file an amended complaint, that pleading may clarify that the Section 14(a) claim is direct; may omit, modify, or sharpen state-law claims; and may alter the claims to which any NRS § 41.520 analysis could apply.  Defendants' suggestion that Plaintiffs can seek an adjustment later is no answer.[39]  Forcing Plaintiffs to post a prohibitively high half-million-dollar bond first and then litigate whether that bond was ever properly required reverses the statutory sequence and creates unnecessary appellate risk.

The clean procedural solution is straightforward.  If the Court does not vacate the bond requirement in full, it should vacate the current bond deadline, permit Plaintiffs to file an amended complaint, and require Defendants to file any renewed NRS § 41.520 motion against that operative

---

[36]  *See Bower*, 125 Nev. at 481.

[37]  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (statutes must be read to give meaning to each word).

[38]  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) ("[A]n amended pleading supersedes the original [and] the original pleading no longer performs any function in the case . . .."); *Solak v. Rochford*, 2020 WL 7479637, at *2 (D. Nev. Dec. 18, 2020) (granting motion for reconsideration where the Court erred in assessing standing based on initial complaint rather than amended complaint).

[39]  Opp. at 9.

pleading. That approach preserves Defendants' ability to seek statutory relief while avoiding an immediate bond obligation tied to a superseded complaint and an unresolved federal proxy claim.

**III.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant reconsideration and vacate the $500,000 bond requirement in its entirety. In the alternative, the Court should hold that no bond applies to Plaintiffs' Section 14(a) claim (and analyze that claim independently, on its own merits). At minimum, the Court should vacate the present bond deadline and defer any NRS § 41.520 analysis until after Plaintiffs file an amended complaint and Defendants make any renewed motion addressed to the operative pleading.

Dated this 27th day of May 2026.

**MATTHEW L. SHARP, LTD.**

_/s/ Matthew L. Sharp_
Matthew L. Sharp, Esq.
Nevada Bar No. 4746
432 Ridge Street
Reno, NV 89501
(775) 324-1500
matt@mattsharplaw.com

**NEWMAN FERRARA LLP**
Jeffrey M. Norton, _Admitted Pro Hac Vice_
Benjamin D. Baker, _Admitted Pro Hac Vice_
55 East 59th Street, 17th Floor
New York, NY 10022
(212) 619-5400
jnorton@nfllp.com
bbaker@nfllp.com

_Counsel for Plaintiffs_

- 11 -

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jeffrey F. Barr, Esq.
ASHCRAFT & BARR LLP
*Attorneys for Defendants*

DATED this 27th day of May 2026.


        */s/ Cristin B. Sharp*
An employee of Matthew L. Sharp, Ltd.